**2013-1050, -1051**

In The

# United States Court of Appeals

### For The Federal Circuit

## JOHN EASTCOTT,

*Plaintiff–Appellant*,

## v.

## HASSELBLAD USA, INC., HASSELBLAD A/S, and B&H PHOTO & ELECTRONICS CORP.,

*Defendants–Appellees.*

## APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK IN CASE NO. 11-CV-5383, JUDGE JED S. RAKOFF.

———————————

### BRIEF OF APPELLANT

———————————

Douglas W. Wyatt
WYATT, GERBER & O'ROURKE LLP
99 Park Avenue, Suite 330
New York, New York  10016
(212) 681-0800

*Counsel for Appellant*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

John Eastcott v. Hasselblad USA, et al.

No. 2013-1050

## CERTIFICATE OF INTEREST

Counsel for the appellant, Douglas W. Wyatt certifies the following: (use "None" if applicable, use extra sheets if necessary);

1.    The full name of every party or amicus represented by me is:

John Eastcott

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

John Eastcott, same person listed in item No. 1 above.

3.    All parent corporations and publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Douglas W. Wyatt and Douglas C. Wyatt of Wyatt, Gerber & O'Rourke , LLP., 99 Park Avenue, Suite 330, New York, New York 10016

_2/25/2013_
Date

_[signature]_
Signature of counsel

DOUGLAS W WYATT
Printed name of counsel

i

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................v

STATEMENT OF RELATED CASES ................................................. viii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION
(SANCTIONS ORDER APPEAL)...........................................................1

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION
(SUMMARY JUDGMENT APPEAL) ..................................................1

SANCTIONS ORDER APPEAL .............................................................2

    STATEMENT OF THE ISSUES ......................................................2

    STATEMENT OF THE CASE ........................................................4

        The Patent-in-Suit...................................................................4

        The Sanctions Order................................................................4

        The Fees of Mr. Eastcott's Invoices Were Reasonable in View
        of Mr. and Mrs. Eastcott's Prior Fees Received for Expert
        Services.....................................................................................4

        The Eastcotts are Experts in Tilt Adapter Imagining
        Photography.............................................................................5

        Hasselblad is a Large Foreign Company that Manufactures
        Cameras ...................................................................................5

        Hasselblad's Expert Fee Invoices .........................................5

        Mr. Eastcott's Objection to Hasselblad's Bills ...................6

Mr. Eastcott's Expert Fee Invoices .......................................................6

Hasselblad's Objections to Mr. Eastcott's Fees....................................6

Eastcott's Expert Fees Under Rule 26 ..................................................7
Eastcott was Noticed by Defendants to Testify as an Expert
Witness ...................................................................................................7

Eastcott's Deposition Testimony ..........................................................8

Mrs. Eastcott (Yva Momatiuk) was Required to Give Expert
Testimony...............................................................................................8

No Notice to Eastcott of Motion for Exercise of Sanctions
Under Inherent Power ...........................................................................9

STATEMENT OF THE FACTS ...............................................................9

Background of the Parties ...................................................................10

The Sanctions Motion May 11, 2012..................................................11

Eastcott's Response to Sanctions Motion ...........................................12

May 30, 2012 Court Hearing...............................................................12

Mr. and Mrs. Eastcott are Experts in Tilt Imaging Adapter
Photography.........................................................................................14

Mrs. Eastcott's Expert Testimony......................................................16

Expert Fees Paid to Mr. and Mrs. Eastcott.........................................19

SUMMARY OF THE ARGUMENT .........................................................22

ARGUMENT..............................................................................................23

The District Court Erred in Exercising its Inherent Power to
Issue Sanctions as Eastcott had at Least a Colorable Basis for

Submitting the Invoice and did not Submit the Invoice in Bad Faith ..................................................................................24

The District Court Erred in Refusing to Permit Eastcott his Invoice Under Rule 26 and Finding Eastcott had No Status as an Expert Witness ................................................................26

The District Court Erred in Exercising its Inherent Power to Issue Sanctions as Eastcott Did Not Receive Notice of the Authority underlying the Sanctions, the Applicable Standard According to which it was to be Imposed, nor an Opportunity to Respond ................................................................................29

CONCLUSION ................................................................................31

SUMMARY JUDGMENT APPEAL ................................................32

STATEMENT OF THE ISSUES ................................................32

STATEMENT OF THE CASE ................................................33

The Court's Core Citation for Finding Eastcott was Not an Expert ................................................................................36

STATEMENT OF THE FACTS ................................................38

Eastcott's Expert Testimony ................................................40

First Instance ................................................................................41

Second Instance ................................................................................41

Third and Fourth Instances ................................................42

Fifth Instance ................................................................................43

Sixth and Seventh Instances
The Court's Core Citation for Finding Eastcott was Not an Expert ................................................................................45

Hasselblad had the Best Evidence of the HTS 1.5 Adapter at the Deposition but Chose a Confusing Engineering Drawing Instead..................................................................................47

Eastcott Gave Expert Opinion Answers for Deposition Testimony...........................................................................49

Eastcott's Affidavit's Paragraphs 36 to 44 Set Out Genuine Issues of Material Facts for Trial (A769)............................................50

Eastcott's First Affidavit of Material Facts (A737) ...........................53

SUMMARY OF THE ARGUMENT ...........................................................53

ARGUMENT.......................................................................55

CONCLUSION.....................................................................61

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

<u>60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E. 80th St. equities, Inc.)</u>,
218 F.3d 109 (2d Cir. 2000) .............................................................29

<u>Adickes v. S.H. Kress & Co.</u>,
398 U.S. 144 (1970)..........................................................................56

<u>Ametex Fabrics, Inc. v. Just In Materials, Inc.</u>,
140 F.3d 101 (2d Cir. 1998) .............................................................30

<u>Anderson v. Liberty Lobby, Inc.</u>,
477 U.S. 242 (1986)......................................................55, 56, 59, 60

<u>Celotex Corp. v. Catrett</u>,
477 U.S. 317 (1986)..........................................................................60

<u>Equal Employment Opportunity Comm. v. Johnson & Higgins, Inc.</u>,
1999 WL 32909 (S.D.N.Y. Jan. 21, 1999) ................................27, 28

<u>Howmedica Osteonics v. Wright Med. Tech.</u>,
540 F.3d 1337 (Fed. Cir. 2008) ..................................................14, 57

<u>In Re Am. Acad. Of Sci. Tech. Ctr.</u>,
367 F.3d 1358 (Fed. Cir. 2004) ........................................................57

<u>Mathias v. Jacobs</u>,
167 F. Supp. 2d 606 (S.D.N.Y. 2001) ..............................................30

<u>Meyer Intellectual Properties Ltd. v. Bodum Inc.</u>,
690 F.3d 1354 (Fed. Cir. 2012) .................................................<u>passim</u>

<u>Miltex Indus. Corp. v. Jacquard Lace Co.</u>,
55 F.2d 34 (2d Cir. 1995) .................................................................23

Nemeroff v. Abelson,
　　620 F.2d 339 (2d Cir. 1980) ...........................................................25

New York University v. Autodesk, Inc.,
　　495 F. Supp. 2d 369 (S.D.N.Y. 2007) ...........................................56

Oliveri v. Thompson,
　　803 F.2d 1265 (2d Cir. 1986) ..................................................24, 30

Phillips v. AWH Corp.,
　　415 F.3d 1303 (Fed. Cir. 2005) ..............................................14, 57

Research Corp. Techs. v. Microsoft Corp.,
　　536 F.3d 1247 (Fed. Cir. 2008) ..............................................27, 58

Sakon v. Andreo,
　　119 F.3d 109 (2d Cir. 1997) ...........................................................29

Schlaifer Nance & Company, Inc., v. The Estate of Andy Warhol,
　　194 F.3d 323 (2d Cir. 1999) ....................................................passim

Sierra Club v. United States Army Corps of Eng'rs,
　　776 F.2d 383 (2d Cir. 1985) ...........................................................25

Sundance, Inc. v. DeMonte Fabricating Ltd.,
　　550 F.3d 1356 (Fed. Cir. 2008) ..............................................54, 57

Ted Lapidus, S.A. v. Vann,
　　112 F.3d 91 (2d Cir. 1997) .............................................................29

The State of New York v. Solvent Chemical Co.,
　　210 F.R.D. 462 (W.D.N.Y. 2002) ....................................24, 27, 30

United States v. Int'l Brotherhood of Teamsters,
　　948 F.2d 1338 (2d Cir. 1991) .........................................................24

United States v. Seltzer,
　　227 F.3d 36 (2d Cir. 2000) .............................................................29

## STATUTES

28 U.S.C. § 1295(a)(1)...............................................................................1

28 U.S.C. § 1331 ........................................................................................1

28 U.S.C. § 1338 ........................................................................................1

28 U.S.C. § 1338(a) ...................................................................................1

## RULES

Fed. R. Civ. P. 11 ...............................................................................13, 30

Fed. R. Civ. P. 26 ..............................................................................passim

Fed. R. Civ. P. 26(a)(1).............................................................................7

Fed. R. Civ. P. 26(b)(4)(A) ..................................................................7, 16

Fed. R. Civ. P. 26(b)(4)(D) ..................................................................7, 16

Fed. R. Civ. P. 26(b)(4)(E) .......................................................................7

Fed. R. Civ. P. 37 ....................................................................3, 9, 13, 30

Fed. R. Civ. P. 56 ..............................................................................passim

Fed. R. Civ. P. 56(c)................................................................................56

## <u>STATEMENT OF RELATED CASES</u>

No other appeal in or from this civil proceeding in the district court was previously before this or any other appellate court.  There is no case known to counsel to be pending in this or any other court that will directly affect this Court's decision in the pending appeal.

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION
## (SANCTIONS ORDER APPEAL)

The district court had jurisdiction for this patent infringement action under 28 U.S.C. §§ 1331 and 1338.

This Court has appellate jurisdiction under 28 U.S.C. § 1295(a)(1).

The district court's sanction final order was entered on September 26, 2012.

Mr. John Eastcott ("Eastcott") filed his Notice of Appeal on October 23, 2012.

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION
## (SUMMARY JUDGMENT APPEAL)

This Court had jurisdiction for this patent infringement action under 28 U.S.C. §§ 1331 and 1338(a).

This Court has appellate jurisdiction under 28 U.S.C. § 1295(a)(1).  The district court granted summary judgment against Plaintiff-Appellant, Mr. John Eastcott ("Eastcott") in a final Memorandum Order (A1) dated September 25, 2012, holding two claims 1 and 6 of Eastcott's patent invalid and a third claim 26 valid but not infringed.

Eastcott filed a Notice of Appeal on October 23, 2012 (A29) and only appeals the finding that valid claim 26 is not infringed.

## SANCTIONS ORDER APPEAL

## STATEMENT OF THE ISSUES

This appeal relates to whether the district court grant of sanctions under its inherent power was an abuse of discretion for the submission by Eastcott, the plaintiff and patentee, of expert witness's fee invoices under Rule 26.

To grant sanctions under its inherent power under the standards set by the United States Court of Appeals or the Second Circuit, the district court must find the challenged claim was without a colorable basis, and in addition; the claim was brought in bad faith motivated by improper purposes such as harassment or delay.

1. Did the district court err in exercising its inherent power to sanction the submission of an expert fee invoice under Rule 26 on the basis that the invoice was "fabricated and an obvious sham" and without a colorable basis, even though Mr. and Mrs. Eastcott's (Yva Momatiuk) fees were based on prior fees they had been paid for photographic expertise, and expertise in the patented tilt imaging photography by National Geographic Society and others?

2.  In view of the established Rules set by this Court for patent law issues holding that an inventor can give expert testimony, did the district court err in finding that Eastcott had no colorable grounds to call himself an expert witness as a basis for the submission of expert fees, even though Eastcott was the patentee

skilled in the art and was a recognized photography expert with exceptional and unique expertise in the patent-in-suit tilt imaging adapter photography?

3.  Did the district court err in finding fraud and bad faith when the established court precedent of an eight point rule to determine reasonableness of fees under Rule 26 was found not applicable, and the district court went on to compare fees for a certified accountant, an engineer and lawyers with what an expert in tilt imaging adapter photography might charge?

4.  Did the district court err in finding no colorable ground for a submission of Eastcott's fees under Rule 26 for time spent in responding to discovery based on the value of Mr. and Mrs. Eastcott's time and not the payment of money when on its face the Rule allows such fees and there is no rule prohibiting such fee invoices?

5.  Where no court order was violated, did the district court err in granting sanctions under its inherent power when Hasselblad's motion asked for Rule 37 Sanctions and no reference to inherent power for granting sanctions was made at the May 30, 2012 district court sanctions hearing and Eastcott had not been forewarned of the authority under which sanctions were being considered and had no opportunity to defend himself as he had no notification of the standards under which such sanctions would be awarded under the district court's inherent power?

## STATEMENT OF THE CASE

**The Patent-in-Suit**

Eastcott sued Hasselblad for patent infringement of his U.S Patent No. 5,592,331 for tilt imaging adapter photography entitled "Optical Adapter for Controlling the Angle of the Plane of Focus" on August 2, 2011.

**The Sanctions Order**

The district court found that expert fee invoices submitted by Eastcott were unreasonable and a fraud and awarded sanctions.

**The Fees of Mr. Eastcott's Invoices Were Reasonable in View of Mr. and Mrs. Eastcott's Prior Fees Received for Expert Services**

The district court at the time of the sanctions hearing had three separate exhibits before it, showing the fees paid to Mr. and Mrs. Eastcott for their professional services as photographers and experts in tilt imaging adapter photography as follows:

Exhibit No. 1.  Entitled "Statement of John Eastcott in Support of Expert Witness" describing fees paid by National Geographic Society and others including work completed in 2008. (A1228)

Exhibit No. 2.  A letter dated May 22, 2012 from National Geographic Society to Mr. and Mrs. Eastcott, citing a fee rate of $3,000 to $13,000 per day. (A1332, A1344)

4

Exhibit No. 3.  A letter dated June 28, 2001 (A1339) to Mr. and Mrs.

Eastcott paying them $45,000 by National Geographic Society for 2-days of work

using his tilt image adapter photography. (A1334, A1339)

**The Eastcotts are Experts in Tilt Adapter Imagining Photography**

The Eastcotts are professional photographers recognized for tilt imagining

adapter photography, the subject matter of the patent-in-suit.  They are renowned

for the artistry shown by their photography for the National Geographic Society.

Mr. and Mrs. Eastcott are husband and wife partners in the photography business

and have continuous relations providing photography for National Geographic

Society for over 35 years.  They are independent, unaffiliated photographers of

modest means who work together for their business.

**Hasselblad is a Large Foreign Company that Manufactures Cameras**

Hasselblad is a large foreign company that manufactures high-end expensive

cameras and other photographic equipment.

**Hasselblad's Expert Fee Invoices**

During this patent litigation in January, 2012, Hasselblad sent bills for expert

testimony under Rule 26 for depositions taken by Eastcott's attorney. On May 11,

2012 Hasselblad's counsel sent a second bill which increased the original bill.

Hasselblad's attorney filed a letter motion of May 11, 2012 to the district court and

asked for payment and sanctions and expert fees for $18,770.  Mr. Eastcott agreed

to withdraw his objections to Hasselblad's expert fees. (A39)

### Mr. Eastcott's Objection to Hasselblad's Bills

In two letters of March 16, 2012, Eastcott's attorney objected to

Hasselblad's bills as being too high and inadequate in details, but didn't refuse to

pay the bills.

### Mr. Eastcott's Expert Fee Invoices

Subsequently on April 12, 2012, Mr. Eastcott submitted bills for expert

testimony under Rule 26 for Mr. and Mrs. Eastcott for $17,000, which didn't

include preparation time.

### Hasselblad's Objections to Mr. Eastcott's Fees

Hasselblad objected to paying any of Mr. Eastcott's bills on the grounds that

he is not an expert, even though Eastcott was identified as a person having expert

knowledge under Rule 26, and was formally noticed by Hasselblad's counsel to

testify on his knowledge, was requested by Hasselblad's counsel to prepare for

deposition as an expert, and was questioned as an expert on tilt imaging adapter

photography and licensing during a 260 page deposition.  Similarly, Hasselblad

objected to paying any part of the bill for Mrs. Eastcott on the basis that she is not

an expert, even though she is an expert on the patented tilt imaging adapter

photography and asked her for expert testimony on that subject during her deposition.

**Eastcott's Expert Fees Under Rule 26**

Fed. R. Civ. P. 26(b)(4)(E) provides for the payment of expert fees and does not exempt parties or their employees, and states in part:

> (E) *Payment.* Unless manifest injustice would result, the court must require that the party seeking discovery:
> (1)    pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D);. . . . .

Mr. and Mrs. Eastcott's fees were for their time being compelled to respond to discovery as experts. The fact that they were not reimbursed for their time does not prohibit them from submitting invoices for their expert testimony.

**Eastcott was Noticed by Defendants to Testify as an Expert Witness**

Early in the litigation on September 19, 2011, pursuant to Fed. R. Civ. P. 26(a)(1), Eastcott served on Hasselblad an information disclosure wherein Hasselblad was advised that Eastcott is knowledgeable in the following subject matter.

| Individual/Entity | General Subject Matter of Knowledge |
| --- | --- |
| John Eastcott, Plaintiff; 151 Eagle's Nest Road, Hurley, N.Y. | Camera technology, infringement of Patent-in-Suit, invention described in Patent-in-Suit, damages |

**Eastcott's Deposition Testimony**

Eastcott was noticed as an expert for a full day of deposition and Hasselblad's attorney proceeded to ask opinion questions appropriate for expert testimony on Eastcott's expert report on licensing and damages and opinion questions relating to tilt imaging adapter photography.  The district court only considered Eastcott's testimony on damages and found him not to have expert qualifications for his testimony relating to tilt imaging adapter photography.

At the start of Mr. Eastcott's deposition, Hasselblad's attorney asked Mr. Eastcott whether he could testify as an expert witness on damages and Mr. Eastcott answered in the affirmative.  For the first 161 pages of the 260 page transcript Hasselblad's attorney questioned Mr. Eastcott about his expert opinion on licensing and other subjects in his expert report.   Hasselblad's attorney's complaint that Mr. Eastcott was unprepared to respond to questions that required a legal understanding and opinion or which were outside of his expert knowledge is irrelevant to the issue of compensation. Mr. Eastcott has experience in licensing intellectual property including his patents and fully answered those questions.

**Mrs. Eastcott (Yva Momatiuk) was Required to Give Expert Testimony**

Hasselblad subpoenaed Mrs. Eastcott to appear in New York City, presumably for a full day's testimony.  Mrs. Eastcott is an expert in the effectiveness and use of the tilt imaging adapter photography of the patent-in-suit

and provides expert assistance to Mr. Eastcott in conjunction with their business. Hasselblad's attorney devoted a substantial portion of the deposition eliciting her expert opinions during her deposition.  Hasselblad's attorney's complaint that Mrs. Eastcott was unprepared to respond to questions that required a legal understanding and opinion or which were outside of her expert knowledge is irrelevant to the issue of compensation.

Eastcott prepared and submitted his invoice in view of the Eastcotts' prior experience.

**No Notice to Eastcott of Motion for Exercise of Sanctions Under Inherent Power**

Although no court order had been violated, the district court granted sanctions under its inherent power in response to Hasselblad's motion asking for Rule 37 Sanctions.  No reference to inherent power for granting sanctions was made at the May 30, 2012 hearing and Eastcott had not been forewarned of the authority under which sanctions were being considered and had no opportunity to defend himself.  Eastcott had no notification of the standards under which such sanctions would be awarded.

## STATEMENT OF THE FACTS

The plaintiff is Mr. John Eastcott, ("Eastcott") a well-known photographer and inventor of U.S. Patent No. 5,592,331 (A58) entitled "Optical Adapter for

Controlling the Angle of the Plane of Focus" which issued on January 7, 1997,
brought this action against defendants Hasselblad A/S, Hasselblad USA, and B&H
Photo ("Hasselblad"). (A67)  Eastcott charged that Hasselblad infringes his patent
by making, using and selling the HTS 1.5 adapter.  The invention of the '331
patent relates to an adapter for tilting a lens relative to an image plane of a camera
to control the angle of the plane of focus and thereby to bring the objects at
different distances from the lens into focus simultaneously.

**Background of the Parties**

Mr. and Mrs. Eastcott are independent photographers who work together in
the production of photographic art using the patented tilt imaging adapter
photography disclosed in the patent-in-suit. (A1228)  Like many artists who are
independent small inventors, Eastcott is a person with limited financial means.
(A44)  Hasselblad is a large foreign corporation that manufactures and sells high
end expensive cameras and other photographic equipment. (A1225)  Tilt imaging
adapter photography is a highly specialized type of photographic technology.
(A58)

Mr. and Mrs. Eastcott are renowned experts in photography with over thirty-
five years of experience and both are experts in the patented tilt imaging adapter
photography. (A1228)  As a husband and wife team they were commissioned by
National Geographic Society and others to work as photography experts and have

10

provided many images made with Eastcott's patented tilt imaging adapter to the
Society and others. (A1228, A1339, A1344)  The district court recognized that
Eastcott had commercial success with his patent. (A8)

On January 17, 2012, Hasselblad filed a motion for summary judgment.
The district court granted summary judgment in an Order dated September 25,
2012. (A1)

**The Sanctions Motion May 11, 2012**

On May 11, 2012 Hasselblad filed a 2 page motion with the district court
asking for payment of invoices for its expert witness fees and for sanctions uder no
specific rule and alleged that Eastcott refused to pay expert witness fees. (A1188)
Eastcott had never refused to pay Hasselblad's expert fees but only questioned the
amounts of the bills. (A1195)  Eastcott agreed to the reasonableness of
Hasselblad's expert fees shortly thereafter before the district court hearing on
payment and sanctions held on May 30, 2012. (A39)

In its May 11, 2012 motion for payment and sanctions, Hasselblad argued
that Eastcott's expert witness fee was inappropriate because the Eastcotts did not
testify as "technical" experts but testified as "lay" witnesses and therefore
Eastcott's generation of the invoices was sanctionable. (A1188)  The fee rate
charged was not raised by Hasselblad as grounds for sanctions. (A1188)  The basis
for sanctions was solely Hasselblad's opinion that the Eastcotts were not experts.

Hasselblad requested the district court "to sanction plaintiff and his counsel for fabricating the charges on the invoice." (A1189)

**Eastcott's Response to Sanctions Motion**

Subsequently on May 17, 2012 Eastcott's counsel filed a 3-page opposition to the May 11, 2012 motion. (A1205)  The only rebuttal Eastcott's counsel made to Hasselblad's one line sanctions request was that Rule 11 does not provide sanctions for discovery disputes. (A1207)

On May 23, 2012 Hasselblad filed a 3-page reply (A1266) complaining that in Hasselblad's opinion Mr. Eastcott's fees were inflated:

> "plaintiff's invoice rate is grossly inflated, particularly considering Mr. Eastcott's lack of qualifications."

However, in its motion Hasselblad did not ask for sanctions for "inflated" fees, but because of Eastcott's qualifications. (A1188)  Hasselblad for the first time alleged Eastcott's conduct was sanctionable under Rule 37. (A1268)  Eastcott was given no opportunity to reply to the Rule 37 sanctions allegation.

**May 30, 2012 Court Hearing**

On May 30, 2012 the district court held a hearing on Hasselblad's motion. At the hearing the district court, at pages 5 and 6 of the transcript (A1329, A1330, A1325) allowed a few short answers by Eastcott's counsel to Hasselblad's oral argument as to whether the Eastcotts were expert witnesses.  The district court's

12

response was as follows after only a few minutes of argument by Eastcott's

counsel. (A1330)

> THE COURT: Well, I will take this matter under advisement,
> but let me advise you now that it seems to me that another thing I
> have to consider is whether the conduct of counsel in what the court
> may determine is a patently fraudulent invoice prepared with
> fraudulent intent warrants referral to the grievance committee of the
> Southern District of . . .

There were no witnesses presented at the hearing. The hearing lasted less

than half an hour. The district court hearing was delayed due to the court's

presence at the end of a long jury trial which finished after the time set for the

motion hearing.

There was no mention by the district court at the hearing (A1329) of why

Rule 11 or Rule 37 as alleged by Hasselblad was inappropriate grounds for

sanctions. No mention was made regarding the district court's intent to use its

inherent power to sanction. (A1325) Eastcott was given no opportunity to defend

himself. He had not been forewarned of the authority under which sanctions were

being considered and he had no notification of the standard under which such

sanctions would be awarded under the district court's inherent power.

Mr. Eastcott had never appeared as a witness in any prior litigation nor had

his deposition ever been taken (A1350) nor had he or his counsel ever been

sanctioned by any court. Eastcott's only reference for setting an expert testimony

fee was the fees that he had been paid as a photography expert and other services in the art of tilt imagining adapter photography.

**Mr. and Mrs. Eastcott are Experts in Tilt Imaging Adapter Photography**

Without a full review of Eastcott's deposition testimony, the district court treated Eastcott's deposition testimony as that of a non expert fact witness giving lay testimony, (A49) even though most of the deposition questions asked for expert opinion. Both Mr. and Mrs. Eastcott were obligated to prepare and appear for potentially a full day of deposition. At the hearing the district court recognized that **both** Mr. and Mrs. Eastcott were offered as experts and **both** were questioned as experts even though Hasselblad often opined that they were not qualified, they had expert questions put to them in case they were experts as follows:

> THE COURT: That's because, as your adversary points out, it is very doubtful that they qualify as experts. You offered them nevertheless as experts, so your adversary of course had no choice but to put questions to them in case they were found to be experts, but your adversary repeatedly made known his objection to their being qualified as experts, and the Court has deep doubts as to whether they qualify as experts. (A1334)

This view is contrary to the Court's finding in <u>Howmedica Osteonics v. Wright Med. Tech.</u>, that an inventor can give expert testimony.

> "The testimony of an inventor, of course, may be pertinent as a form of expert testimony, or example, as to understanding the relevant art. <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (en banc)...."

540 F.3d 1337, 1347 n.51 (Fed. Cir. 2008)

Early in the litigation, Hasselblad was given notice of Eastcott's expert

knowledge.  On September 19, 2011, pursuant to Fed. R. Civ. P. Rule 26, (A651)

Eastcott filed an Information Disclosure where he was listed as an individual

knowledgeable in the following subject matter.

| **Individual/Entity** | **General Subject Matter of Knowledge** |
|---|---|
| John Eastcott, Plaintiff; | Camera technology, infringement of |
| 151 Eagle's Nest Road, Hurley. N.Y. | Patent-in-Suit, invention described in |
| | Patent-in-Suit, and damages |

When Eastcott received the first notice of deposition, he initially expected to

be deposed only on factual issues.  Eastcott was surprised when Hasselblad's

subsequent deposition notice set a date for Eastcott's deposition testimony and

asked for samples of devices that are covered by his patent for what would be

clearly require his expert testimony. (A1217)  Hasselblad's attorney manifestly

knew of Eastcott's expert status and this subject was clearly the focus of the

deposition testimony of his 260 page deposition transcript. (A1345)  The

deposition notice was served on the Friday, December 17, 2011 before the

Monday, December 20, 2011 deposition. (A1217)

The district court went on to consider Eastcott not qualified as a damages

expert or expert of any type (A36) even though he was asked for expert testimony

on damages for only a portion of his entire deposition. (A1345)  Eastcott may not

have been the most qualified damages expert in every aspect of damages but the

record shows that he had qualifications with experience in setting the fees for

licensing intellectual photographic property and licensing patented technology.

(A1353-A1356, A1376, A1393, A1394, A1396)

The court found that Mr. and Mrs. Eastcott were not experts and had no colorable ground for a submission of Eastcott's fees under Rule 26 for time spent in responding to discovery based on the value of the Eastcott's time and not the payment of money to a third party expert (A41) when on its face the Rule 56 allows such fees and plaintiff is unaware of any case law prohibiting such fee invoices. The district court's decision made no mention and even failed to cite the important provision of "Manifest Injustice" which Rule 56 provides as follows:

> "Unless **manifest injustice** would result, the court must require that the party seeking discovery:
>     (i) pay the expert a reasonable fee for time spent in responding to discovery under Rules 26(b)(4)(A) or (D)." (emphasis added).

The district court's view was apparently that paid third party experts were required and that the Eastcotts' qualifications were simply for taking routine every day pictures and not the highly specialized tilt imaging adapter photographs of the patent-in-suit. The district court's unfavorable view of such qualifications is fully expressed during the sanctions May 30, 2012 hearing at page 5 of the hearing transcript (A1329)

## Mrs. Eastcott's Expert Testimony

Mrs. Eastcott and Mr. Eastcott are renowned experts in photography with over thirty-five years of experience and both are experts in the patented tilt

16

imaging adapter photography. (A1228)  As a husband and wife team they were

commissioned by National Geographic Society and others to work as photography

experts and have provided many images made with Eastcott's patented tilt imaging

adapter to the Society and others. (A1228, A1339, A1344)

Mrs. Eastcott was subpoenaed for a full day of testimony to appear at

Eastcott's counsel's office. (A1231)  Twenty (20) of 39 pages of Mrs. Eastcott's

deposition transcript (A1497) are in the record.  At pp. 19 to 36 Mrs. Eastcott was

asked mostly legal expert questions for opinion. (A1497-1514)

At pp. 23, 24 Mrs. Eastcott was asked whether she had an opinion of the

'331 patent-in-suit. (A1500, 1501)  She answered that she could comment on the

effectiveness of the invention as follows:

> ++++++
> Q.    Then you would not be comfortable giving an opinion
> about the 331 patent; is that correct?
> A.    May I answer in two parts?
> Q.    Yes.
> A.    I could comment on the effectiveness.
> ++++++
> Q.    Effectiveness of his invention.  I apologize for
> interrupting.
> A.    I can comment on the effectiveness of my husband's
> invention and what it can do in professional photographic terms.  I can
> explain to anybody what effect this invention has when it comes to the
> rendering of photographs. I can't answer the other part – I can't recall
> the verbiage of it – but it would call for me to explicate on the
> technicalities of his patent.

Mrs. Eastcott explained her expertise was in using the adapter device to obtain certain photographic images at pp. 24, 25 (A1502, 1503) as follows:

> Q.                    ++++++
> Is it your testimony you are comfortable testifying about your husband's device and how it is used, and the advantages of his device?
> A.      No. I am only comfortable in commenting of how effective it is in terms of obtaining certain types of photographs.
>                       ++++++

At p. 30 (A1506), Mrs. Eastcott gave her opinion that Hasselblad's tilt shift adapter infringes John Eastcott's patent.

> Q.      Which question did you not understand?
> A.      I was not sure whether you are asking me to comment on whether, in my opinion, the Hasselblad tilt shift adapter, in concept, infringed on John Eastcott's patent.

Mrs. Eastcott was asked expert questions posed at pp. 31, 32 (A1504-1508) as follows:

> Q.      But your belief is not based on a comparison of any claim to the device, is it
>                       ++++++
> A.      It is based on the overall function, and the way the function is achieved.
> Q.      By "overall function" do you mean the ability to tilt the optical axis of a lens with respect to the image?
>                       ++++++
> A.      It has to do with what the tilt is meant to do, and how it is actually used in taking photographs when we use the tilt.

18

**Expert Fees Paid to Mr. and Mrs. Eastcott**

The fees paid to the Mr. and Mrs. Eastcott discussed below support Eastcott's position that he had a colorable claim that his expert fees invoices are reasonable and that the Eastcotts are experts in tilt imaging adapter photography.

The district court at the time of the sanctions hearing had received the following separate exhibits showing the fees paid to the Eastcotts for their professional services as experts in tilt imaging adapter photography. The court refers to this subject at pages 12, 13 of the Sanctions Order. (A43, A44)

Exhibit 1. Entitled "Statement of John Eastcott in Support of Expert Witness. (A1228) In this statement presented to the district court in Eastcott's May 17, 2012 opposition to Hasselblad's motion for sanctions, Eastcott informed the district court that he used the following information in setting the amount for his invoices as follows:

a. "My wife Yva Momatiuk and I have a 35-year-long continuous relationship with the National Geographic Society, an ongoing relationship with the National Geographic Image Collection, and we are among its photographers available for corporate assignments."

b. Mr. and Mrs. Eastcott entered into a written agreement with National Geographic Magazine for the royalty rate of $45,000 for 2 days of work using their tilt imaging adapter photographic expertise to create the

19

*Dance of Death*, magazine article with the invoice title *Wolves in Denali.*

c. The Eastcotts used the rates commanded by expert National Geographic Society photographers of their skill and experience, and ranging from $3,000 to $13,000 per day to set the rates in their expert fee invoice.

d. Eastcott indicated his work included "photography, consultation and other expert services".

e. Established and highly experienced photographers, such as the Eastcotts, command high rates, often up to $10,000/day or more.

f. Eastcott pointed out that National Geographic understood his expertise in making images with his patented tilt adapter made possible by the invention of his patent and chose the Eastcotts's work for the November 2008 National Geographic Magazine.

Exhibit No. 2.  At the sanctions hearing on May 30, 2012, the district court received and discussed on the record a letter dated May 22, 2012 (A1332, A1344) from National Geographic Society to Mr. and Mrs. Eastcott indicating that expert photographers like themselves have a fee rate of $3,000 to $13,000 per day.  The court discussed this document at p. 10 of the May 30, 2012 Hearing transcript. (A1332)

<u>Exhibit No. 3.</u>  At the sanctions hearing the district court also received a letter dated June 28, 2001 (A1339, A1334) to Mr. and Mrs. Eastcott, setting out a letter agreement signed by Mr. and Mrs. Eastcott paying them $45,000 by National Geographic Society for 2-days of work, which included images made with his tilt adapter.  This agreement was referred to above in Exhibit No. 1 as part of Eastcott's statement, and was discussed by the district court.  (A1334)

There is no other evidence in the record of what constitutes a reasonable fee for persons of the Eastcotts' unique expertise in tilt imaging adapter photography. The district court had no fee record evidence before it that pertained to a person with Eastcott's special expertise in tilt imaging adapter photography to claim that the fee was excessive, much less fraudulent.  The Eastcotts' invoice was transparent, its explanation was made candidly and although the fee could be questioned it was never fraudulent.

The district court never had the full testimony transcript of Mr. and Mrs. Eastcott.  In Hasselblad's May 11, 2012 letter motion for payment and sanctions there is no reference anywhere to citations to the deposition transcript of either of the Eastcotts. (A1188)  In Hasselblad's reply of May 23, 2012 (A1266), for which Eastcott had no opportunity to respond, for the first time Hasselblad's counsel cited pages of the Eastcotts' deposition transcripts. (A38)

The only grounds for finding fraud as to Eastcott's fee amounts cited by the district court was a comparison with unrelated expert fees for a certified public accountant, damages expert Mr. Finger, expert fees for a camera manufacturing engineer Mr. Poulsen, and lawyers' fees. (A43)  Other than Eastcott's evidence of his fees history, the district court considered no evidence of an appropriate fee for any comparable photography experts, let alone those with the Eastcotts' unique and sought after expertise in patented tilt imaging adapter photography.  There are no facts in the record to support the district court's conclusion that Eastcott's fee bill was fraud and this sanctions order lacks factual basis and relies on conjecture. The district court ignored the established case law Rule (A40) that only fees of those with Eastcott's qualifications should be compared. One can dispute his fee or demean his expertise but such assertions do not amount to fraud.

## SUMMARY OF THE ARGUMENT

The district court imposed a quick and harsh judgment without appropriately applying Rule 26 to permit an inventor to act as his own expert.  In addition the district court failed to follow the applicable law under the Second Circuit for sanctions as set out by Schlaifer which forbids courts from imposing sanctions – which carries with it public opprobrium – if the claim has a subjective colorable basis.

Furthermore, the district court erred by misinterpreting the facts as they were only presented by Hasselblad and short cutting the rules of procedure. Not only did the district court rely solely on the selected portions of Hasselblads' limited questioning of Eastcott to prohibit him from submitting an invoice after the fact, but the district court did not provide Eastcott notice, nor opportunity to respond. Instead, the district court refused to consider the manifest injustice of requiring Eastcott, as an individual patentee, to pay the rates demanded by Hasselblad, and imposed an additional requirement not stated in Rule 26 that effectively excludes individuals from bringing a patent case without a team of experts.

## **ARGUMENT**

The Court first looks to whether the district court properly interpreted the rule, which is reviewed de novo. Thereafter, the Court looks to whether the district court's imposition of sanctions under inherent power was an abuse of discretion. See Miltex Indus. Corp. v. Jacquard Lace Co., 55 F.2d 34, 37 (2d Cir. 1995).

In Schlaifer Nance & Company, Inc., v. The Estate of Andy Warhol the Second Circuit Court of Appeals set out the Rule the imposition of sanctions pursuant to inherent power as follows:

> In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay.

194 F.3d 323, 336 (2d Cir. 1999).  Moreover, the inherent power must be

employed with temperance and restraint "to ensure ... that fear of an award of

attorneys' fees against them will not deter persons with colorable claims from

pursuing those claims." Oliveri v. Thompson, 803 F.2d 1265, 1277 (2d Cir. 1986).

In recognizing this need for restraint, the Second Circuit has "required a

particularized showing of bad faith to justify the use of the court's inherent

power." United States v. Int'l Brotherhood of Teamsters, 948 F.2d 1338, 1345 (2d

Cir. 1991).  Accordingly, the bad faith standard is not easily satisfied in the Second

Circuit.  In Solvent Chemical Co., Inc., v. ICC Industries, Inc., 210 F.R.D. 462,

474 (W.D.N.Y. 2002).

**The District Court Erred in Exercising its Inherent Power to Issue Sanctions as Eastcott had at Least a Colorable Basis for Submitting the Invoice and did not Submit the Invoice in Bad Faith**

The district court based its sanctions order (A33) for fraud on the submission

and continued reliance on an alleged sham invoice as follows:

> "sanctions in the amount of $12,815.20 are imposed on Eastcott and his counsel, jointly and severally, for creating, submitting, and continuing to rely on the sham invoice;"

Clearly, Mr. Eastcott has a colorable basis for (1) setting his expert fees

based upon work Mr. and Mrs. Eastcott did for National Geographic Society.

(2) Mr. and Mrs. Eastcott have a colorable basis for claiming expert status as they

are experts in tilt imagining adapter photography, the subject matter of the patent-

in-suit (3) there was no bad faith of the assertion under Rule 26 that they should be recompensed for their responding to discovery as experts.

In addition, as the district court recognized that both Mr. and Mrs. Eastcott were offered as experts and both were questioned as experts even though Hasselblad often opined that they were not qualified. (A1334) In addition, Mr. Eastcott had prepared an expert report and was extensively deposed on his expert report. There had been no ruling by the district court that Eastcott could not submit an invoice, and the district court's improper refusal to acknowledge Eastcott's expertise did not come until after the invoice had been submitted.

In <u>Schlaifer</u>, the Second Circuit Court of Appeals set out the standard for determining when a claim is without color when it lacks a legal or factual basis.

> "[A] claim is entirely without color when it lacks *any* legal or factual basis." <u>Sierra Club v. United States army corps of Eng'rs</u>, 776 F.2d 383, 390 (2d Cir. 1985) (internal quotation marks omitted)(emphasis added)....Conversely, a claim is colorable "when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." <u>Nemeroff v. Abelson</u>, 620 F.2d 339, 348 (2d Cir. 1980).

194 F.3d at 337.

Eastcott surely had a colorable claim to submit the invoice based on the recognized status of Mr. and Mrs. Eastcott as experts in their field. The fees claimed by Mr. Eastcott were the fees paid for Mr. and Mrs. Eastcotts' professional

work and provide a reasonable and colorable basis to claim the same as expert fees under Rule 26.

The above reasons also support Eastcott's good faith belief that he could submit the invoice. The invoice was properly submitted under Rule 26 and not for any improper purpose. Many of the statements made by the District Court related to its conclusion that the invoice was submitted in bad faith rely on in incorrect interpretation of Rule 26 and statements made by Hasselblad in its reply brief to which Eastcott did not have an opportunity to respond. Rule 26 does not require Eastcott to pay Hasselblad's invoice immediately, and Eastcott had a good faith belief that he could submit his invoice. As Eastcott's invoice did not include fees for preparation, Eastcott had a good faith belief that the invoices fairly balanced the obligations of the parties to address the costs of the parties. As Eastcott stated repeatedly, manifest injustice would occur if the economic disparities of the parties were not considered to address the application of Rule 26 , which is a deviation from the American Rule that each side bear their own costs of discovery.

**The District Court Erred in Refusing to Permit Eastcott his Invoice Under Rule 26 and Finding Eastcott had No Status as an Expert Witness**

Rule 26 provides for payment of expert fees unless manifest injustice should otherwise require. The district court found that Eastcott has no colorable claim to submit an expert fee invoice.

This is contrary to this district court's prior rulings that a patentee, an expert in the art can give expert testimony. The court applies substantive patent law to this issues as recognized in <u>Meyer</u> as follows:

> "We review the district court's decision to exclude evidence under the law of the relevant regional circuit. <u>Research Corp. Techs. v. Microsoft Corp.</u>, 536 F.3d 1247, 1255 (Fed. Cir. 2008)("The Federal Circuit applies its own law with respect to issues of substantive patent law and certain procedural issues pertaining to patent law, but applies the law of our sister circuits to non-patent issues."

690 F.3d 1354, at p. 1371.

Rule 26 does not require actual payment of money to claim an expert fee and there is no rule stating the Eastcotts cannot bill for their own time. The district court found that Eastcott had no status as an expert witness based solely on selected questions that Hasselblad chose to impose on the witness, not testimony the Eastcott may submit for the factfinder. The fact that Mr. and Mrs. Eastcott, an expert in tilt imaging photography, lacked knowledge to answer some of plaintiffs' attorney's questions, mostly for seeking improper legal opinion, is irrelevant. The Court in <u>The State of New York v. Solvent Chemical Co.</u>, held that as follows:

> Recohem's argument that the fee is unreasonable because Dr. Nauman lacks knowledge on the issue at hand is also irrelevant and does not change the fact that it is obligated to compensate Dr. Nauman for his time. <u>See</u> <u>Equal Employment Opportunity Comm. V. Johnson & Higgins, Inc.</u>, 1999 WL 32909 at *5 (S.D.N.Y. Jan. 21, 1999)

210 F.R.D. 462, 470 (W.D.N.Y. 2002).

Eastcott's attorney requested fair application of the rule to Eastcott, as an individual who cannot afford to retain a stable of experts as Hasselblad may. (A1207)  The District Court misinterpreted Rule 26 and did not even consider "manifest injustice" which it conspicuously left out of its citation of the rule. This is a situation that may be common to individual patent holders such as Eastcott, and failure to consider disparities of means create significant due process concerns and can unfairly prejudice individual patent holders from participating in patent litigation.

In addition, the District Court ignored the considerations set out in the EEOC case, supra, when weighing the reasonableness of Eastcott's invoice.  For example, a $1000 an hour fee for Eastcott's expert testimony was based on fees he was actually paid and was set out in his invoice in a manner he was accustomed to, as stated in Eastcotts affidavit. (A1228)  The District Court also did not consider appropriate fees for comparison and no evidence was submitted for rates of comparable experts.  In addition, the District Court did not consider whether the overall amount charged was reasonable in view of Hasselblad's requested invoice, nor Eastcott's statement that he did not include charges associated with preparation time.

**The District Court Erred in Exercising its Inherent Power to Issue Sanctions as Eastcott Did Not Receive Notice of the Authority underlying the Sanctions, the Applicable Standard According to which it was to be Imposed, nor an Opportunity to Respond**

In <u>United States v. Seltzer</u>, the Court set out the established rule that a party must be forewarned of authority under which sanctions are being considered and given a chance to defend against specific charges as follows:

> "The District Court must provide …with specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on th[e] matter," and [Seltzer] must be "forewarned of the authority under which sanctions are being considered, and given a chance to defend [herself] against specific charges.: <u>60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E. 80th St. equities, Inc.)</u>, 218 F.3d 109, 117-18 (2d Cir. 2000).

227 F.3d 36 (2d Cir. 2000)(citations omitted)

Eastcott did not receive such notice and no opportunity to be heard.  After Hasselblad's general request for sanctions, the only authority cited was Rule 37 to which Eastcott could not respond.

In the <u>Schlaifer</u> case the Second Circuit also set out the strict requirements for notice that must be given to the subject of sanctions.  There must be a notice as follows:

> "At a minimum, the notice requirement mandates that the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered: and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense. <u>See</u> <u>Sakon</u>, 119 F.3d at 114; <u>Ted Lapidus, S.A.</u>, 112 F.3d at 96.  Indeed, only conduct explicitly

29

referred to in the instrument providing notice is sanctionable. <u>See</u>, e.g., <u>Ametex Fabrics, Inc. v. Just In Materials, Inc.</u>, 140 F.3d 101, 109 (2d Cir. 1998).

In <u>Solvent</u>, the Second Circuit Court of Appeals rule about the stigmatizing effect of sanctions is set out as follows:

> "A court should be especially circumspect in imposing this type of sanction due to its stigmatizing effect upon the censured attorneys." <u>Mathias v. Jacobs</u>, 167 F. Supp. 2d 606, 623 (S.D.N.Y. 2001). Moreover, the inherent power must be employed with temperance and restraint "to ensure … that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims." <u>Oliveri v. Thompson</u>, 803 F.2d 1265, 1277 (2d Cir. 1986).

210 F.R.D. at 462.

Here Hasselblad asked for sanctions under Fed. R. Civ. P. 11 and 37 which were not appropriate for the factual issues in this case.  Mr. Eastcott had no notice of any kind that the district court would consider sanctions under its inherent power and had no opportunity to submit a defense.

In view of the above reasons, the district court's abbreviated review of the sanctions issue which gave Eastcott no notice or time to respond is clearly an abuse of discretion for the exercise of an inherent power which the Second Circuit Court of Appeals requires be utilized with great restraint.  In addition, the district court's characterization of the submission of the invoice as "fraud" far exceeds what may be called for under the circumstances and is at odds with the stigmatizing effect of sanctions which the Second Circuit cautions against in <u>Schlaifer</u>.

## CONCLUSION

The record demonstrates that Eastcott has a colorable basis for his expert fee invoices and that his claim was not submitted in bad faith.  Accordingly, the award of sanctions should be reversed.

# SUMMARY JUDGMENT APPEAL

# STATEMENT OF THE ISSUES

1.  Was the district court mistaken when Eastcott, the patentee, a person highly skilled in the art, a recognized expert in the patented tilt imaging adapter photography, timely submitted an affidavit in opposition to Hasselblad's motion for summary judgment setting out material issues of fact for trial and the district court held that:

> "The majority of the affidavit is essentially a combination of a legal brief and an expert report, and Eastcott is not qualified to submit either." (A4)

2.  Was the district court mistaken in finding no issue of material fact because Eastcott was disqualified as an expert witness, because he "testified that he is unable to offer any such expert testimony" (A6) when general global deposition questions put to him immediately after a series of specific questions about a specific subject provided a negative answer out of context with the prior questions and an analysis of the record shows that Eastcott in fact gave expert testimony?

3.  Was the district court mistaken in finding no issue of material fact because Eastcott's opposition affidavit was improperly disqualified as the principle reason for the court ruling as he failed to give an answer when asked to identify claimed structures in Hasselblad's confusing engineering diagrams for lubricating an adapter without any description of its structure or operation when the best

evidence is in the form of the actual Hasselblad HTS 1.5 adapter that was produced by Hasselbad at the deposition and where Eastcott, who is not an engineer, has technical expertise grounded in the study of the actual physical construction of Hasselblad's adapter and he was not asked for expert testimony about the actual adapter?

4.  If Eastcott's Rule 56 opposition affidavit is admissible, was the district court mistaken by not providing a Markman claim construction in finding that Eastcott's affidavit, which contains particularized testimony with statements on a limitation-by-limitation basis to prove Hasselblad's infringement, does not set out material issues of fact for trial?

## STATEMENT OF THE CASE

The issue presented by this Appeal is whether there are genuine issues of material facts for trial established by Eastcott's two opposition affidavits (A737, A757) precluding summary judgment as to whether claim 26 of the patent was infringed by Defendants-Appellees, Hasselblad A/S's ("Hasselblad") camera adapter.

Eastcott's U.S. Patent 5,592,331 (A58) is entitled OPTICAL ADAPTER FOR CONTROLLING THE ANGLE OF THE PLANE OF FOCUS.  The invention is for an adapter for tilting a lens relative to an image plane of a camera.  This tilt allows control of the angle of the plane of focus and can therefore be used to bring objects positioned at different distances from the lens into focus.

Mr. and Mrs. Eastcott (Yva Momatiuk) are independent photographers who work together in the production of photographic art using the patented tilt imaging adapter photography for which Eastcott is a recognized expert. (A1227)  Like many artists and independent small inventors, Eastcott is a person with limited financial means (A36) Hasselblad is a large foreign corporation that manufactures and sells high-end expensive cameras and photographic equipment.

Claims 1, 6 and 26 were asserted, and claims 1 and 6 were found invalid and claim 26 valid but not infringed. (A1)  Eastcott only appeals the finding that valid claim 26 is not infringed.

In opposition to Hasselblad's summary judgment motion, Eastcott filed two opposition affidavits as Appendix 1 and Appendix 2 (A737, A757) setting out genuine issues of material facts for trial. The district court Order only considered the Appendix 2 affidavit (A757) and dismissed the Eastcott affidavit of (A737) on the grounds that Eastcott's affidavit was a "combination of a legal brief and an expert report and that Eastcott is not qualified to submit either." (A4)

The district court treated Eastcott's affidavit as an untimely submitted expert opinion when in fact the affidavit was timely submitted on January 27, 2012 in opposition to Hasselblad's motion for summary judgment filed on January 17, 2012. (A737, A757)

Paragraphs 36 to 44 of Eastcott's affidavit describe the Hasselblad adapter structure in detail, giving particularized testimony that the adapter structure performs substantially the same way and gives the same results as the adapter of the '331 patent-in-suit. (A757, A769)  The district court (A21) found that even if Eastcott was an expert, Eastcott's Rule 56 opposition affidavit does not contain "particularized" testimony to prove infringement on a limitation-by-limitation basis.  The district court's opinion provided no Markman claim construction or analysis with reasons as to why Eastcott's affidavit (A769) was insufficient but only a general conclusion as follows:

> Second, even if the stricken portions of Eastcott's affidavit, see supra, were admissible, either as expert testimony or otherwise, the affidavit does not contain the particularized testimony required to prove infringement on a limitation-by-limitation basis. (A21)

The district court struck out paragraphs 18-44 of Eastcott's affidavit from the record (A7) on the grounds that Mr. Eastoctt was not an expert.  However, the court failed to rule on paragraphs 69-75 under the heading "Facts Relating to Infringement" which were provided in Appendix 1 of Mr. Eastcott's affidavit. (A757)  These paragraphs set out particularized testimony showing infringement by Hasselblad's HTS 1.5 adapter on a limitation-by-limitation basis.

The district court found that Eastcott was unable to offer expert testimony because his answers during deposition testimony did not qualify him as an expert, (A6, A21) an opinion based on egregiously misleading questions taken out of

context and cited to the court by Hasselblad.  The cited deposition testimony of Eastcott relates to answers to general global questions slyly asked after a series of questions with negative answers on a specific subject matter to produce a negative answer to a general question.

Eastcott is an inexperienced witness who never had his deposition taken before. (A6)  He was asked misleading questions cited by Hasselblad to the district court as setting out seven instances on 12 pages of deposition testimony from a 260 page deposition transcript where Eastcott allegedly was unable to offer expert testimony.  (A6)  Contrary to Hasselblad's assertion to the court, all seven instances when put in full context prove that Eastcott is indeed an expert skilled in the art and highly skilled in tilt imaging adapter technology.

**The Court's Core Citation for Finding Eastcott was Not an Expert**

The sixth and related seventh instances at transcript pp. 245-247 (A1491-A1493), cited by the district court (A6, A21) are the core of the court's finding that Eastcott is not an expert.  On p. 239 (A1485) of his deposition Eastcott was presented with Exhibit 10, (A512) comprised of confusing exploded engineering drawings for lubricating a Hasselblad's HTS 1.5 adapter without any understandable description of its structure or operation.

Eastcott is not an engineer skilled in reading Hasselblad's exploded engineering drawings, but Eastcott is an expert at the actual Hasselblad physical

camera adapter construction. (A737, A743)  A sample of the Hasselblad HTS 1.5 adapter was brought to Eastcott's deposition by Hasselblad but no questions were put to Eastcott about the actual adapter.  Eastcott was asked to outline in yellow what he considered the mounting ring structure on unfamiliar, confusing, exploded engineering drawings.  Eastcott did not give his opinion as to the identity of the structures on these engineering drawings at pp. 245-246 (A1491, A1492) because he could not comprehend them.

With Eastcott's opposition brief (A701) Eastcott filed Appendix 1 and Appendix 2 in the form of two statements with sworn affidavits by Eastcott setting out material facts for trial.  The Appendix 1 statement (A737) with paragraphs 1-75 was signed by Eastcott's attorney.  Attached as the last page is an affidavit by John Eastcott swearing that to the best of his knowledge and belief certain statements are true including paragraphs 14, 15, 16, 18, 67 and 68. (A743, A744, A452)

This documentary testimony by Eastcott in this first Appendix 1 statement 1-75 was not cited to the district court by Hasselblad or referred to by the court in its opinion.  These statements establish that Eastcott was familiar with and relied on the structure of the device itself. (A734, A744) Hasselblad's misleading position is further compounded by the fact Hasselbad's attorney had an HTS 1.5 adapter device in his possession in the deposition room at the time of the deposition, but ignored the best evidence on this issue.  (A743)

Eastcott, a recognized expert in tilt imaging adapter photography, answered numerous technical expert questions during deposition. The first part of the 260 page transcript relates generally to damages, and the rest relates to expert answers to questions by one skilled in the art of tilt imaging adapter photography.  Eastcott gave expert testimony throughout multiple pages of the transcript.  (A1398, A1455, A1458, A1459, A1465, A1467, A1468)

## STATEMENT OF THE FACTS

On January 17, 2012, Hasselblad filed a Motion for Summary Judgment (A177) alleging that claims 1, 6 and 26 of Eastcott's patent are invalid and not infringed.

On January 27, 2012 Eastcott filed:

1.    Plaintiff's Brief in opposition to Defendants' Motion for Summary Judgment; (A701)

2.    Appendix 1- Plaintiff John Eastcott's Statement of Material Facts Pursuant to Rule 56.1 in Opposition to Defendants' Motion for Summary Judgment of Invalidity and Noninfringement. (A737)

      Appendix 1 contains statements paragraphs 1-75 and a one-page affidavit (A709) of Mr. Eastcott stating that certain numbered statements are true.

3.    Appendix 2 - Plaintiff's Statement of Additional Material Facts in opposition to Defendants' Motion for Summary Judgment. (A757)

      Appendix 2 contains statements 76-105, and has attached an affidavit entitled:

"Affidavit of John Eastcott in Support of Plaintiff's Additional Material Facts in Opposition to Defendants' Motion for Summary Judgment." (A769)

4.    Declaration of Douglas C. Wyatt in [Opposition to Defendants'] Motion for Summary Judgment, with 21 Exhibits attached.

On February 2, 2012, Hasselbad filed:

Defendants' Reply Brief in Support of Motion for Summary Judgment (plus supporting documents). (A1054)

The district court dismissed Eastcott's Appendix 2 opposition affidavit (A769) on grounds that Eastcott's affidavit was a "combination of a legal brief and an expert report" and that Eastcott is not qualified to submit either. (A4)  The district court did not refer to the sworn statements of Eastcott's Appendix 1 opposition affidavit. (A737)

Eastcott, a person highly skilled in the art, is a renowned expert photographer and an expert in the patented tilt imaging adapter photography with over thirty-five years of experience. (A1227)  He has had many contracts with National Geographic Society and on several occasions licensed unique bodies of work to the Society created with his patented tilt adapters. (A1227)  In the May 30, 2012 hearing, the district court recognized that Eastcott had commercial success with his patent and acknowledged it in the Summary Judgment Order.  (A18)

In opposition to Hasselblad's summary judgment motion, Eastcott filed two opposition affidavits (Appendix 1 and Appendix 2) setting out genuine issues of

material facts in dispute for trial. (A737, A757)  The district court only considered one of these affidavits (A757) and dismissed the Eastcott opposition affidavit on the grounds that Eastcott's affidavit was a "combination of a legal brief and an expert report and that Eastcott is not qualified to submit either." (A4)

The district court struck out paragraphs 18-44 of Eastcott's affidavit from the record (A7) on the grounds that Mr. Eastcott was not an expert.  The district court treated Eastcott's affidavit as an untimely submitted expert opinion when in fact it the affidavit was timely submitted on January 27, 2012 as an opposition affidavit to Hasselblad's motion for summary judgment filed on January 17, 2012. (A757)

**Eastcott's Expert Testimony**

The district court found that Eastcott was unable to offer expert testimony because of his answers during deposition testimony did not qualify him as an expert (A6, A21), an opinion based on egregiously misleading questions taken out of context cited to the court by Hasselblad.

The cited deposition testimony of Eastcott relates to answers to general global questions asked after a series of questions on a specific subject matter with negative answers to produce a negative answer to a general question.

Eastcott is an inexperienced witness who never had his deposition taken before. (A6)  He was slyly asked misleading questions cited by Hasselblad to the

district court as setting out seven instances on 12 pages of testimony from a 260 page deposition transcript where Eastcott allegedly was unable to offer expert testimony.  (A6)  Contrary to Hasselblad assertion of all seven instances when put in full context prove that Eastcott is indeed an expert skilled in the art and highly skilled in tilt imaging adapter technology.

**First Instance**

The first instance cited (A6) at pp. 191-193 (A1455, A1457) was in answer to a question as to the scope of what is covered by "means" in claim 1 beyond what is disclosed in Figures 4a and 4c of his patent.  Eastcott's answer to this question demonstrates his status as an expert as follows:

> Q.    Do you have an understanding of Claim 1 and what it covers, and you can say yes or no.
>
> A.    It is my understanding that it refers to means and the means as covered in Figures 4--
>
> Q.    Is it your understanding that the means is limited to the means covered in 4a through c?
>                    ++++++++
> THE WITNESS: I would need to seek further legal advice.

This is a hypothetical legal question without context concerning the scope of a means claim and displays Eastcott's expert understanding of the subject matter.

**Second Instance**

The second instance (A6) cited at pp. 215-216 (A1462, A1463), Eastcott stated that he could not give a position as to whether a German patent discloses

41

elements of his claims.  Left out of Hasselblad's citation to the court is Eastcott's

prior statement at p. 214 (A1461) where he testified that there was no way to tell if

there was an optical element in Figure 1 of the German patent to alter the plane of

focus as follows:

> Q.    You can't understand from Figure 1 what's being shown?
> A.    You cannot ascertain from Figure 1 certain things about
> that adaptor that you would need to know.
> There are many adaptors out there that alter the plane of focus.
> Q.    Would this one?
> A.    We cannot tell from the document in Figure 1 what is
> accomplished in altering the plane of focus. In Figure 1, there is no
> way to know if there is an optical element inside the adaptor.

Contrary to Hasselblad's claim to the court this testimony shows Eastcott is

an expert in the patented tilt imaging adapter photography.

**Third and Fourth Instances**

A third and fourth instance (A6) cited at pp. 236 to 230 (1482-1485) of

Eastcott's testimony, all relate to a question about whether Eastcott could give

legal opinion testimony identifying claim terms that require definition by the court.

At p. 233 (A1479) Eastcott's counsel informed Hasselblad's counsel that no claim

terms required definition as follows:

> MR. JOHNSON:  I'd like to know what terms you're going to
> contend need to be defined and what definitions you contend should
> be adopted by the court.
> MR. WYATT:  Presently, we believe the claim terms are
> defined in the patent and no claim construction is required.

At pp. 236 to 237 (A1482, A1483) Eastcott was asked multiple questions asking for legal conclusions about whether or not there were terms in the claims that required definition by the district court which he did not answer because it was not an area of his expertise and because of client attorney privilege.

On the following pp. 238-239 (1484, A1485) Hasselblad's counsel slyly asked a misleading general global question and the witness's answer was manifestly based on the immediate prior specific questions with negative answers asking for a legal opinion about words needing clarification by the court as follows:

> BY MR. JOHNSON:
>     Q.    And just to be clear, you're not in position to answer questions relating to interpretation of your patent --
>     A.    Legal interpretation. I am not a lawyer.

Eastcott's expertise as one skilled in the art did not require an answer to these legal opinion questions and demonstrates his ability to answer expert questions competently.

**Fifth Instance**

The fifth instance (A6) of misleading questions cited by Hasselblad to the district court (A6) referred to Eastcott's testimony at p. 244 (A1490) where he was asked to explain what was meant by "acute angles" and the element 15b of his patent as follows:

Q.     Okay. Do you have an understanding of what is meant by "at acute angles"?

A.     Yes.

Q.     With respect to 15b can you explain that to me?

A.     With respect to 15a?

Q.     15b?

A.     What's 15b?

Q.     I think you just testified that it was one of the cam grooves.  Now, I don't want you to give opinion testimony here.  If you have an understanding as the inventor, that's fine.

A.     I left that to my lawyer and that is a legal description and we will leave – I do not have an opinion.

The citation to the court of Eastcott's answer at p. 244 (1490) is particularly egregious. Previously Eastcott has given out expert answers as to the function of groove 15b on the prior pp. 243-244 (A1489, A1490) when Eastcott testified:

Q.     Can you identify by number the slots?

A.     You would have to refer to the descriptions.

Q.     Would they be 15a and 15b?

A.     I'm going to the descriptions, can we –

Q.     I was just trying to make it easier on you.

A.     Move within cam grooves 15a and 15b to allow an angular displacement.

Q.     So the slots are, in fact, cam grooves, aren't they?

A.     I think we've established that.

In Eastcott's '331 patent (A58), 15a is described as a cam groove as follows at col. 7, lines 38-41.

"Pins 14a and 14b move within the cam-grooves 15a and 15b to allow an angular displacement (tilt-swing) of the primary lens 1 in relation to the image recording area 4"

There is a reference to "angular displacement" in this description but not to "acute angles."  The question about acute angles without more explanation is

44

vague and ambiguous. These answers are another example that displays Eastcott's

expert competence and high level of skill in the art.

**Sixth and Seventh Instances**
**The Court's Core Citation for Finding Eastcott was Not an Expert**

The sixth and related seventh instances cited by the district court (A6, A21)

are the core of the court's finding that Eastcott is not an expert at pp. 245-247

(A1491, A1492, A1493).  On p. 239 (A1485) of his deposition Eastcott was

presented with Exhibit 10, (A512) comprised of confusing exploded engineering

drawings for lubricating Hasselblad's HTS 1.5 adapter without any understandable

description of its structure or operation.

Eastcott is not an engineer skilled in reading Hasselblad's exploded

engineering drawings.  Eastcott is an expert at the actual Hasselblad physical

camera adapter construction, (A743) a sample of which was brought to Eastcott's

deposition by Hasselblad but no questions were put to Eastcott about the actual

adaptor.  (A743 ¶16)  Eastcott was asked to outline in yellow what he considered

the mounting ring structure on unfamiliar, confusing, exploded engineering

drawings.  Eastcott did not give his opinion as to the identity of these structures on

unfamiliar, confusing, engineering drawings at pp. 245-246 (A1491, A1492)

because he could not comprehend them.

> Q.     Now, turning to Exhibit 10, which is a representation of
> Hasselblad's HTS 1.5 device, can you highlight for me in yellow the
> entire structure that you contend is a mounting ring?

+++

Q.    I don't want you to ask you to give an opinion you're not comfortable in giving.

A.    I do not comprehend the diagrams as performed here as given to me by Hasselblad. I cannot comprehend them.

Exhibit 10 (A512) was a diagram of not just of Hasselblad's HTS 1.5

adapter as represented in the question, but an exploded engineering drawing for

lubricating the adapter.  The principal drawing of Exhibit 10 appears below:



The above drawings are the same size as shown on the 8x10 inch deposition

Exhibit 10.  (A512)  The exploded view appears in the lower left corner of Exhibit

10 and the parts list is from the upper right corner of Exhibit 10. (A512)

The engineering drawing of Figure 10 (A512) has four almost unreadable printed statements about lubrication procedures and has twelve numbers in an undecipherable parts list.

Prior to his deposition Eastcott had never been asked to study Exhibit 10. In contrast, he relied on the actual Hasselblad adapter HTS 1.5.  (A743 ¶14)  Thus Hasselblad's attorney slyly and deliberately used confusing lubricating drawings to question Mr. Eastcott while the best evidence in the form of an HTS 1.5 adapter was available at Eastcott's elbow during his deposition and not used as the best evidence at hand.

## Hasselblad had the Best Evidence of the HTS 1.5 Adapter at the Deposition but Chose a Confusing Engineering Drawing Instead

With Eastcott's deposition brief, Eastcott filed two Statements with sworn affidavits by Eastcott setting out Material Facts for trial.  The Appendix 1 statement (A737) with paragraphs 1-75 was signed by Eastcott's attorney and attached on the last page is an affidavit by John Eastcott swearing that to the best of his knowledge and belief, the statements  including paragraphs 14, 15, 16, 18, 67 and 68 are true. (A756)

This documentary testimony by Eastcott in this first statement 1-75 was not cited to the district court by Hasselblad or referred to by the court.  These statements establish that Eastcott was familiar with and relied on the structure of the device itself. Hasselblad's misleading position is further compounded by the

fact Hasselbad had a HTS 1.5 adapter device in its possession in the deposition room at the time of the deposition, which was the best evidence on this issue.   In paragraphs 14 and 15 set out in Eastcott's sworn statements (A737) of these facts as follows:

++++++

14.    " +++  Plaintiff was unable to highlight the particular device because the document of the HTS 1.5 shown in the deposition Exhibit (Ex. 5, HAS 00994) was different from what he relied upon up to that time to identify the particular structure.  Mr. Eastcott relied upon the device itself and instead of being asked to compare the device he was shown an inadequate drawing. ++++"

++++++

15.    +++  The Defendants had a HTS 1.5 adapter device in its possession and did not ask questions about the actual device but instead used an incomplete and confusing lubrication drawing. ++?

At paragraph 68 of Eastcott's sworn statement (A757) to the court includes the fact that the HTS 1.5 adapter was the best evidence as follows:

68.    +++  The drawings are for camera lubrication and not for operational or functional descriptiveness.  The numbered parts on the Hasselblad drawing are not identified.  The actual Hasselblad camera with a primary lens and the HTS 1.5 adapter are the best evidence and not an incomplete drawing +++ .  The statements relating to the HTS 1.5 camera +++  cannot be clearly understood from the drawing used for lubricating the device.

And finally the district court was informed at paragraph 67 (A_) that

67.    +++ The drawings are for camera lubrication and not for operational or functional descriptiveness.  *See Id.*  The numbered parts on the Hasselblad drawings are not identified. +++ The actual

Hasselbad camera with primary lens and the HTS 1.5 adapter are the best evidence and not an incomplete drawing. +++"

Hasselblad's arguments were misleading in not citing to the district court due to the fact that the actual HTS 1.5 adapter was available at the deposition.

**Eastcott Gave Expert Opinion Answers for Deposition Testimony**

Eastcott, a recognized expert in tilt imaging adapter photography, answered numerous technical expert questions during deposition. The first part of the 260 page transcript relates generally to damages, and the rest relates to expert answers to questions by one skilled in the art of tilt imaging adapter photography. Eastcott gave expert testimony throughout multiple pages of the transcript.  (A1390, A1455, A1458, A1459, A1465, A1467)

For example at p. 69 (A 1398) Eastcott testified about

A.     No, I will go to that.  You have said tilt and Focus.  If you put out a product with tilt – not tilt, you said shift and Focus, I correct myself, as two other things incorporated in the HTS – the Hasselblad HTS adaptor. If you remove the tilt component and market your unit purely with shift and the Focus adaptor, be my guest.

Eastcott was asked if sufficient control of tilting could be achieved without the ball and socket mechanism between the lens and camera. On p. 191 (A1455) Eastcott answered

A.     Such a mechanism throws off the focus, throws off the composition, throws off the –the image circle you require a fair larger image circle. You introduce far more variables.  It becomes a pain in the bleeding neck."

Eastcott also described the method that Hasselblad used to place the adapter. (A1455) Eastcott was asked if there were other solutions to the problem of his invention (A1459, A1460) Eastcott was asked indicated that pin means groove design provides flexibility that other cameras do not have.

Eastcott explained telephone lens focusing mechanisms which are primarily helicoids, and cam and groove technology, both pertinent to "An Optical Adapter For Controlling the Angle of the Plane of Focus." (A1467)

Finally, Eastcott, although totally familiar with the structure of Hasselblad's adapter HTS 1.5, was not familiar with the engineering drawings of Exhibit 10. (A512) Eastcott had ample time between the date of his deposition on December 20, 2011 and the preparation of Rule 56 opposition affidavits (A737, A757) in March, 2012 to continue his examination of the Hasselblad adapter including the drawings.

The court did set out differences between Eastcott's and Hasselblad's positions on pp. 12 and 13 but made no Markman ruling construing claim 26 for grounds for a non-infringement order.

## Eastcott's Affidavit's Paragraphs 36 to 44 Set Out Genuine Issues of Material Facts for Trial (A769)

The district court struck out paragraphs 18-44 of Eastcott's affidavit (A769) from the record (A7) on the grounds that Mr. Eastcott was not an expert. The district court treated Eastcott's affidavit as an untimely submitted expert opinion,

when in fact the affidavit was timely submitted on January 27, 2012 (A757) in

opposition to Hasselblad's motion for summary judgment filed on January 17,

2012.

The district court quoted seven example paragraphs in Eastcott's opposition

affidavit (A5, A6), as representative of the content of Eastcott's opposition

affidavit but did not analyze their content.

Paragraphs 36 to 44 (A769) describe the Hasselblad camera adapter

structure in detail showing that the adapter structure performs substantially the

same way and gives the same results as the adapter of the '331 patent-in-suit. The

district court (A21) found that the Eastcott's Rule 56 opposition affidavit does not

contain "particularized" testimony to prove infringement on a limitation-by-

limitation basis as follows:

> "Second, even if the stricken portions of Eastcott's affidavit, see
> supra, were admissible, either as expert testimony or otherwise, the
> affidavit does not contain the particularized testimony required to
> prove infringement on a limitation-by-limitation basis."

Other than this general statement there is no Markman analysis of claim 26

indicating why paragraphs 36 to 44 are inadequate.  On the contrary, Eastcott's

affidavit offers particularized testimony at paragraphs 36-44. (A780, A781, A782)

on a limitation-by-limitation basis as follows:

> 36.    The HTS 1.5 adapter has a mounting ring holding the secondary
> lens.  The adapter has two pins protruding into the slots.  Hasselblad
> has reversed the '331 patent structure by putting the slots on the

51

mounting ring and the pins on the casing. The adapter includes a front face coupling means on the adapter body to removably mount the interchangeable lens and back face coupling on the adapter body to removably mount the adapter on the optical instrument.

37.     The HTS 1.5 adapter includes tilts means and the equivalent of two slots at acute angles to the optical axis.

38.     The HTS 1.5 adapter tilts the secondary lens and the interchangeable lens attached to the front face coupling means of the adapter body and thereby tilts the optical axis of the interchangeable lens at an acute angle to the optical axis of the optical instrument.

39.     The HTS 1.5 adapter includes mounting ring, holding a secondary lens which is the equivalent of the mounting ring holding a secondary lens and two pins protruding outwardly from the mounting rings.

40.     The HTS 1.5 adapter includes a casing member having two slots wherein each pin of the HTS 1.5 adapter slides within one of the slots. At least one line can be drawn at a tangent to a side of a slot and the line forms an acute angle to the optical axis of the optical instrument angles.

41.     The pins in the HTS 1.5 slide in slots and the HTS 1.5 adapter provides slots to control the orientation of the primary lens relative to the image plane.

42.     The '331 patent provides slots to direct and control the amount and location of tilt and HTS 1.5 adapter provides slots to control the orientation of the primary lens relative to the image plane..

43.     The '331 patent provides cam pins which move within cam-grooves to allow an angular displacement of the primary lens in relation to the image recording area is equivalent to the HTS 1.5 adapter which provides cam pins which move within cam-grooves to allow an angular displacement of the primary lens in relation to the image recording area.

44.    The HTS 1.5 adapter provides slots and pins that perform in the substantially the same way, using substantially the same means with substantially the same result as the slots and pins described in the '331 patent.

**Eastcott's First Affidavit of Material Facts (A737)**

The district court failed to consider the issues of fact set out in Eastcott's Appendix 1 Statement of Material Facts Nos. 1-75 with his first affidavit (A756) swearing to certain numbered paragraphs. This document in paragraphs 69-75 (A752, 753) sets out issues of fact for trial for Hasselblad's infringement of the claims of Eastcott's patent.  For instance paragraph 69 (A752) sets out this issue as follows:

There exists an issue of genuine material fact to be tried.  The HTS 1.5 has a construction with two (2) pins equivalent to the two (2) pins required by asserted claims in the patent-in-suit.  Hasselblad has modified the position of the pins and cams to provide the identical advantages. (Ex. 5, Ex. 16).  Hasellblad has put its two pins in a casing structure and the cams in the mounting ring structure to provide the advantageous function of allowing the pivot point to move along the cam. See Id.

These paragraphs sworn to by Eastcott as true (A756) were not struck from the record by the Court and set out in detail below show the Hasselblad HTS 1.5 adapter is an equivalent structure claimed in Eastcott's patent.

## SUMMARY OF THE ARGUMENT

There are material issues of fact for trial when Eastcott, the patentee, a person highly skilled in the art, a recognized expert in the patented tilt imaging

adapter photography, submitted an affidavit in opposition to Hasselblad's Motion

for Summary Judgment setting out material issues of fact for trial.  The district

court dismissed Eastcott's opposition affidavit on the grounds that (A38)

> "a district court abuses its discretion if it permits a witness to testify as
> an expert on the issues of non-infringement or invalidity unless that
> witness is qualified as an expert in the pertinent art," <u>Sundance, Inc. v.
> DeMonte Fabricating Ltd.</u>, 550 F.3d 1356, 1363 (Fed. Cir. 2008).

The <u>Sundance</u> case related to a patent attorney testifying as an expert and not

a patentee highly skilled in the art in opposition to summary judgment.  The

pertinent rule in <u>Sundance</u>, <u>id.</u> at 1363 is that determination of infringement is done

from the perspective of one skilled in the art.The status of a patentee as an expert is

a patent law issue for this court as recognized in <u>Meyer Intellectual Properties Ltd.

v. Bodum Inc.</u>, 690 F.3d 1354, 1371 (Fed. Cir. 2012)

The district court's principal grounds for Eastcott's disqualification was

because he failed to give answers when asked to examine Hasselblad's engineering

diagrams for lubricating which he had not been given time to study.  Eastcott is not

an engineer and did not comprehend the diagrams.  His expertise was grounded in

knowledge of the actual construction of Hasselblad's HTS 1.5 adapter. (A743)

Hasselblad's attorney had the actual Hasselblad adapter in the deposition room but

failed to examine the witness on the best evidence. (A744) The court was mistaken

in not accepting this evidence of Eastcott's knowledge of the actual adapter present

in the deposition room.  The Supreme Court held in <u>Anderson v. Liberty Lobby,</u>

<u>Inc.</u>, that:

> The evidence of the non-movant is to be believed, and all justifiable
> inferences are to be drawn in his favor.

477 U.S. 242, 255 (1986)(citations omitted).

Where the technology involved is simple and easily understandable, expert

testimony is not required.  <u>See</u> <u>Meyer Intellectual Properties Ltd. v. Bodum Inc.</u>,

690 F.3d 1354, 1374 (Fed. Cir. 2012)(citations omitted).  Eastcott's two affidavits

(A737, A756, A769) with statements on a limitation-by-limitation basis showing

Hasselblad's infringement properly set out material issues of fact for trial.  This

simple issue of fact for trial is set out in Eastcott's other affidavit (A737, A753) in

paragraph 71 as follows:

> "… Hasselblad has two (2) slots which each receive a pin
> which slides along the slots which is equivalent to the claimed subject
> matter of the patent-in-suit.  Hasselblad has reversed the position of
> the pins and the slots to obtain the advantages of Plaintiff's invention.

## <u>ARGUMENT</u>

For all four issues the standard of review for summary judgment in patent

cases is set by the United States Court of Appeal for the Second Circuit.

This Court reviews summary judgment orders de novo.

A party is entitled to summary judgment only if it can show by undisputed

facts supported by admissible evidence that it is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(c).  The burden of showing that no genuine factual dispute

exists rests on the party seeking summary judgment.  See New York University v.

Autodesk, Inc., 495 F. Supp. 2d 369, 372 (S.D.N.Y. 2007)(citing Adickes v. S.H.

Kress & Co., 398 U.S. 144, 147 (1970)).

>  "[I]n assessing the record to determine whether there is a genuine
> issue as to a material fact, the Court is required to resolve all
> ambiguities and draw all reasonable inferences in favor of the party
> against whom summary judgment is sought." See id. citing Anderson
> v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

There are material issues of fact for trial when Eastcott, the patentee, a

person highly skilled in the art, a recognized expert in the patented tilt imaging

adapter photography, submitted an affidavit in opposition to Hasselblad's Motion

for Summary Judgment setting out material issues of fact for trial and the district

court held that:

> "The majority of the affidavit is essentially a combination of a legal
> brief and an expert report, and Eastcott is not qualified to submit
> either." (A4)

In opposition to Hasselblad's summary judgment motion, Eastcott filed two

opposition affidavits setting out genuine issues of material facts in dispute for trial.

(A737, A757)  The district court dismissed Eastcott's opposition affidavit on the

grounds that one of Eastcott's affidavits was a "combination of a legal brief and an

expert report" (A4) and that Eastcott is not qualified to submit either because

> " a district court abuses its discretion if it permits a witness to testify
> as an expert on the issues of non-infringement or invalidity unless that

witness is qualified as an expert in the pertinent art," <u>Sundance, Inc. v. DeMonte Fabricating Ltd.</u>, 550 F.3d 1356, 1363 (Fed. Cir. 2008).

The <u>Sundance</u> case related to a patent attorney testifying as an expert and not

a patentee highly skilled in the art.  The pertinent rule in <u>Sundance</u> is that

determination of infringement requires

> . . . identification of the claim elements as well as the determination of infringement itself are done from the perspective of one of ordinary skill in the art.

550 F.3d 1356, 1361 n.3 (Fed. Cir. 2009)

In addition, <u>Howmedica Osteonics v. Wright Med. Tech.</u> ruled that an

inventor can give expert testimony:

> The testimony of an inventor, of course, may be pertinent as a form of expert testimony, or example, as to understanding the relevant art. <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1318 (Fed. Cir. 2005).

540 F.3d 1337, 1347 n.5 (Fed. Cir. 2008)(en banc); <u>see also</u>, <u>Sundance</u>, 550 F.3d

1360 n.5.

Further in <u>Phillips</u> the court held claim construction should be interpreted by

one of ordinary skill in the art:

> but upon giving claims their broadest reasonable construction "in light of the specification as it would be interpreted by one of ordinary skill in the art: <u>In Re Am. Acad. Of Sci. Tech. Ctr.</u>, 367 F.3d 1358, 1364 (Fed. Cir. 2004).

415 F.3d at 1316.

The district court was mistaken in creating Eastcott's opposition affidavit (A756) as an expert report of the type required under Fed. R. Civ. P. 26.  In addition the district court held that he was not qualified as an expert even though he is the patentee, one highly skilled in the art and a recognized expert in the patented tilt imaging adapter technology to file a Rule 56 opposition affidavit to the Motion for Summary Judgment setting out material issues of fact for trial. (A6, A21)

Eastcott, who is highly skilled in the relevant art and a recognized expert in the patented tilt imaging adapter technology was not required by any court rule to hire a third party expert to give independent expert opinion under Fed. R. Civ. P. 26 on a subject within the patentee's expertise.  The district court was mistaken in striking the substantive paragraphs from Eastcott's opposition affidavit (A737, A756) with technical statements that were within the realm of a patentee's expertise as recognized by this Court.  The status of a patentee as an expert is a patent law issue recognized in Meyer Intellectual Properties Ltd. v. Bodum Inc., as follows:

> "We **review** the **district court's** decision to exclude evidence under the law of the relevant regional circuit.  Research Corp. Techs. v. Microsoft Corp., 536 F.3d 1247, 1255 (Fed. Cir. 2008) ("The Federal Circuit applies its own law with respect to issues of substantive **patent** law and certain procedural issues pertaining to **patent** law, but applies the law of our sister circuits to non-**patent** issues.")

690 F.3d at 1371.

Eastcott has licensed unique bodies of work created with his patented tilt adapters to National Geographic Society.  In the May 30, 2012 hearing, the district court recognized that Eastcott had commercial success with his patent and also in the Summary Judgment Order. (A18)

Eastcott was disqualified as a witness based on misleading general global deposition questions put to him after a series of specific questions about a specific subject provided a negative answer out of context of the prior questions.  In fact, an analysis of this testimony discloses the high level of Eastcott's expertise as discussed supra.

The district court's principal grounds for Eastcott's disqualification was because he failed to give answers when asked to examine Hasselblad's engineering diagrams for lubricating which he had not been given time to study.  Eastcott is not an engineer.  His expertise was technical expertise grounded in knowledge of the actual physical construction of Hasselblad's HTS 1.5 adapter camera. Hasselblad's attorney had the actual Hasselblad HTS 1.5 adapter in the deposition room but failed to examine the witness on the best evidence.  Eastcott's affidavit (A743) states that he was knowledgeable of the actual Hasselblad HTS 1.5 adapter. The court was mistaken in not accepting this evidence of Eastcott's knowledge of the actual adapter.  The Supreme Court held in Anderson that:

The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.

477 U.S. at 255

Eastcott had no obligation to testify at the deposition concerning the actual Hasselblad adapter when not queried by Hasselblad's counsel. A non movant party is not required to depose its own witness to avoid summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986)

In this case where the technology involved is simple and easily understandable, expert testimony is not required. See Meyer, 690 F.3d at 1374. Eastcott's two affidavits (A737, A757) with statements on a limitation-by-limitation basis including paragraphs 36 to 44 showing Hasselblad's infringement properly set out material issues of fact for trial. This simple issue of fact for trial is set out in Eastcott's other affidavit (A737, A756, A769) in paragraph 71 (A753) as follows:

> There exists an issue of genuine material fact to be tried. Hasselblad has two (2) slots which each receive a pin which slides along the slots which is equivalent to the claimed subject matter of the patent-in-suit. Hasselblad has reversed the position of the pins and the slots to obtain the advantages of Plaintiff's invention.

## <u>CONCLUSION</u>

The record demonstrates that there are genuine issues of material fact as to whether Eastcott's Rule 56 affidavits in opposition to Hasselblad's Motion for Summary Judgment provides evidence of Hasselblad's infringement.  Such issues of material fact are for determination by trial.  The Court made no finding of fact as to the details of why Hasselblad's HTS 1.5 adapter does not infringe claim 26.  Accordingly, the award of summary judgment should be reversed.

Respectfully submitted

This 25th day of February, 2013    /s/ Douglas W. Wyatt

Douglas W. Wyatt (DW8123)
Wyatt, Gerber & O'Rourke
99 Park Avenue, Suite 330
New York, N.Y. 10016
(212) 681-0800
douglaswwyatt@aol.com
*Attorneys for Plaintiff-Appellant*
John Eastcott

# ADDENDUM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
JOHN EASTCOTT,                      :
                Plaintiff,          :
                                    :        11 Civ. 5383 (JSR)
        -v-                         :
                                    :        MEMORANDUM ORDER
HASSELBLAD A/S, HASSELBLAD USA INC., :
and B&H PHOTO & ELECTRONICS CORP.,  :
                                    :
                Defendants.         :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

    Plaintiff John Eastcott, a professional photographer and

the inventor of U.S. Patent No. 5,592,331 ("the '331 patent"),

brings suit against defendants Hasselblad A/S, Hasselblad USA

Inc, (collectively "Hasselblad") and B & H Photo & Electronics

Corp ("B & H").  Eastcott alleges that Hasselblad's HTS 1.5

adapter (the "HTS 1.5 adapter") infringes three claims of his

patent, which relates to adapters for tilting a lens with

respect to a camera.  The defendants move for summary judgment,

arguing that two of the three claims, claims 1 and 6, were

anticipated by a German patent (the "'496 patent") that was

published 15 years before the '331 patent, and that the third

claim of the '331 patent, claim 26, is invalid for obviousness

in view of another United States patent (the "'963 patent").

Defendants also argue that the HTS 1.5 adapter does not infringe

Claim 26 of the '331 patent.  After full consideration, the

Court grants the defendants' motion for summary judgment and

1

dismisses the complaint.

The '331 patent, titled OPTICAL ADAPTER FOR CONTROLLING THE ANGLE OF THE PLANE OF FOCUS, was filed as U.S. Patent Application No. 08/374,248 on January 18, 1995 and issued on January 7, 1997. According to the '331 patent, tilting a lens relative to the image plane of a camera can bring objects positioned at different distances from the lens into focus simultaneously. Declaration of Mark Johnson ("Johnson Decl."), Jan. 17, 2012, Ex. A, U.S. Patent No. 5,592,331 (the "'331 patent,") at 3:51-58. Such tilting also allows a user to render objects "positioned at the same distance from the lens plane with different degrees of sharpness." Id. For example, "a portrait of a person facing the camera may be recorded with one side of the face sharp and the other mysteriously soft and out of focus." Id.

The three claims of the patent that plaintiff asserts were infringed by defendants are Claims 1, 6, and 26. The text of those three claims is as follows:

Claim 1:

An adapter for altering the angle of the plane of focus of an optical system, the optical system including (a) an optical instrument having an opening through which an image forming beam can pass, an image plane adapted to receive an image thereon and an optical axis, and (b) an interchangeable lens having an optical axis; the adapter being sandwiched between, and removably connected to, the optical instrument and the interchangeable lens; the adapter having (i) an

2

adapter body; (ii) a secondary lens mounted within the
adapter body, (iii) a front face coupling means on the
adapter body to removably mount the interchangeable
lens thereto, (iv) a back face coupling means on the
adapter body to removably mount the adapter to the
optical instrument, and (v) tilt means to tilt the
optical axis of the interchangeable lens at a
variable, including non-perpendicular, angle to the
image plane of the optical instrument.

Claim 6:

An adapter as in claim 1 wherein the adapter tilt
means tilts the secondary lens and the interchangeable
lens attached to the front face coupling means of the
adapter body and thereby tilts the optical axis of the
interchangeable lens at an acute angle to the optical
axis of the optical instrument.

Claim 26:

An adapter as in claim 1 wherein the tilt means
includes a mounting ring holding the secondary lens
two pins protruding outwardly from the mounting ring
and a casing member having two slots therein at acute
angles to the optical axis of the optical instrument
and wherein each pin slides within one of the slots.


The allegedly infringing device here is the HTS 1.5

adapter.  This adapter provides both tilt and swing

functionality.[1]  When Hasselblad began to market its HTS 1.5

adapter (including through defendant B & H), it stated that the

adapter was "revolutionary" because it provided creative control

for photographers by allowing them greater ability to control

---

[1] The '331 patent explains that "tilt" typically refers to
rotation about a horizontal axis and "swing" typically refers to
rotation about a vertical axis, but that the terms are used
interchangeably in the '331 patent because a "swing" can become
a "tilt" if the photographer rotates the camera 90 degrees. '331
patent at 3:8-13, 5:31-40.

3

the plane of focus. Declaration of Douglas C. Wyatt, Jan. 27, 2012 ("Wyatt Decl."), Ex. 15. After Eastcott learned of Hasselblad's intention to sell the allegedly infringing HTS 1.5 adapter, he immediately wrote to Hasselblad's CEO, Christian Poulsen, to share his belief that the adapter infringed his '331 patent. See Wyatt Decl. Ex. 11.

Under Federal Rule of Civil Procedure 56(a), a party seeking summary judgment must demonstrate that there is "no genuine dispute as to any material fact" and that the party is "entitled to a judgment as a matter of law." Fed. R. Civ. P.56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[S]ummary judgment will not lie ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Before turning to the merits of the dispute, the Court must examine the admissibility of the affidavit submitted by Eastcott in support of his opposition to the motion for summary judgment. See Wyatt Decl., Ex. 23, Affidavit of John Eastcott ("Eastcott Aff."). The majority of the affidavit is essentially a combination of a legal brief and an expert report, and Eastcott is not qualified to submit either. The affidavit includes headings such as "Claim 1 is not Anticipated," and "Claim 26 of '331 Patent is not Obvious Over '496 German Patent in View of

4

the '963 Patent," followed primarily by legal argument and
opinions in support of those headings.

The Court will not discuss problems with each of the
individual paragraphs of the affidavit at great length, but it
is necessary to set forth a few examples of paragraphs from the
affidavit to illustrate its content:

- Mr. Poulsen's expert testimony on how it would be
  obvious for the zoom lens of the '963 patent to be
  used with the adapter of the German '496 patent is
  not convincing because he has no background in
  photography but rather is an engineer with a
  background in the magnetic field theory and coherent
  radar receivers.
- The Defendants' HTS 1.5 adapter infringes claims
  1,6, and 26 of the patent-insuit.  The Defendants
  copied Plaintiffs invention claimed in the '331
  patent.
- Defendants' Statement concerning the inadequacy of
  Mr. Eastcott's testimony about infringement are
  reputed [sic] in detail by issues nos. 1 - 24 in
  Eastcott's Statement of Material Fact in Opposition
  to Defendants' Motion. As pointed out in Plaintiff's
  Objections to Defendants' Statement of Material
  Fact, the questions by Defendants' attorney are
  asking for legal conclusions and not statements of
  fact.
- Claims 1 and 6 of the U.S. 5,592331 ("331") patent
  are not anticipated by the German Patent DE 28551496
  ("496") and claim 26 is not obvious over the '496
  patent in view of the U.S. 5,264,963 ("963") patent.
- Claim 26 is not obvious over the German '496 patent
  in view of the '963 patent for reasons discussed
  above for the anticipation of claim 1 by the' 496
  patent and the fact that it is manifest that the
  zoom lens of the '963 patent does not make the use
  of the slots and pins of claim 26 obvious over the
  '496 German patent.
- The bearing axis 7 of the '963 patent or pivot point
  cannot move in an arc as with the axis of rotation
  created with claims 1,6 and 26 of the '331 patent.

5

> Because the bearing axis 7 of the '496 patent cannot
> move in an arc, it cannot perform the function of
> the axis of rotation outlined in the '331 patent
> which advantageously provides specific benefits.
> * The HTS 1.5 adapter provides slots and pins that
>   perform in the [sic] substantially the same way,
>   using substantially the same means with
>   substantially the same result as the slots and pins
>   described in the '331 patent.

Id. ¶¶ 18, 35, 26, 31, 32, 33, 37, 44.

Under the scheduling order set in this case, Eastcott's

affidavit, to the extent it reduces to a proffer of expert

opinion, is untimely.  Even if this were not the case, a

district court abuses its discretion if it "permits a witness to

testify as an expert on the issues of non-infringement or

invalidity unless that witness is qualified as an expert in the

pertinent art," Sundance, Inc. v. DeMonte Fabricating Ltd., 550

F.3d 1356, 1363 (Fed. Cir. 2008), and Eastcott has already

testified that he is unable to offer any such expert testimony.

See, e.g., Reply Declaration of Mark C. Johnson, Feb. 2, 2012,

Deposition of John Eastcott, Dec. 20, 2011 ("Eastcott Dep.") at

191:11-193:11, 215:3-216:25, 236:12-237:25; 238:2-239:3; 244:3-

20. In fact, when asked to examine the diagrams of the HTS 1.5

adapter, Eastcott testified at his deposition that, "I do not

comprehend the diagrams as performed here as given to me by

Hasselblad. I cannot comprehend them." Id. at 245:25-246:1-2.

And when asked, for example, whether he had "formed any opinions

with regard to what element on a Hasselblad HTS device

6

corresponds to a mounting ring?" he stated that he had formed no such opinion.  Id. at 246:20-247:5.

Furthermore, to the extent that Eastcott's affidavit contains legal argument, it is misplaced, since such argument should be included in the memorandum of law that his counsel submitted.  Therefore, those paragraphs of Eastcott's affidavit that proffer expert opinions or legal arguments about his patent or the allegedly infringing adapter - notably, paragraphs 18-44 of Eastcott's affidavit -- are hereby stricken.[2]

With the evidentiary decks thus cleared, the Court turns next to claim construction.  See Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996).

The only disputed term in Claim 1 is the term "tilt means." The parties agree that the tilt means element of claim 1 is written in means-plus-function form and is thereby subject to paragraph 6 of 35 U.S.C. § 112.  Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment ("Pl. Mem.") at 6-7;

---

[2] Although there are also objectionable and inappropriate statements in paragraphs 6-8 and 10-17, a few of the statements within those paragraphs are appropriate, because "[t]he testimony of the inventor may also provide background information, including explanation of the problems that existed at the time the invention was made and the inventor's solution to these problems." Voice Technologies Group, Inc. v. VMC Sys., Inc., 164 F.3d 605, 615 (Fed. Cir. 1999). Because the Court does not rely on any of the inadmissible or inappropriate statements in those paragraphs, it is not necessary to parse those paragraphs to separate out the appropriate sentences from the inappropriate sentences.

7

Defendants' Brief in Support of Motion for Summary Judgment ("Def. Mem.") at 11.  According to paragraph 6 of 35 U.S.C. § 112, when a claim expresses a means "for performing a specified function," but does not specify a structure, "such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

The construction of a "means-plus-function limitation" has two steps: a court must first "determine the claimed function," and second "identify the corresponding structure in the written description that performs that function." JVW Enterprises, Inc. v. Interact Accessories, Inc., 424 F.3d 1324, 1330 (Fed. Cir. 2005).  As to the first step, the relevant portion of Claim 1 states that the optical system includes "tilt means to tilt the optical axis of the interchangeable lens at a variable, including non-perpendicular, angle to the image plane of the optical instrument."  The parties agree that the claim language sets forth the function of the "tilt means," i.e., to "tilt the optical axis of the interchangeable lens at a variable, including non-perpendicular, angle to the image plane of the optical instrument."  Pl. Mem. at 7; Def. Mem. at 11.

The structures that perform the function of tilting the optical axis of the interchangeable lens are set forth in the description section of the '331 patent.  According to the '331 patent, "FIGS. 1a-3b are side cross-sectional views of three

8

embodiments showing the adapter of the present invention; and
FIGS. 4a-4c are side elevational views of a fourth embodiment
showing the adapter of the present invention." '331 Patent at
5:59-63. Defendants argue that the '331 patent therefore
describes four embodiments of an adapter, each using different
mechanisms to accomplish the tilting function. Specifically,
they argue that: Figure 1 includes a pivot mechanism, see id.
at 6:25-47; Figure 2 includes a ball and socket mechanism, see
id. at 6:48-7:5; Figure 3 includes a sleeve and rod mechanism
see id. at 7:6-24; and Figure 4 includes a cam and pin
mechanism, see id. at 7:25-8:11.

Plaintiff agrees that the patent discloses the ball and
socket, sleeve and rod, and cam and pin mechanisms, but he
argues that "[u]nlike the three corresponding structures
discussed above which are shown in Figures 2 - 4, no structure
is associated with the pivot is associated with [sic] Figure 1."
Cf. Pl. Mem. at 9. Plaintiff argues that Figure 1 shows only "a
theoretical axis 22," and therefore discloses neither the
structure of the pivot nor a specific pivot mechanism. Id. at
17.

The Court finds plaintiff's arguments unpersuasive. The
'331 patent consistently refers to four embodiments of the
invention, and specifically states that Figures 1a and 1b are an
embodiment of the invention, rather than a drawing to

9

"demonstrate the principles of" the invention.  Pl. Mem. at 9.[3]

The patent then states that "[i]n the first embodiment shown in

FIGS. 1a and 1b, a simple pivot is employed along an axis." '331

Patent at 6:25-26.  Moreover, the '331 patent uses the same

reference numerals to indicate the same structural elements

represented in the four different embodiments.  Id. Figs. 1-4.

The question on claim construction is whether a skilled

artisan would "understand the written description itself to

disclose such a structure."  See Telecordia Techs., Inc. v.

Cisco Sys., Inc., 612 F.3d 1365, 1376 (Fed. Cir. 2010) (quoting

Tech. Licensing Corp. v. Videotek, Inc., 545 F.3d 1316, 1338

(Fed. Cir. 2008))).  In Telecordia, the Federal Circuit

concluded that, although figures in the relevant patent depicted

a "controller" only as a "black box" and "nothing in the figures

describe[d] the details of its inner circuitry," the patent

"disclose[d] adequate defining structure to render the bounds of

---

[3] In his affidavit, Eastcott describes his rationale behind the
inclusion of Figure 1. Eastcott says that he provided Figure 1
to show the principles of his invention, and that those
principles were to be understood in view of Figures 2 - 4.
Wyatt Decl. Ex. 23, Affidavit of John Eastcott ("Eastcott Aff.")
¶¶ 20, 21. But this runs contrary to the clear and plain wording
of the patent as discussed above.  Even assuming arguendo that
this portion of the affidavit were admissible, courts are not
required to give "deference to the testimony of the inventor
about the meaning of the claims," especially when that testimony
is not cumulative but instead contradicts the plain wording of
the claims and the other evidence. Hoechst Celanese Corp. v. BP
Chems. Ltd., 78 F.3d 1575, 1580 (Fed. Cir. 1996).

10

the claim understandable to an ordinary artisan" because "an ordinary artisan would have recognized the controller as an electronic device with a known structure." 612 F.3d at 1377.

Here, an ordinary artisan would have recognized that the term "axis" was a structural element with a known structure. The defendants' expert, Anders Poulsen, declared that, in this context, the term "axis" is "often used by engineers to refer to a structural element, the most common type being a pin capable of rotating in a hole." Poulsen Reply Decl. at 3; see also Wyatt Decl. Ex. 11, Deposition of Anders Poulsen ("Poulsen Dep."), Jan. 5, 2012, at 197:2-14. Plaintiff has not provided any expert to contradict the definition provided by defendants' expert, and thus the Court accepts Poulsen's unrebutted definition.[4] See Creo Products, Inc. v. Presstek, Inc., 305 F.3d 1337, 1347 (Fed. Cir. 2002) (concluding that a structure was disclosed for performing the function of "means for rotating each cylinder," based on expert testimony that spindles are commonly used for rotating plate cylinders in printing presses).

Plaintiff essentially asks the Court to ignore Figure 1 in the patent and the structure that it discloses. Plaintiff's proposed construction would thus invalidate one of the embodiments of the patent, but "when multiple embodiments in the

_____

[4] The Court finds that plaintiff's arguments about Poulsen's qualifications and ability, see Pl. Mem. at 13, are insufficient to warrant the exclusion or discounting of his expert testimony.

11

specification correspond to the claimed function, proper

application [of paragraph 6 of §112] generally [requires a court

to read] the claim element to embrace each of those

embodiments." Micro Chem., Inc. v. Great Plains Chem. Co., 194

F.3d 1250, 1258-1259 (Fed. Cir. 1999). Therefore, the Court

adopts the definition of tilt means proposed by the defendant,

and finds that the "tilt means" include a pivot mechanism, a

ball and socket mechanism, a sleeve and rod mechanism, and a cam

and pin mechanism.

The Court next turns to the claim construction of Claim 26.

As set forth above, Claim 26 states:

> An adapter as in claim 1 wherein the tilt means includes a
> mounting ring holding the secondary lens two pins
> protruding outwardly from the mounting ring and a casing
> member having two slots therein at acute angles to the
> optical axis of the optical instrument and wherein each pin
> slides within one of the slots.

Although defendants contend that there are five terms in

Claim 26 to construe, only three of those terms are disputed.

First, defendants argue that "casing member" should be defined

as "a structure that encases the mounting ring," but plaintiff

argues that it should be defined as a "structure that encases."

Second, defendants argue that "slot" should be defined as "an

opening having a generally linear portion," while plaintiff

argues that it should be defined as "a narrow opening or

groove." Third, defendants argue that "slots . . . at acute

12

angles to the optical axis of the optical instrument" should be
defined as "each of the two slots has a generally linear portion
that is oriented such that the linear portion of the slot forms
an acute angle with the optical axis of the optical instrument."
Plaintiff does not include a full definition in response, but he
argues that the definition of this term should not include the
"generally linear portion" suggested by the defendants.[5]

The Court need not construe the three disputed terms in
Claim 26, however, because -- for the reasons set forth below --
under either party's construction, the Court, while denying
summary judgment as to the invalidity of Claim 26, would grant
summary judgment for lack of infringement of that Claim.

After construing the necessary terms in the claims, the
Court next considers the validity of the asserted claims.  A
properly issued patent is presumed valid, and defendants must
present clear and convincing evidence of invalidity to overcome
that presumption.  AK Steel Corp. v. Sollac & Ugine, 344 F.3d
1234, 1238-39 (Fed. Cir. 2003).

---

[5] As noted, there are also two terms in Claim 26 for which
defendants have proposed undisputed constructions.  Therefore,
the Court adopts those undisputed definitions.  Specifically,
the Court finds that "casing member having two slots therein" is
defined as "the casing member has two slots on a side of the
adapter," and "wherein each pin slides within one of the slots"
is defined as "each of the pins extending from the mounting ring
slides within a separate one of the slots."

13

Defendants claim that the Claims here in issue are invalid because they were anticipated by prior art. In order for a patent to be valid, its claims must be "novel." 35 U.S.C. § 102. Therefore a claim is invalid as anticipated if each and every limitation is found either expressly or inherently in prior art. King Pharms., Inc. v. Eon Labs., Inc., 616 F. 3d 1267, 1274 (Fed. Cir. 2010).

Defendants argue that Claim 1 of the '331 patent is anticipated because the prior German '496 patent discloses an adapter with a secondary lens mechanism for "tilting the optical axis of an attached lens at a non-perpendicular angle to the image plane of the camera."[6] Def. Mem. at 18. The only dispute between the parties regarding anticipation by the '496 patent is whether the '496 patent discloses a tilt means as disclosed in Claim 1 of the '331 patent.

Although the '496 patent describes a "bearing axis 7," plaintiff argues that the bearing axis 7 is simply a line or point around which the slides pivot. But, as stated above defendants' expert has testified, without admissible contradiction, that in this context, the word "axis" is "often

---

[6] Plaintiff objects generally to the translation of the '496 patent, but he does not provide his own translation or describe any specific problems with the translation submitted by the defendants. The defendants' translator certified that he is an official translator in Danish and German, Wyatt Decl. Ex. 3 at 3775, and the Court finds no problem with the translation. Therefore, the Court overrules any objection to the translation.

14

used by engineers to refer to a structural element, the most

common type being a pin capable of rotating in a hole." Reply

Declaration of Anders Poulsen, Feb. 2, 2012 "Poulsen Reply

Decl." ¶ 8. Defendants' expert has repeatedly explained that an

axis, even though it is not "described" in the '331 patent,

Wyatt Decl. Ex. 8, at 257:23-258:2, is understood by someone

with ordinary skill in the art to be a bearing structure, often

a pin rotating in a hole. Poulsen Reply Decl. ¶ 8; Wyatt Decl.,

Deposition of Anders Poulsen, Jan. 5, 2012 ("Poulsen Dep.") at

197:5-14. The argument of plaintiff's counsel that the axis in

the '496 patent is theoretical is not competent evidence and is

insufficient to withstand summary judgment in the face of

defendants' contrary expert testimony. Therefore, the Court

concludes that the '496 patent discloses the tilt means (either

the pivot mechanism or ball and socket mechanism) found in the

'331 patent. Accordingly, the Court finds that Claim 1 is

invalid as anticipated either expressly or inherently. See

Schering Corp. v. Geneva Pharms, Inc., 339 F.3d 1373, 1377 (Fed.

Cir. 2003) ("A prior art reference may anticipate without

disclosing a feature of the claimed invention if that missing

characteristic is necessarily present, or inherent, in the

single anticipating reference.")

There is no need to examine Claim 6 separately, because

plaintiff acknowledges that Claim 6 depends upon Claim 1 and

15

makes no further argument about why the Court's determination on Claim 1 would not also govern Claim 6.[7]  See Pl. Mem. at 19.

The defendants also argue that Claim 26 is invalid under 35 U.S.C. § 103, by virtue of its obviousness.  Section 103(a) forbids issuance of a patent when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103.  Even if a claim limitation is not disclosed by a particular prior art reference, a patent claim will be invalid for obviousness if a person of ordinary skill can implement a predictable variation of the prior art.  KSR Int 'l Co. v. Teleflex Inc., 550 U.S. 398, 417 (2007).

In analyzing obviousness, a court examines the difference between the claimed invention and the prior art to determine whether "the subject matter as a whole would have been obvious at the time the invention was made" to a person having ordinary skill in the art.  Alza Corp. v. Mylan Labs., Inc., 464 F.3d 1286, 1289 (Fed. Cir. 2006).  In doing so, courts rely on the "Graham factors," which include 1) the scope and content of the prior art; 2) the level of ordinary skill in the art; 3) the

---

[7] In light of its conclusion above, the Court need not reach defendants' assertions that Claims 1 and 6 are also invalid as obvious.

16

differences between the claimed invention and the prior art; and 4) evidence of secondary factors, also known as objective indicia of nonobviousness. Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966).

Claim 26 of the '331 patent is directed to the use of cam and groove technology to move the attached lens with respect to the camera. According to the defendants, U.S. Patent No. 5,264,963 ("the '963 patent"), titled "VARIFOCAL LENS ASSEMBLY," which was filed on May 22, 1992 and issued on November 23, 1993, discloses those lens-moving elements of claim 26 that are not disclosed in the '496 patent. See Johnson Decl., Ex. J. Defendants argue that a person with ordinary skill in the art would have been motivated to perform the lens tilting disclosed in the '496 patent using the lens-moving elements of the '963 patent.

Although this is a close question, the Court finds that the defendants have not presented clear and convincing evidence that the patent was invalid as obvious, for the following reasons:

First, although the plaintiff provides only attorney argument on this point, it is unclear if the slots in the '963 patent perform a different function in order to achieve a different result from the slots described in the '331 patent. Moreover, even if the '963 patent did disclose the slots in Claim 26, "a patent composed of several elements is not proved

17

obvious merely by demonstrating that each of its elements was, independently, known in the prior art." KSR, 550 U.S. at 418. Here, the defendants have not provided clear and convincing evidence that someone with ordinary skill in the art would be motivated to combine the '496 patent with the '963 patent. In particular, the secondary considerations referenced by the Supreme Court in *Graham* apply here. As the Supreme Court held in *Graham*, "[s]uch secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc.," are relevant to the question of obviousness. Id. at 17-18. There is no evidence in the record that any company made an adapter like Eastcott's before he secured the '331 patent. Moreover, although it is true that there is no evidence about the commercial success of the adapter itself, there is evidence that Eastcott's photographs relying on the benefits of the adapter designed in connection with the patent have met with commercial success. Therefore, regardless of the claim construction of Claim 26, the defendants have not provided clear and convincing evidence that a skilled artisan would have combined the elements of the '496 patent for tilting a lens with the '963 patent for using pins and slots to move lens elements to come up with Claim 26.

In sum, the defendants have established at this stage that Claims 1 and 6 are invalid, but not Claim 26. But plaintiff's

18

suit must still fail if Claim 26 was not infringed.

The Court therefore turns to the question of whether the HTS 1.5 adapter infringes Claim 26 of the '331 patent. Plaintiff concedes that the HTS 1.5 adapter does not literally infringe Claim 26, but he asserts infringement of Claim 26 under the doctrine of equivalents. The basic question under the doctrine of equivalents is "[d]oes the accused product or process contain elements identical or equivalent to each claimed element in the patented invention?" Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997).

> The doctrine of equivalents can be met in one of two ways:
>
> Under the insubstantial differences test, '[a]n element in the accused device is equivalent to a claim limitation if the only differences between the two are insubstantial.' Alternatively, under the function-way-result test, an element in the accused device is equivalent to a claim limitation if it 'performs substantially the same function in substantially the same way to obtain substantially the same result.'

Voda v. Cordis Corp., 536 F.3d 1311, 1326 (Fed. Cir. 2008)

The Federal Circuit's decision in AquaTex Indus., Inc. v. Techniche Solutions, 479 F.3d 1320 (Fed. Cir. 2007) is controlling and dispositive here. As the Aquatex Court explained, under the doctrine of equivalents:

> a patentee must ... provide particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is

19

> presented to support a finding of infringement under
> the doctrine of equivalents. *Such evidence must be*
> *presented on a limitation-by-limitation basis.*
> Generalized testimony as to the overall similarity
> between the claims and the accused infringer's product
> or process will not suffice.

Id. at 1328 (emphasis in original)(quoting Texas Instruments,

Inc. v. Cypress Semiconductor Corp., 90 F.3d 1558, 1567 (Fed.

Cir. 1996)). The Federal Circuit explained that this rule also

applies to the summary judgment context. Id.

Therefore, when the patent holder relies on the doctrine of

equivalents rather than literal infringement, he must meet

additional requirements in order to survive summary judgment.

Specifically:

> the difficulties and complexities of the doctrine [of
> equivalents] require that evidence be presented to the jury
> or other fact-finder through the particularized testimony
> of a person of ordinary skill in the art, typically a
> qualified expert, who (on a limitation-by-limitation basis)
> describes the claim limitations and establishes that those
> skilled in the art would recognize the equivalents.

Id. at 1329.

Moreover, attorney argument cannot suffice to meet the

plaintiff's burden at this stage. See id.

Here, plaintiff has provided no particularized testimony or

other evidence to explain on a limitation-by-limitation basis

how the HTS 1.5 adapter is equivalent to the adapter disclosed

in the '331 patent. This is true for several reasons:

First, as noted, Eastcott has proffered no admissible

20

expert testimony on infringement, which will "typically" be required to prove infringement under the doctrine of equivalents.  See id.

Second, even if the stricken portions of Eastcott's affidavit, see supra, were admissible, either as expert testimony or otherwise, the affidavit does not contain the particularized testimony required to prove infringement on a limitation-by-limitation basis.

Third, during his deposition, Eastcott was asked to highlight a diagram of the accused HTS 1.5 device — the same diagram included in plaintiff's preliminary infringement contentions — to identify what features of the adapter corresponded to each limitation of the claims.  Eastcott Dep. at 244:21-245:4.  But, he was unable to do so.  Id. at 245:6-247:5.  In fact, he said that he was unable to comprehend the diagram of the adapter.  Id. at 245:25-246:1-2.  He also stated, for example, that he had no opinion about where a mounting ring was found in the HTS 1.5 adapter.  Id. at 246:20-247:5.  Therefore, plaintiff has not even come close to providing the particularized testimony of one skilled in the art to demonstrate the infringement on a limitation by limitation basis.  Accordingly, defendants' motion for summary judgment on the basis of non-infringement of Claim 26 is granted.

The Court has considered plaintiff's additional arguments

21

and finds them without merit.  Therefore, the Court grants the
defendants' motion for summary judgment and dismisses the
complaint with prejudice.  The Clerk of the Court is directed to
close document number 21 on the docket of this case and to enter
judgment.

    SO ORDERED.

Dated: New York, New York                    _____
September 24, 2012                           JED S. RAKOFF, U.S.D.J.

22

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/26/12

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

JOHN EASTCOTT,

                                        Plaintiff,                              11 **CIVIL** 5383 (JSR)

           -against-                                                            **JUDGMENT**

HASSELBLAD A/S, HASSELBLAD USA INC.,
and B&H PHOTO & ELECTRONICS CORP.,
                                        Defendants.
----------------------------------------------------------X


Defendants having moved for summary judgment, and the matter having come before the

Honorable Jed S. Rakoff, United States District Judge, and the Court, on September 24, 2012,

having rendered its Memorandum Order granting the defendants' summary judgment motion,

dismissing the complaint with prejudice, and directing the Clerk of the Court to enter judgment in

favor of defendants, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the

Court's Memorandum Order dated September 24, 2012, the Court grants the defendants' motion for

summary judgment and dismisses the complaint with prejudice; accordingly, judgment is entered

in favor of defendants.

**Dated:**  New York, New York
         September 26, 2012

                                                      **RUBY J. KRAJICK**
                                                      _____
                                                      **Clerk of Court**

                                        **BY:**
                                                      _____
                                                      **Deputy Clerk**


                                        THIS DOCUMENT WAS ENTERED
                                        ON THE DOCKET ON _____

-23-

**United States District Court**
**Southern District of New York**
Office of the Clerk
U.S. Courthouse
500 Pearl Street, New York, N.Y. 10007-1213

**Date:**

**In Re:**

-v-

**Case #:**                    (              )

Dear Litigant,

       Enclosed is a copy of the judgment entered in your case.

       Your attention is directed to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, which requires that if you wish to appeal the judgment in your case, you must file a notice of appeal within 30 days of the date of entry of the judgment (60 days if the United States or an officer or agency of the United States is a party).

       If you wish to appeal the judgment but for any reason you are unable to file your notice of appeal within the required time, you may make a motion for an extension of time in accordance with the provision of Fed. R. App. P. 4(a)(5). That rule requires you to show "excusable neglect" or "good cause" for your failure to file your notice of appeal within the time allowed. Any such motion must first be served upon the other parties and then filed with the Pro Se Office no later than 60 days from the date of entry of the judgment (90 days if the United States or an officer or agency of the United States is a party).

       The enclosed Forms 1, 2 and 3 cover some common situations, and you may choose to use one of them if appropriate to your circumstances.

       The Filing fee for a notice of appeal is $5.00 and the appellate docketing fee is $450.00 payable to the "Clerk of the Court, USDC, SDNY" by certified check, money order or cash. **No personal checks are accepted.**

Ruby J. Krajick, Clerk of Court

by: _____

                          , Deputy Clerk

APPEAL FORMS

U.S.D.C. S.D.N.Y. CM/ECF Support Unit                    1                    Revised: May 4, 2010

**United States District Court**
**Southern District of New York**
Office of the Clerk
U.S. Courthouse
500 Pearl Street, New York, N.Y. 10007-1213

-------------------------------------X
                                      |
                                      |          **NOTICE OF APPEAL**
                                      |
        -V-                           |
                                      |
                                      |     civ.            (   )
                                      |
-------------------------------------X

Notice is hereby given that _____
                                                        (party)
hereby appeals to the United States Court of Appeals for the Second Circuit from the Judgment [describe it]




entered in this action on the _____ day of _____ , _____ .
                                    (day)              (month)              (year)


                              _____
                                        (Signature)

                              _____
                                        (Address)

                              _____
                                  (City, State and Zip Code)

Date: _____        (     ) _____-_____
                                           (Telephone Number)


**Note:** You may use this form to take an appeal provided that it is received by the office of the Clerk of the
District Court within 30 days of the date on which the judgment was entered (60 days if the United States
or an officer or agency of the United States is a party).

FORM 1

## United States District Court
### Southern District of New York
#### Office of the Clerk
#### U.S. Courthouse
#### 500 Pearl Street, New York, N.Y. 10007-1213

```
------------------------------------X
                                    |
                                    |        MOTION FOR EXTENSION OF TIME
                                    |        TO FILE A NOTICE OF APPEAL
                                    |
              -V-                   |
                                    |
                                    |        civ.          (    )
                                    |
------------------------------------X
```

Pursuant to Fed. R. App. P. 4(a)(5), _____ respectfully

_____ (party)

requests leave to file the within notice of appeal out of time.

_____ (party)

desires to appeal the judgment in this action entered on _____ but failed to file a

_____ (day)

notice of appeal within the required number of days because:

[Explain here the "excusable neglect" or "good cause" which led to your failure to file a notice of appeal within the required number of days.]




_____
(Signature)

_____
(Address)

_____
(City, State and Zip Code)

Date: _____    (    ) _____-_____
                                   (Telephone Number)

**Note:** You may use this form, together with a copy of Form 1, if you are seeking to appeal a judgment and did not file a copy of Form 1 within the required time. If you follow this procedure, these forms must be received in the office of the Clerk of the District Court no later than 60 days of the date which the judgment was entered (90 days if the United States or an officer or agency of the United States is a party).

APPEAL FORMS

District Court will receive it within the 30 days of the date on which the judgment was entered (60 days if the United States or an officer or agency of the United States is a party).

FORM 3

### United States District Court
### Southern District of New York
#### Office of the Clerk
#### U.S. Courthouse
#### 500 Pearl Street, New York, N.Y. 10007-1213

```
————————————————————X
                    |
                    |          AFFIRMATION OF SERVICE
                    |
         -V-        |
                    |          civ.          (   )
                    |
                    |
————————————————————X
```

I, _____, declare under penalty of perjury that I have

served a copy of the attached _____

_____

upon _____

_____

whose address is: _____

_____

Date: _____
     New York, New York

                                      _____
                                        (Signature)

                                        _____
                                        (Address)

                               (City, State and Zip Code)

FORM 4

APPEAL FORMS

FORM 2

### United States District Court
### Southern District of New York
#### Office of the Clerk
#### U.S. Courthouse
#### 500 Pearl Street, New York, N.Y. 10007-1213

```
----------------------------------X
                                  |
                                  |      NOTICE OF APPEAL
                                  |            AND
                                  |   MOTION FOR EXTENSION OF TIME
          -V-                     |
                                  |
                                  |      civ.          (   )
                                  |
----------------------------------X
```

1.       Notice is hereby given that _____ hereby appeals to
                                                    (party)
the United States Court of Appeals for the Second Circuit from the judgment entered on _____.
                       [Give a description of the judgment]

2.       In the event that this form was not received in the Clerk's office within the required time
_____ respectfully requests the court to grant an extension of time in
            (party)
accordance with Fed. R. App. P. 4(a)(5).

         a.       In support of this request, _____ states that
                                                         (party)
this Court's judgment was received on _____ and that this form was mailed to the
                                            (date)
court on _____ .
              (date)

                                         _____
                                                    (Signature)

                                         _____
                                                    (Address)

                                         _____
                                              (City, State and Zip Code)

Date: _____          (   ) _____-_____
                                              (Telephone Number)

**Note:** You may use this form if you are mailing your notice of appeal and are not sure the Clerk of the

APPEAL FORMS

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: OCT 2 3 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
Civil Action No.: 11-Civ-5383 (JSR)

------------------------------------------------------------

JOHN EASTCOTT, )
)
Plaintiff, )
v. )
)
HASSELBLAD A/S ) NOTICE OF APPEAL
HASSELBLAD USA INC., and )
B&H PHOTO & ELECTRONICS CORP. )
)
Defendants. )

------------------------------------------------------------

Pursuant to 28 USCA § 2107 and Rule 3 of the Federal Rules of Appellate Procedure, notice is hereby given that Plaintiff John Eastcott in the above-named case hereby appeals to the United States Court of Appeals for the Federal Circuit from the Memorandum Order entered in this action on September 25, 2012.

In accordance with 28 USC § 1913 Plaintiff John Eastcott appeals to the United States Court of Appeals for the Federal Circuit from the Memorandum Order.

A check in the amount of $450.00 for docketing fee in accordance with 28 USC §1913 is attached hereto.

This 23rd day of October, 2012

Douglas W. Wyatt (DW8123)
Douglas C. Wyatt (DW8779)
Wyatt, Gerber & O'Rourke
99 Park Avenue, Suite 330
New York, N.Y. 10016
(212) 681-0800
douglaswwyatt@aol.com

*Attorneys for Plaintiff*
John Eastcott

1

**From:** NYSD_ECF_Pool <NYSD_ECF_Pool@nysd.uscourts.gov>
**To:** CourtMail <CourtMail@nysd.uscourts.gov>
**Subject:** Activity in Case 1:11-cv-05383-JSR Eastcott v. Hasselblad USA Inc. et al Order
**Date:** Wed, Sep 26, 2012 4:38 pm

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**Southern District of New York**

**Notice of Electronic Filing**

The following transaction was entered on 9/26/2012 at 4:38 PM EDT and filed on 9/26/2012
**Case Name:**      Eastcott v. Hasselblad USA Inc. et al
**Case Number:**    1:11-cv-05383-JSR
**Filer:**
**WARNING: CASE CLOSED on 09/26/2012**
**Document Number:** 36

**Docket Text:**
**MEMORANDUM AND ORDER: For all of these reasons, it is clear that Eastcott and his counsel prepared and sent the invoice to defendants in bad faith, and that Eastcott's and his counsel's continued reliance on this invoice in these proceedings was a fraudulent attempt to avoid paying defendants for their fees. Since there was no colorable basis for Eastcott and his counsel to seek $17,000 in payments from defendants, and since both Eastcott and his counsel submitted and relied on the invoice in bad faith, the Court imposes sanctions, jointly and severally against both Eastcott and his counsel. In this regard, defendants incurred reasonable attorney's fees and costs of $6,407.85 in bringing this motion. Pursuant to its inherent power, the Court imposes sanctions on Eastcott and his counsel in the sum of double that amount, i.e., $12,815.70, one half of which is to be paid to defendants and one half to the Clerk of the Court. In sum, Eastcott is hereby ordered to pay defendants $18,520.53 in reimbursement of defendants expert fees and costs, such payment to take the form of a certified check made payable to Mark C. Johnson, Esq., and to be delivered to Mr. Johnson's office by no later than October 15, 2012. Additionally, Eastcott and his counsel, Douglas, C. Wyatt, Esq., are hereby ordered to pay, jointly and severally, sanctions in the amount of $12,815.20, of which half (i.e., $6,407.85) is to be paid to defendants, in the form of a certified check made payable to Mark C. Johnson, Esq., to be delivered to Mr. Johnson's office by no later than October 15, 2012, and the other half (i.e., $6,407.85) is to be paid to the Court, in the form of a certified check made payable to the Clerk of the Court, S.D.N.Y., to be delivered to the Clerk's Office by no later than October 15, 2012. The Court will retain jurisdiction to enforce this order, and plaintiff and his counsel are warned that any failure to timely comply with this order may result in further sanctions. (Signed by Judge Jed S. Rakoff on 9/25/2012) (jfe)**

Activity in Case 1:11-cv-05383-JSR Eastcott v. Hasselblad USA Inc. et al Order    Page 2 of 2

**1:11-cv-05383-JSR Notice has been electronically mailed to:**

Douglas William Wyatt douglaswwyatt@aol.com

Douglas Charles Wyatt dwyatt@acedsl.com

Kyle Bradford Fleming kfleming@rennerotto.com, jwheeler@rennerotto.com, mjohnson@rennerotto.com

Mark Cromwell Johnson mjohnson@rennerotto.com, jwheeler@rennerotto.com

**1:11-cv-05383-JSR Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document
description:**
Main
Document
**Original
filename:**n/a
**Electronic
document
Stamp:**
[STAMP
dcecfStamp_ID=1008691343
[Date=9/26/2012]
[FileNumber=10543773
-
0]
[5b359d4710398663e68351376d41c66a1b78c55704e7bf63a118eb574e5b920d2c
1da256e07e5fd16913d386cfa8a1656a9b9431046bd21146fac499fcebdb79]]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
JOHN EASTCOTT,              :
              Plaintiff,    :
                            :        11 Civ. 5383 (JSR)
        -v-                 :
                            :        MEMORANDUM ORDER
HASSELBLAD A/S, HASSELBLAD USA INC., :
and B&H PHOTO & ELECTRONICS CORP.,   :
                            :
              Defendants.   :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

     Contrary to the apparent view of plaintiff and his counsel,

a legal forum is not the place to play a shell game.

     The opportunity for such shenanigans arose when, during the

course of this patent infringement lawsuit, plaintiff John

Eastcott, a professional photographer, deposed the expert

witnesses of defendants Hasselblad A/S, Hasselblad USA Inc.

(collectively "Hasselblad"), and B&H Photo & Electronics Corp

("B & H").  Pursuant to Federal Rule of Civil Procedure

26(b)(4)(E), defendants subsequently requested reimbursement in

the amount of $13,552.50 for the time their expert witnesses

spent preparing for and attending those depositions.  Eastcott

and his counsel, Douglas C. Wyatt, Esq., ignored the requests

for two months and then raised dubious objections to the

requests that they later withdrew.  But when defendants

threatened further action to obtain payment, Eastcott and his

counsel sent defendants an invoice that purported to bill defendants $17,000 for the depositions of Eastcott and his wife, also a photographer.  The invoice was such an obvious sham that defendants, after attempting to resolve the matter directly with Eastcott, filed a motion seeking (1) to compel Eastcott to pay $18,770.53 for defendants' expert depositions; (2) to require Eastcott to reimburse defendants' attorney's fees for the expenses associated with having to secure this payment through the Court; and (3) to impose sanctions against Eastcott and his counsel for "fabricating the charges on the 'invoice.'" Defendants' Motion for Payment of Expert Fees dated May 11, 2012 ("Defs.' Mot.") at 1-2.

After reviewing full briefing and oral argument, the Court hereby grants defendants' motion, as follows: (i) Eastcott is ordered to promptly reimburse defendants $18,520.53 for the depositions of defendants' expert witnesses; (ii) defendants are not required to pay Eastcott for any of the fees associated with Eastcott's purported invoice; (iii) sanctions in the amount of $12,815.20 are imposed on Eastcott and his counsel, jointly and severally, for creating, submitting, and continuing to rely on the sham invoice; and (iv) the portion of the sanctions equal to defendants' attorney fees in securing this relief shall be paid to them, and the rest to the Clerk of the Court.

2

The aforementioned relief is warranted by the following findings of fact and conclusions of law: On August 2, 2011, Eastcott brought this patent suit against defendants, alleging that Hasselblad had infringed his patent on a tilt-shift lens adapter and that B & H had marketed the infringing product.[1]  In response to interrogatories, Eastcott listed himself and his wife, Yva Momatiuk, as the two persons with factual knowledge of the infringement. Defendants' Reply Brief dated May 23, 2012 ("Defs.' Rep. Br.") at 3. Accordingly, defendants' counsel, Mark Johnson, Esq., contacted Eastcott's counsel, Douglas C. Wyatt, Esq., to arrange depositions. Declaration of Mark C. Johnson in Support of Motion for Payment of Expert Fees dated May 23, 2012 ("Johnson Decl.") ¶ 11.  After Johnson determined by phone that Wyatt's New York City office appeared to be Eastcott's preferred location for his deposition, defendants noticed the deposition of Eastcott for December 20, 2011 at Wyatt's office. Id. ¶ 12.

In pretrial discussions between the parties, Eastcott indicated that he planned to submit an "expert" report on damages. On December 5, 2011, Eastcott served this report, which

---

[1] By separate Memorandum Order issued September 24, 2012, the Court granted defendants' motion for summary judgment, dismissing all of plaintiff's claims with prejudice. The Court, however, retains jurisdiction over the collateral matters that gave rise to this Memorandum Order and over any subsequent proceedings relating thereto.

he had authored himself. On December 15, this Court granted Eastcott permission to supplement this report by December 16, which he did. Id. ¶¶ 13-14. On December 17, defendants sent Eastcott a Second Supplemental Notice of Deposition. Id. The notice asked Eastcott to bring to his December 20 deposition a copy of the documents upon which he relied to form the opinions in the supplemented expert report. Id.; Plaintiff's Response Brief dated May 17, 2012 ("Pl.'s Resp. Br.") Ex. 5.

During Eastcott's deposition, he asserted that he was qualified to testify as an expert on patent infringement damages. Pl.'s Resp. Br. Ex. 6 at 9:8. Although Eastcott acknowledged that he would have been unqualified to testify as an expert a year earlier, he alleged that since that time he had learned about licensing agreements and reasonable royalties. Defs.' Rep. Br. Ex. J, Deposition of John Eastcott, Dec. 20, 2011 ("Eastcott Dep.") at 25. Still, Eastcott could not identify any "authoritative literature" on the subject, Pl.'s Resp. Br. Ex. 7 at 53-54, nor could Eastcott identify any relevant case law on damages, Eastcott Dep. at 15-19. Moreover, Eastcott did not bring to the deposition any of the documents requested by defendants' Second Supplemental Notice. Id. at 30-32.

> JOHNSON: I requested that you be here with paper. Is there a reason why you haven't?

4

WYATT: Objection. Mark, we received this [Second Supplemental Notice] yesterday . . . . [Y]ou're asking for a litany of documents -- sorry. This is too late.

JOHNSON: I received the expert report on Friday. Two days later, I supplemented the notice . . . .

        . . .

WYATT: Mr. Eastcott is not prepared to go through the documents that you requested yesterday.

Id.

In fact, Eastcott was not prepared to testify at all regarding how he formed the opinions of his supplemented expert report. Rather, as his counsel stated in response to this Court's later questions about why Eastcott did not answer questions about the expert report at his December 20th deposition, "Your Honor, we understood that Mr. Eastcott was testifying that day as a fact witness." Transcript of Oral Argument, Feb. 21, 2012 ("2/21/12 Tr.") at 19.

Defendants also deposed Eastcott's wife, Yva Momatiuk. Defendants served a subpoena on Momatiuk on December 27, 2011. Pl.'s Resp. Br. Ex. 9. Although the subpoena requested an in-person deposition for Momatiuk, the parties subsequently agreed that the deposition would be taken by telephone. Johnson Decl. ¶ 17. Nevertheless, Momatiuk traveled to plaintiff's counsel's office in New York for the deposition. Id. The deposition lasted less than one hour. Defs.' Mot. at 2. In response to

5

questions about her knowledge of patent law, Momatiuk stated
that she was not able to provide an expert opinion.  Pl.'s Resp.
Br. Ex. 10, Deposition of Yva Momatiuk, Jan. 10, 2012 ("Momatiuk
Dep.") at 19-22.  She stated that she did not know why she was
identified as a person with knowledge of the alleged
infringement, but stated, "I think because I am married to
John."  Id. at 21-22.

Meanwhile, in January 2012, Eastcott deposed two of
defendants' expert witnesses: Andrew D. Finger and Anders
Poulsen.  Finger subsequently billed defendants $395 per hour
for his 12 hours of preparation, deposition testimony, and
travel to and from New York City. Defs.' Mot. Ex. A. Poulsen
billed defendants $250 per hour plus expenses for 35.25 hours of
preparation, deposition testimony, and travel.  Id.  On January
9, defendants sent Finger's invoice to Eastcott, and on January
29, defendants sent Poulsen's invoice to Eastcott.  The invoices
totaled $13,552.50 because defendants sought reimbursement only
for their experts' time and did not seek reimbursement for
travel costs and expenses.  Id.  On February 6, 2009, Johnson
sent Wyatt a follow-up email stating that Wyatt had not
responded to Finger or Poulsen's invoices, even though Johnson
had sent them, respectively, a month and a week earlier.  Id.

6

Despite that follow-up email and the fact that defendants had identified the Federal Rule of Civil Procedure (Rule 26(b)(4)(E)) under which they sought reimbursement, Eastcott did not respond to the invoices until March 16, 2012. On that day, Eastcott sent two one-page letters to defendants raising various, largely conclusory, objections to defendants' invoices. Defs.' Mot. Ex. B. For example, Eastcott argued that the two hours of preparation time and the travel time invoiced by Finger were "unreasonable and inappropriate." Id. Eastcott also objected on the ground that "the rate charged is not a reasonable rate to be paid by an individual such as Mr. Eastcott." Id. He raised nearly identical objections to Poulsen's bill. Id. On March 22, Johnson responded in detail to Eastcott's objections and again asked for reimbursement, this time adding that defendants would include the experts' travel expenses if Eastcott did not timely comply. Defs.' Mot. Ex. C.; see E.E.O.C. v. Johnson & Higgins, Inc., 93 Civ. 5481, 1999 WL 32909, at *1-3 (S.D.N.Y. Jan. 21, 1999) (authorizing inclusion of travel expenses in Rule 26 reimbursement).

Instead of sending a check or raising further objections, however, Wyatt wrote an email to Johnson on April 19th. The email, in its entirety, stated, "[a]ttached please find Eastcott's invoice for attendance at defendant's depositions."

7

Defs.' Mot. Ex. D.  Attached to the email was an invoice for
$17,000 entitled "[e]xpert witness testimony re: optical adapter
for controlling the angle of the plane of focus and its unique
application in professional photography." Id.  Eastcott's
invoice billed defendants for a "[f]ull day of [Eastcott's]
testimony [at] $8,000/day" plus five hours of travel time
"billed at half day rate" for a total of $10,500. Id.
Eastcott's invoice also billed defendants for a "[h]alf day of
[Momatiuk's] testimony" and five hours of travel time for a
total of $6,500. Id.  During a May 15, 2012 telephone conference
with the Court, Eastcott's counsel stated that he had "provided
an invoice that would address defendants' invoices," because his
invoice was "commensurate" with defendants'.  On that call,
Eastcott's counsel also expressly withdrew his objections to
defendants' expert fees, a position he subsequently reconfirmed.

On May 11, defendants filed the instant motion.  Defendants
requested an order that (1) compels Eastcott to pay $18,770.53
for the defendants' expert depositions (now including travel
time and expenses); (2) requires Eastcott to reimburse
defendants' attorney's fees for the cost of having to secure
this payment through the Court; and (3) imposes sanctions
against Eastcott and his counsel for "fabricating the charges on
the 'invoice.'"  Defs.' Mot. at 1-2.

8

-39-

In response, Eastcott argues that he does not need to reimburse defendants for the time of their expert witnesses because his own invoice is "commensurate." But Eastcott's invoice is wholly improper, not to say an outright sham.

Federal Rule of Civil Procedure 26 authorizes a party to "depose any person who has been identified as an expert whose opinions may be presented at trial." Fed. R. Civ. P. 26(b)(4)(A). If a party deposes an identified expert, the rule then requires the deposing party "to pay the expert a reasonable fee for time spent in responding to discovery." Fed. R. Civ. P. 26(b)(4)(E).

In determining whether an expert fee request is "reasonable," some federal courts employ an eight-factor test. See E.E.O.C. v. Johnson & Higgins, Inc., 93 Civ. 5481, 1999 WL 32909, at *3 (S.D.N.Y. Jan. 21, 1999) (laying out the eight-factor test). Here, however, no such complicated test is necessary, because in this case, plaintiff and his counsel, after ignoring and then, on the basis of frivolous objections, refusing to pay defendants' reasonable fees, concocted a fraudulent scheme to attempt to evade payment through the fabrication of a false and misleading invoice.

Eastcott's invoice billed defendants $6,500 for Momatiuk's deposition and $10,500 for Eastcott's deposition. Even if this

9

were a legitimate invoice, which it is not, there would still be

a threshold question of whether the plaintiff can seek

reimbursement for expert deposition costs even though he

concedes that neither purported expert -- Eastcott or Momatiuk -

- billed the plaintiff himself for his or her time.  Rule 26

requires that a deposing party "pay the expert a reasonable fee

for time spent in responding to discovery under Rule 26(b)(4)(A)

or (D)." Fed. R. Civ. P. 26(b)(4)(E). This language does not

specify whether it would be "reasonable" for one party to have

to pay an expert that the other party has retained for free. Id.

The commentary to the rule's 1970 amendments, however, indicates

that the purpose of the rule is to reimburse parties for costs

that they have actually incurred. It states, "[t]hese provisions

for fees and expenses meet the objection that it is unfair to

permit one side to obtain without cost the benefit of an

expert's work *for which the other side has paid*, often a

substantial sum." Fed. R. Civ. P. 26 cmt. (emphasis added).

Moreover, Wright and Miller summarize the rule, formerly known

as Rule 26(b)(4)(C) as follows:

> One argument against discovery of expert information has
> been that it is unfair to let one party have *for free what
> the other party has paid for*. But that unfairness can be
> remedied, in an appropriate case, by requiring the party
> seeking discovery to share the cost. This attitude is
> embodied in Rule 26(b)(4)(C), which seeks a fair allocation
> of expert expenses between the retaining party and the one
> seeking discovery.

10

8A Charles Alan Wright, et al., Federal Practice & Procedure § 2034 (3d ed.) (emphasis added). Therefore, the Court finds that the plaintiff cannot seek reimbursement under this rule for costs that he did not incur.

Even assuming arguendo, however, that the rule permitted a party to seek reimbursement for costs that it had not incurred based on the value of its experts' time,[2] the plaintiff's invoice is so clearly improper that it amounts to a fraud.

The motive for the fabrication is not hard to find.  After months of ignoring and refusing to reimburse defendants for their legitimate expert expenses, Eastcott and his counsel came up with an illicit strategy: to fabricate an invoice that would cancel out defendants' legitimate invoices.  But, motive aside, plaintiff's invoice bears no relation to reality:

To begin with, Eastcott charged defendants for five hours of travel time at $500 per hour. Pl.'s Resp. Br. Ex. 4. While travel time is compensable under Rule 26, see E.E.O.C., 1999 WL 32909, at *3, compensation for travel time is not appropriate when a party's expert witness merely had to travel to the

---

[2] This argument has limited persuasive force when the expert is also a party, but it lacks any persuasive force when the expert is not a party (as in the case of Momatiuk).  Otherwise, a party could receive windfall payments for time that he neither spent nor paid for. Even if Momatiuk were an expert, she is not a party, and the plaintiff did not pay her for her time.

party's counsel's offices, especially when the party elected for the deposition to take place there. See, e.g., Fleming v. United States, 205 F.R.D. 188, 189 (W.D. Va. 2000); McBrian, Inc. v. Liebert Corp., 173 F.R.D. 491, 493 (N.D. Ill. 1997). Moreover, since Eastcott concedes that he was being deposed that day at least partially as a fact witness, see 2/21/12 Tr. at 19-20, Eastcott would have traveled to the same location even if he had not held himself out as an expert witness. Therefore, the five hours of travel time are not compensable.

Second, plaintiff admits that Eastcott's deposition did not last eight hours, and thus there is no reason to bill for a "full day of testimony." Although defendants' experts plainly billed by the hour, as is appropriate, plaintiff and his counsel appear to argue that time can only be divided into half-day and full-day increments. Lawyers are used to billing their clients in six minute increments, and it is improper for plaintiff's counsel to bill for a full-day of testimony when the deposition did not last for eight hours.

Third, Eastcott's fee of $1,000 per hour is wholly unreasonable. Ironically, Eastcott initially objected to the charged rates of defendants' experts, even though those expert witnesses billed at $250 and $395 per hour. Eastcott asserts that he based his $1,000 per hour rate on a letter from National

12

Geographic stating that it pays $3,000 – $13,000 per day to commercial photographers when those photographers are on a photography shoot. See Transcript of Oral Argument, May 30, 2012 ("5/30/12 Tr.") at 8-10. But even if the Court were to accept this letter, this is evidence only of what Eastcott could bill when he was selected for a commercial photography shoot, and it has no bearing on what he could charge for his purported expert opinion on patent-infringement damages.[3]

Moreover, based on his deposition testimony and his lack of expertise on damages, it is clear that Eastcott could not reasonably bill $1,000 per hour for his purported expertise on damages. It is unimaginable that a party would hire, at $1,000 per hour, an expert who was not qualified to calculate damages in 2010, who had received no formal training in calculating damages since that time, who could not provide specific answers

---

[3] Indeed, even if the plaintiff could seek reimbursement for the value of his time as an expert witness, and even if Eastcott could bill defendants for a full day of deposition testimony, if one looks at Eastcott's average daily salary to calculate his opportunity cost he would be entitled to at most several hundred dollars in reimbursement. Eastcott's federal tax return reported $79,679.91 in income in 2010, which averages to around $1500 per week. See Def. Ex. K. at 24. Even if the Court were to credit Eastcott's unsubstantiated claim that the entity controlled by him and his wife made $290,000 in 2010, see id., that still averages to a little more than a $1,000 per work day for the work of two photographers.

13

to questions about damages, and who did not propose to discuss the documents upon which he based his expert report.

Fourth, the $6,500 billed for Momatiuk is even more plainly an utter fraud. Neither party "identified" Momatiuk as an expert. In his letter brief, Eastcott now argues that Momatiuk was providing him "with expert assistance in anticipation of litigation." Pl. Resp. Br. at 3. It is unclear what such "expert assistance" means, but it is clear that Momatiuk was not an expert. Eastcott states that defendants "qualified Momatiuk as an expert," Pl. Resp. at 2, but the portion of the transcript that he cites for that proposition directly undermines that assertion, see Momatiuk Dep. at 6. Defendants' counsel simply asked Momatiuk whether she was a photographer and how long she had been a photographer. See id. There is no basis in Rule 26 for Eastcott's requested reimbursement for Momatiuk's testimony.

Moreover, even if Momatiuk had been an expert, Eastcott's purported invoice would still be unreasonable. Eastcott's purported invoice bills defendants for five hours of travel time at $500 per hour and a "[h]alf day of testimony" at $1,000 per hour, Pl.'s Resp. Br. Ex. 4, even though defendants deposed Momatiuk by telephone for less than an hour, Defs.' Mot. at 2. The fact that Eastcott essentially rounded up Momatiuk's deposition time from less than one hour to four hours is further

14

evidence that Eastcott ensured that the invoice would be "commensurate" with defendants' invoices, so that, if his ruse had succeeded, he would be relieved of his obligation to pay defendants' expert costs. There can be no doubt that this is unreasonable, not to say a fraud, a sham, and a travesty.

The Court therefore concludes that Eastcott's request for compensation for his and his wife's testimony is unreasonable and cannot be approved. Eastcott has dropped his challenges to the reasonableness of fees for defendants' expert witnesses.[4] Accordingly, Eastcott must promptly reimburse defendants for their experts' fees and costs in the sum of $18,520.53.

Having granted defendants' motion for reimbursement, the Court must next consider whether to impose attorney's fees and sanctions on plaintiff and/or his counsel for their conduct in regards to these expert fees. Defendants seek attorney's fees and sanctions under Federal Rule of Civil Procedure 37. Defs.' Reply Br. at 3. On its face, however, that rule does not apply to motions for reimbursement of experts' fees. The rule states that if a motion to compel disclosure or discovery is granted,

---

[4] The Court notes that plaintiff has repeatedly sought to change his position as to whether he was challenging defendants' invoices. Although Eastcott twice informed the Court that he was not challenging those invoices, nonetheless, in an abundance of caution, the Court finds that defendants' invoices are, in any event, proper and reasonable.

15

the court can award the movant reasonable expenses. Fed. R. Civ. P. 37(a)(5)(A). The instant motion is not a motion to compel disclosure or discovery. In case there were any lingering doubts, Rule 37(a)(3) specifies the particular discovery rules that it applies to, and lists Rules 26(a), 30, 31, 33 and 34. Fed. R. Civ. P. 37(a)(3). It does not include any mention of Rule 26(b)(4)(E), which makes sense because a motion brought under that rule is not a motion to compel disclosure or discovery. Therefore, sanctions and attorney's fees are not available under Rule 37.[5]

This does not end the inquiry, however. The Court has a "'well-acknowledged' inherent power . . . to levy sanctions in response to abusive litigation practices." Roadway Express Inc. v. Piper, 447 U.S. 752, 765 (1980) (quoting Link v. Wabash R. Co., 370 U.S. 626 (1962)). A court may impose attorneys' fees and other sanctions against both a party and his counsel who have litigated in bath faith, because "the power of a court over members of its bar is at least as great as its authority over litigants. Id. at 766. After determining that sanctions are not available under Rule 37, it is appropriate for this Court to examine whether sanctions are available under its inherent

---

[5]  Moreover, Rule 11 does not allow for discovery sanctions. See Fed R. Civ. P. 11(d) ("This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37.").

powers. <u>DLC Mgmt. Corp. v. Town of Hyde Park</u>, 163 F.3d 124, 135-36 (2d Cir. 1998). In order to impose sanctions pursuant to its inherent powers, this Court must conclude that the conduct in question was "without a colorable basis" and undertaken in bad faith, *i.e.*, "motivated by improper purposes such as harassment or delay." <u>Schlaifer Nance & Co., Inc. v. Estate of Andy Warhol</u>, 194 F.3d 323, 336 (2d Cir. 1999).

Here, the Court concludes that the conduct in question -- specifically the plaintiff's and his counsel's submission of the phony invoice and their continued reliance on that invoice -- was without a colorable basis and was undertaken in bad faith. Therefore, sanctions are warranted.

When Eastcott and his counsel received defendants' invoices, they first ignored them for two months. Next, without any justifiable basis, they tried and failed to get defendants to reduce the amount of reimbursement they were seeking. When that did not work, they turned to a different and fraudulent strategy. They sent defendants a purported invoice that had no legitimate basis, and was simply a ruse intended to cancel out defendants' invoices.[6]

---

[6] Defendants' original invoices totaled $13,500, but defendants had warned Eastcott that it would include travel costs and expenses of around $4,000 if Eastcott continued to refuse to reimburse defendants. Defs' Mot. Ex. A; Defs' Mot. Ex. C.

17

Indeed, nearly every part of the invoice serves as further proof that it lacked any colorable basis and was prepared and submitted in bad faith. Eastcott and his counsel billed for a full day's testimony for Eastcott even though he testified for less than a full day and at least part of his testimony that day was as a fact witness. They billed for a half a day for Eastcott's wife, even though she was deposed for less than an hour and was clearly not an expert. They billed at a rate of $1,000 per hour for Eastcott and his wife, without any basis to bill at that rate as an expert. Eastcott had previously objected that the rates of defendants' two experts were too high. But the rates that Eastcott and his counsel billed for Eastcott's time and that of his wife were two to three times the rates charged by defendants' experts. Eastcott and his counsel also billed for a half day of travel for Eastcott, even though he conceded that he was already testifying that day as a fact witness (and despite the fact that the deposition took place at his counsel's office). Eastcott and his counsel billed for a half day of travel for Eastcott's wife, even though she was deposed via telephone at her counsel's office, where she had chosen to be deposed.

For all of these reasons, it is clear that Eastcott and his counsel prepared and sent the invoice to defendants in bad

18

faith, and that Eastcott's and his counsel's continued reliance
on this invoice in these proceedings was a fraudulent attempt to
avoid paying defendants for their fees.

Since there was no colorable basis for Eastcott and his
counsel to seek $17,000 in payments from defendants, and since
both Eastcott and his counsel submitted and relied on the
invoice in bad faith, the Court imposes sanctions, jointly and
severally against both Eastcott and his counsel.  In this
regard, defendants incurred reasonable attorney's fees and costs
of $6,407.85 in bringing this motion.[7]  Pursuant to its inherent
power, the Court imposes sanctions on Eastcott and his counsel
in the sum of double that amount, *i.e.*, $12,815.70, one half of
which is to be paid to defendants and one half to the Clerk of
the Court.

In sum, Eastcott is hereby ordered to pay defendants
$18,520.53 in reimbursement of defendants' expert fees and
costs,[8] such payment to take the form of a certified check made
payable to Mark C. Johnson, Esq., and to be delivered to Mr.

---

[7] Johnson spent 16 hours on this dispute at a rate of $315 per
hour, and his plane trip to the hearing on this dispute cost
$1,131.60.

[8] Defendants offered to credit Eastcott an hour of Poulsen's
deposition time.  Defs.' Reply Br. at 3 n.5.  Therefore, the
Court has reduced defendants' bill by $250.  The Court approves
this reduction and notes that if Eastcott were entitled to any
compensation for his deposition, he would likely be entitled to
approximately $250.  See supra note 2.

19

Johnson's office by no later than October 15, 2012.

Additionally, Eastcott and his counsel, Douglas, C. Wyatt, Esq.,

are hereby ordered to pay, jointly and severally, sanctions in

the amount of $12,815.20, of which half (*i.e.*, $6,407.85) is to

be paid to defendants, in the form of a certified check made

payable to Mark C. Johnson, Esq., to be delivered to Mr.

Johnson's office by no later than October 15, 2012, and the

other half (*i.e.*, $6,407.85) is to be paid to the Court, in the

form of a certified check made payable to the Clerk of the

Court, S.D.N.Y., to be delivered to the Clerk's Office by no

later than October 15, 2012.  The Court will retain jurisdiction

to enforce this order, and plaintiff and his counsel are warned

that any failure to timely comply with this order may result in

further sanctions.

    SO ORDERED.

Dated: New York, New York

September 25, 2012               JED S. RAKOFF, U.S.D.J.

20

-51-

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
Civil Action No.: 11-Civ-5383 (JSR)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: OCT 2 3 201

```
------------------------------------------------
JOHN EASTCOTT,                          )
                                        )
                Plaintiff,              )
                                        )
        v.                              )
                                        )
HASSELBLAD A/S                          )    NOTICE OF APPEAL
HASSELBLAD USA INC., and                )
B&H PHOTO & ELECTRONICS CORP.           )
                                        )
                Defendants.             )
------------------------------------------------
```

        Pursuant to 28 USCA § 2107 and Rule 3 of the Federal Rules of Appellate Procedure,

notice is hereby given that Plaintiff John Eastcott in the above-named case hereby appeals to the

United States Court of Appeals for the Federal Circuit from the Memorandum Order entered in

this action on September 26, 2012.

        In accordance with 28 USC § 1913 Plaintiff John Eastcott appeals to the United States

Court of Appeals for the Federal Circuit for the Memorandum Order.

        A check in the amount of $4550.00 for docketing fee in accordance with 28 USC §1913 is

attached hereto.

        This 23rd day of October, 2012

                                        Douglas W. Wyatt (DW8123)
                                        Douglas C. Wyatt (DW8779)
                                        Wyatt, Gerber & O'Rourke
                                        99 Park Avenue, Suite 330
                                        New York, N.Y. 10016
                                        (212) 681-0800
                                        douglaswwyatt@aol.com

                                        *Attorneys for Plaintiff*
                                        John Eastcott

1

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 25th day of February, 2013, I caused this Brief

of Appellant to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

> Mark C. Johnson
> Kyle B. Fleming
> Nicholas J. Gingo
> RENNER, OTTO, BOISSELLE & SKLAR, LLP
> 1621 Euclid Avenue, 19th Floor
> Cleveland, Ohio  44115
> (216) 621-1113
>
> *Counsel for Appellee*

Upon acceptance by the Clerk of the Court of the electronically filed

document, the required number of copies of the Brief of Appellant will be hand

filed at the Office of the Clerk, United States Court of Appeals for the Federal

Circuit in accordance with the Federal Circuit Rules.

/s/ Douglas W. Wyatt
*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
      28.1(e)(2) or 32(a)(7)(B) because:

      [ X ] this brief contains [*13,768*] words, excluding the parts of the brief
      exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

      [    ] this brief uses a monospaced typeface and contains [*state the number
      of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.
      32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
      32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

      [ X ] this brief has been prepared in a proportionally spaced typeface using
      [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

      [    ] this brief has been prepared in a monospaced typeface using [*state
      name and version of word processing program*] with [*state number of
      characters per inch and name of type style*].


Dated: February 25, 2013                    /s/ Douglas W. Wyatt
                                            *Counsel for Appellant*