**Appeal Nos. 2013-1050, -1051**

IN THE
**UNITED STATES COURT OF APPEALS**
FOR THE FEDERAL CIRCUIT

JOHN EASTCOTT,

*Plaintiff-Appellant,*

v.

HASSELBLAD USA, INC., HASSELBLAD A/S
AND B&H PHOTO & ELECTRONICS CORP.,

*Defendant-Appellees.*

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK,
11-CV-5383, JUDGE JED S. RAKOFF.

**BRIEF FOR DEFENDANT-APPELLEES**

MARK C. JOHNSON
KYLE B. FLEMING
NICHOLAS J. GINGO
RENNER, OTTO, BOISSELLE & SKLAR, LLP
19th Floor, 1621 Euclid Avenue
Cleveland, Ohio  44115
(216) 621-1113

*Counsel for Defendant-Appellees*

# CERTIFICATE OF INTEREST

Counsel for Defendants-Appellees, HASSELBLAD USA, INC.; HASSELBLAD A/S; and B&H PHOTO & ELECTRONICS CORP., certify the following:

1.     The full name of every party or amicus represented by me is:

**HASSELBLAD USA, INC.;**
**HASSELBLAD A/S; and**
**B&H PHOTO & ELECTRONICS CORP.**

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

**None**

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

**None**

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:  Mark C. Johnson, Kyle B. Fleming and Nicholas J. Gingo, all of Renner, Otto, Boisselle & Sklar LLP, Cleveland, Ohio.


Dated:  May 10, 2013                    /s/ Mark C. Johnson
                                        *Attorney for Defendant-Appellees*

# TABLE OF CONTENTS

I.    STATEMENT OF RELATED CASES ............................................................1

II.   COUNTER-STATEMENT OF THE ISSUES ..............................................1

III.  STATEMENT OF THE CASE ......................................................................2

IV.   STATEMENT OF THE FACTS ....................................................................4

A.    The Claimed Invention of the '331 Patent ...............................4

B.    The Accused HTS 1.5 Device .....................................................6

C.    Eastcott's Expert Disclosures ....................................................9

1.    Eastcott did not make Rule 26(a)(2) disclosures on infringement. ....................................................................9

2.    Eastcott proclaimed himself an expert on patent damages. ..........10

D.    Eastcott Was Unable to Show Infringement During Discovery. ..........11

E.    Eastcott's Deposition Testimony Proves He Is Incompetent to Offer Opinions on Infringement and Damages...............................................12

1.    Eastcott's testimony revealed that his "expert" report on damages was a sham. .................................................12

2.    Eastcott testified that he is not competent to provide particularized linking testimony to show infringement under the doctrine of equivalents. .........................................13

F.    Mrs. Eastcott Was Deposed as a Lay Witness and Explained She Was Not Capable of Offering Expert Testimony.................................16

G.    The Expert Invoice Exchange and Hearing............................................16

H.    The District Court's Decisions ...............................................................20

1.    The District Court properly exercised its discretion in sanctioning Eastcott and his counsel for submitting an expert fee invoice that was "fabricated and an obvious sham." ..............20

a.    Rule 26(b)(4)(E) does not permit a party to seek reimbursement for costs not actually incurred. ....................21

b.    The District Court found that Eastcott's invoice was submitted with no colorable basis and in bad faith. .............22

2.      The District Court correctly concluded on summary judgment that there was no evidence of infringement. .................................24

      a.    The District Court properly determined that Eastcott's opinion testimony on infringement is inadmissible..............25

      b.    The District Court correctly determined that Eastcott's affidavits failed to provide particularized linking testimony. ............................................................................26

V.    SUMMARY OF THE ARGUMENT ............................................29

VI.    STANDARD OF REVIEW ........................................................30

VII.    ARGUMENT ............................................................................32

A.    The District Court Properly Exercised Its Inherent Power to Sanction Eastcott and His Counsel for Submitting an Expert Fee Invoice Without a Colorable Basis and in Bad Faith. ...........................32

B.    The District Court Correctly Granted Summary Judgment Of Noninfringement. ...................................................................38

1.      Legal standard for summary judgment. .......................................39

2.      The HTS 1.5 device does not infringe claim 26 literally or under the doctrine of equivalents. .................................................40

3.      The District Court correctly determined that Eastcott's affidavit testimony fails to create a genuine issue of material fact. ...........................................................................43

      a.    The District Court properly exercised its discretion when Eastcott's affidavit opinion testimony was inadmissible as untimely. .........................................................44

      b.    The District Court properly determined that Eastcott was incapable of providing particularized linking testimony regarding alleged infringement by the HTS 1.5 device........46

         i.    It would have been error for the District Court to permit Eastcott to offer particularized linking testimony regarding alleged infringement by the HTS 1.5 device.                                              47

         ii.    Eastcott cannot create an issue of material fact by submitting affidavit testimony that contradicts his prior deposition testimony.                                              50

c.    The District Court properly determined that Eastcott's affidavit testimony fails to provide sufficient evidence to support a finding of infringement in any event. ...................51

4.    Eastcott failed to present evidence of infringement under any claim construction. .......................................................................55

VIII.  CONCLUSION................................................................................57

# TABLE OF AUTHORITIES

## CASES

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir. 2002)........... 30

*Anderson v. City of Bessemer City,* 470 U.S. 564 (1985)..................................... 31

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)......................................... 39

*Aquatex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320 (Fed. Cir. 2007).............................................................................................43, 52, 55

*Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 365 U.S. 336 (1961) ................................................................................. 13

*Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984 (Fed. Cir. 2009) ..................................................................... 39

*Baran v. Med. Device Techs., Inc.,* 666 F. Supp. 2d 776 (N.D. Ohio 2009).............................................................................................. 46

*Baran v. Medical Device Technologies, Inc.,* 616 F.3d 1309 (2010).................. 45

*Bickerstaff v. Vassar Coll.*, 196 F.3d 435 (2d Cir. 1999) .................................... 50

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................... 39

*Chimie v. PPG Indus., Inc.*, 402 F.3d 1371 (Fed. Cir. 2005) .............................. 31

*Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) ....................... 13

*DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124 (2d Cir. 1998).............. 32

*Frye v. United States,* 293 F. 1013 (D.C. Cir 1923) ............................................ 13

*General Electric Co. v. Joiner*, 522 U.S. 136 (1997) .......................................... 13

*General Motors Corp. v. Devex Corp.*, 461 U.S. 648 (1983)............................... 13

iv

*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) .................................................................................. 13

*Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494 (2d Cir. 2001) ......................... 39

*Hayes v. N.Y. City Dept. of Corr.*, 84 F.3d 614 (2d Cir. 1996) ............................ 50

*In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109 (2d Cir. 2000)........................... 37

*Interspiro USA, Inc. v. Figgie Int'l, Inc.*, 18 F.3d 927 (Fed. Cir. 1994)............... 31

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) .......................................... 13

*Logan v. Hormel Foods, Inc.*, 217 F. App'x 942 (Fed. Cir. 2007) ....................... 56

*Martin v. Brown*, 63 F.3d 1252 (3d Cir.1995)...................................................... 36

*Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353 (Fed. Cir. 2005)................................................................................................. 43, 52, 55

*Panduit Corp. v Stahlin Bros. Fibre Works, Inc.* 575 F.2d 1152 (6th Cir. 1978)................................................................................................. 13

*Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253 (2d Cir. 1999)................... 35

*Rite-Hite Corp v Kelley Co Inc.*, 56 F.3d 1538 (Fed. Cir. 1995)......................... 13

*Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356 (Fed. Cir. 2008)................................................................................................. 47

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558 (Fed. Cir. 1996) ............................................................................ 43, 52, 55

*Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.*, 109 F.3d 739 (Fed. Cir. 1997) .................................................................................. 30

*United States v. U.S. Gypsum Co.*, 333 U.S. 364 (1948)..................................... 31

*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003) ........................................... 44

*Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10 (Fed. Cir. 2012)................................................................................................. 56

*Wills v. Amerada Hess Corp.*, 379 F.3d 32 (2d Cir. 2004)...................................44

*Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163 (2d Cir. 2001) ...................................31

## STATUTES

Fed. R. Civ. P. 26(a)(2)...................................................................passim

Fed. R. Civ. P. 26(b)(4)(E) ............................................................passim

Fed. R. Civ. P. 56(c).............................................................................39

Fed. R. Civ. P. 56(e).............................................................................46

## I.    STATEMENT OF RELATED CASES

Defendant-Appellees are aware of no other case that may be affected by this Court's decision in the pending appeal.

## II.    COUNTER-STATEMENT OF THE ISSUES

1.    Did the District Court abuse its discretion by sanctioning Eastcott and his counsel for submitting a "phony," "fabricated and an obvious sham" invoice for expert fees when: a) Eastcott—the plaintiff and a photographer—invoiced $1,000 per hour for "expert" testimony even though he had no related experience or education; b) Eastcott's wife invoiced $1,000 per hour to provide lay witness testimony; c) Eastcott and his wife each invoiced thousands of dollars to travel to their own attorney's office, and Mrs. Eastcott's deposition was telephonic; and d) the invoice was admittedly crafted to be "commensurate" with Hasselblad's invoices to the dollar?

2.    Was the District Court correct in finding no infringement under the doctrine of equivalents when: a) Hasselblad presented substantial evidence of noninfringement; b) Eastcott never made a Rule 26(a)(2) disclosure; c) Eastcott testified that he had never formed any opinions regarding which structures of Hasselblad's accused product correspond to the elements of the claims; d) Eastcott was unable during his deposition to offer any testimony on infringement; and e) to

1

the extent Eastcott cited any relevant testimony, the testimony was conclusory,

internally inconsistent, and contradicted his prior deposition testimony?

## III.    STATEMENT OF THE CASE

The District Court properly exercised its discretion under its inherent power

to sanction Eastcott and his counsel for creating and issuing a fraudulent invoice to

Hasselblad and continuing to rely upon that invoice in an effort to avoid paying

Hasselblad's expert fees pursuant to Fed. R. Civ. P. 26(b)(4)(E).  The District

Court also properly granted summary judgment that Hasselblad's accused product

does not infringe under the doctrine of equivalents because Hasselblad presented

substantial evidence of noninfringement and Eastcott failed to present a witness

capable of presenting particularized testimony and linking argument on a

limitation-by-limitation basis.

Throughout this case, Eastcott employed a litigation strategy designed to

transfer all litigation costs to Hasselblad while frustrating its efforts to conduct

discovery.  Eastcott's sharp tactics included strenuous efforts to avoid committing

to any specific positions during discovery and then belatedly springing

unsupported and conclusory expert opinions in an effort to avoid summary

judgment.

With regard to infringement, Eastcott made no Fed. R. Civ. P. 26(a)(2) disclosures. That stands to reason because Eastcott explained at his deposition that he was not capable of comparing the claims of his patent to other devices such as Hasselblad's accused HTS 1.5 device (A1120-21). In fact, Eastcott admitted that he could not even "comprehend" the simple exploded view drawings of Hasselblad's accused HTS 1.5 device (A1123-25.) Similarly, Eastcott's wife explained in her deposition that she could not opine on infringement and did not know why she was identified as having knowledge on the issue. (A37; A1320-21.)

Nonetheless, when faced with summary judgment a mere few weeks later, Eastcott remarkably became an expert and submitted his own affidavits opining on infringement. Not surprisingly, the District Court struck Eastcott's new expert testimony as being from an unqualified witness. (A6-7.) The District Court also correctly determined that even if Eastcott's belated testimony were admissible, it did not provide the particularized testimony and linking argument required to prove infringement under the doctrine of equivalents. (A20-21.)

Eastcott's "expert" testimony on damages was equally concocted. Indeed, Eastcott admitted to having no understanding of patent damages and claimed that attorney-client privilege prevented him from explaining "his" expert damages opinion. (*See* A167-68; A1224; A1290-97; A1299.)

When Eastcott and his counsel tried to avoid paying Hasselblad its estimated $17,000 in expert fees under Fed. R. Civ. P. 26(b)(4)(E) by submitting a $17,000 invoice for Eastcott's and his wife's "expert" testimony, the District Court correctly determined that Eastcott's invoice was "phony" and "unreasonable, not to say a fraud, a sham, and a travesty." (A46-A48.) The District Court thus quite properly exercised its inherent power and ordered Eastcott to pay the reasonable attorney fees and costs incurred by Hasselblad in its effort to obtain payment under the Federal rules for the legitimate invoices of Hasselblad's experts. (A47-50.)

The District Court's multiple opinions are well reasoned, extensively detailed, and should be affirmed.

## IV.    STATEMENT OF THE FACTS

John Eastcott, a photographer by trade, sued Hasselblad USA, Inc. and Hasselblad A/S and Hasselblad's retailer, B&H Photo & Electronics Corp., (collectively, "Hasselblad") for infringement of U.S. Patent No. 5,592,331 ("the '331 patent").

### A.    The Claimed Invention of the '331 Patent

The '331 patent is directed to adapters that pivotally connect a removable lens to a camera. (A2.) Plaintiff asserted infringement of claims 1, 6 and 26 of the '331 patent. (*Id.*) The District Court determined that claims 1 and 6 are invalid

4

and Eastcott has not appealed that determination.  As such, Hasselblad focuses on

claim 26 in this appeal.

Claim 26 depends from claim 1 and is directed to the embodiment of Figs.

4a and 4b below:



FIG.4a            FIG.4b

(A60.)

Claim 26 reads as follows:

> An adapter as in claim 1 wherein the tilt means includes a
> mounting ring holding the secondary lens two pins
> protruding outwardly from the mounting ring and a
> casing member having two slots therein at acute angles to
> the optical axis of the optical instrument and wherein
> each pin slides within one of the slots.

(A65.)

Claim 26 requires a very specific configuration of pins (14a, b), slots (15a,

b), a mounting ring and a casing member.  (*See* A60, 64-65.)  According to claim

26, the outwardly protruding pins of the mounting ring (not indicated in the

5

figures) are received by the slots of a casing member (also not indicated in the figures). (*See id*.) Notably, the term "casing member" does not appear anywhere in the '331 patent other than claim 26. (*See id*.) Similarly, the term "mounting ring" appears only in the claims. (*See id*.)

### B.    The Accused HTS 1.5 Device

Hasselblad's accused HTS 1.5 camera lens adapter provides tilt functionality. (A3.) As shown below, the HTS 1.5 includes knobs for controlling the amount of tilt of the lens with respect to the camera.



(A192.)

An image of an HTS 1.5 adapter, camera and lens is illustrated below:

6



(A505.)

Various parts of the HTS 1.5 device are illustrated in the drawings below.



(A192; A531; A551, coloring and lettering added.)

The HTS 1.5 device includes a plate shown generally at element A (yellow). (A192; A531.)  The plate A is connectable to a removable lens and additionally holds an internal teleconverter lens.  No pins protrude from the plate A.  The HTS 1.5 device also includes two frame elements 19 and 20.  Frame element 19 (blue) is generally rectangular and includes a sled element D and a knob.  Each of the opposing sides of the frame element 19 includes a single arc-shaped groove C1, C2 that extends on opposing sides of the optical axis of the camera.  One of the single arc-shaped grooves C1 is connected to the sled element shown D.  The sled element D is moveable within the groove C1, and thus with respect to the remainder of the frame element 19, via a knob and gear structure.  The other of the single arc-shaped grooves C2 is open to receive part of frame element 20.

Frame element 20 (green), which is attached to the plate A, is generally semi-rectangular and includes two pins B extending inwardly from one side of the frame element 20.  The two pins B are received by the single arc-shaped groove C2 of frame element 19.  The other side of frame element 20 is rigidly connected to the sled D.  Thus, because the sled D is rigidly connected to frame element 20, which is attached to frame A, movement of the sled D with respect to the arc-shaped groove C1 causes movement of frame 20, and therefore causes movement of plate A (which holds an internal teleconverter lens and to which a removable lens may be attached) along an arc-shaped path with respect to frame 19.  Because

8

the arc-shaped grooves C1 and C2 extend on opposing sides of the optical axis of the camera, the plate A, and thus a removable lens attached thereto, may be tilted up or down with respect to the optical axis of the camera, depending on the direction of movement of the sled D.

Hasselblad maintained to the District Court that the HTS 1.5 device does not infringe claim 26 of the '331 patent for at least the following reasons:

- The HTS 1.5 does not have a mounting ring that holds a secondary lens and has two outwardly protruding pins;

- The HTS 1.5 device does not have two slots where each slot receives a pin from a mounting ring;

- The HTS 1.5 device does not have a casing member that receives pins attached to a mounting ring holding a secondary lens; and

- The HTS 1.5 device does not have slots at acute angles to the optical axis of the optical instrument.

(A530.)

### C.    Eastcott's Expert Disclosures

#### 1.    Eastcott did not make Rule 26(a)(2) disclosures on infringement.

On September 13, 2011, the District Court issued a case management order setting the deadlines for serving initial and rebuttal expert disclosures pursuant to Fed. R. Civ. P. 26(a)(2) for November 11, 2011 and November 25, 2011,

respectively.  (A1516.)  The District Court's case management order further explained that:

> No expert testimony (whether designated as "rebuttal" or otherwise) will be permitted by other experts or beyond the scope of the opinions covered by the aforesaid disclosures except upon prior express permission of the Court, application for which must be made no later than 10 days after the date specified in the immediately preceding sentence. All experts may be deposed, but such depositions <u>must occur within the time limit for all depositions set forth below</u>.

(*Id.*)

Eastcott made no Rule 26(a)(2) disclosures of any facts or opinions regarding alleged infringement as required by the District Court's case management order.  (*See id.*; A6.)  In fact, Eastcott did not make any Rule 26(a)(2) disclosure for any witness with respect to infringement. (*See* A20-21.)

### 2.     Eastcott proclaimed himself an expert on patent damages.

Eastcott, despite admittedly having no education or experience determining damages for patent infringement (A35; A1299), no knowledge of generally accepted methodologies for determining patent damages and no familiarity with relevant patent damages law (A1290-97; A1299), identified *himself* as an "expert" witness on alleged damages he suffered from Hasselblad's alleged infringement and submitted his own Rule 26(a)(2) report on damages.

### D.    Eastcott Was Unable to Show Infringement During Discovery.

Throughout discovery, Eastcott was unable to offer even a theory of infringement.  In fact, mere weeks before the close of discovery, and the day before Eastcott's deposition, Eastcott served unverified interrogatory responses containing infringement contentions that utterly failed to explain how the elements of claim 26 were allegedly present in the HTS 1.5 device.  (A644; A648.)  For example, Eastcott's contentions, served on December 19, 2011, failed to link any of the structures of the HTS 1.5 device to the claimed "mounting ring" and "casing member."  (A644; A648; A650.)  According to Eastcott, the various elements of claim 26 are somehow specifically identified by the letter "I" and an ambiguous arrow pointing generally to an exploded view drawing of an HTS 1.5 device:



See attached Hasselblad Brochure HTS 1.5.
See I on page 4 of the attached document
HAS 00316.

(*Id.*)

**E.    Eastcott's Deposition Testimony Proves He Is Incompetent to Offer Opinions on Infringement and Damages.**

Hasselblad noticed Eastcott's deposition for December 20, 2011 at the office of Eastcott's counsel—where counsel for Hasselblad understood Eastcott preferred to be deposed.  (A34; A1283-84; A1217.)  Eastcott's deposition testimony confirmed that Eastcott is not competent to offer expert opinions on infringement or damages.

**1.    Eastcott's testimony revealed that his "expert" report on damages was a sham.**

It was apparent during Eastcott's deposition that not only was Eastcott incompetent to testify about patent damages, he did not appear to understand his own "expert" report:

- Eastcott acknowledged that he did not author the report on damages bearing his signature; (A161; A167-68)

- Eastcott invoked attorney-client privilege when asked to explain his opinions and his calculations and his understanding of those opinions and calculations; (A159-60; A167-168)

- Eastcott acknowledged that he would have been unqualified to testify about damages a year prior; (A35; A1299)

- Eastcott was unable to identify any "authoritative literature" to support his opinions on damages; (A35; A1224)

- Eastcott was not familiar with any of the following seminal cases on expert testimony and patent damages:

12

- o *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1119-20 (S.D.N.Y. 1970);

- o *Panduit Corp. v Stahlin Bros. Fibre Works, Inc.* 575 F.2d 1152 (6th Cir. 1978);

- o *Rite-Hite Corp v Kelley Co Inc.,* 56 F.3d 1538 (Fed. Cir. 1995);

- o *Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 365 U.S. 336 (1961);

- o *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999);

- o *Frye v. United States,* 293 F. 1013 (D.C. Cir 1923);

- o *General Motors Corp. v. Devex Corp.*, 461 U.S. 648 (1983);

- o *General Electric Co. v. Joiner*, 522 U.S. 136 (1997); and

- o *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

(A35; A1290-97)

Indeed, when later questioned by the District Court regarding Eastcott's refusal to respond to various questions about his expert report during his deposition, Eastcott's counsel remarkably explained: "Your Honor, we understood that Mr. Eastcott was testifying that day as a fact witness." (A36; A1166.)

### 2. Eastcott testified that he is not competent to provide particularized linking testimony to show infringement under the doctrine of equivalents.

During his deposition Eastcott was also asked about infringement. Specifically, he was given an opportunity to provide testimony linking the elements of claim 26, such as the "mounting ring" and "casing member," to structures of the HTS 1.5 device. For example, he was shown another copy of

13

HAS 00994—a document he expressly "relied upon" in his damages report

(A1525)—and asked if he could identify where the elements of claim 26 could be

found on the HTS 1.5 device.  (A1123-25.)  HAS 00994 includes an exploded view

of the HTS 1.5—just like the exploded view Eastcott used in his contentions and

***that he served the day before his deposition***:

| December 19, 2011 Infringement Contentions (A648) | December 20, 2011 Deposition Ex. 10 HAS 00994 (A844) |
|---|---|



Eastcott, however, was unable to identify which, if any, elements of the HTS

1.5 device allegedly correspond to the elements of the claim.  (*Id.*)  Indeed,

Eastcott explained that he did not even understand the drawings:

> Q.    Now, turning to Exhibit 10, which is a representation of
>        Hasselblad's HTS 1.5 device, can you highlight for me in
>        yellow the entire structure that you contend is a mounting ring?
>
> ***

A.    ***I do not comprehend the diagrams as performed here as given to me by Hasselblad. I cannot comprehend them***.

\*\*\*

Q.    You do not understand what you're looking at?

A.    ***I do not understand what I'm looking at***.

Q.    So you do not understand how these parts work together based on these figures?

A.    Correct.

Q.    So you're unable to identify on these figures --

A.    Correct.

Q.    -- where a mounting ring might be?

A.    Correct.

(*Id*., emphasis added).

Eastcott further explained that he had ***never even formed an opinion*** as to whether the HTS 1.5 device includes a mounting ring as claimed:

Q.    Have you ever formed any opinions with regard to what element on a Hasselblad HTS device corresponds to a mounting ring?

[Objection omitted.]

A.    That's not -- I have not –

Q.    Okay.

A.    -- formed an opinion.

(A1123-25.)

15

**F.    Mrs. Eastcott Was Deposed as a Lay Witness and Explained She Was Not Capable of Offering Expert Testimony.**

Hasselblad later deposed Mrs. Eastcott—the only other witness identified by Eastcott as having knowledge relating to infringement—for less than an hour by telephone to verify that Mrs. Eastcott would not offer testimony on infringement. (A36-37; A1268.)  Mrs. Eastcott testified unequivocally that she is incapable of opining on infringement. (A36-37; A1320-23.)  In fact, Mrs. Eastcott indicated that she did not know why she was even identified as a person allegedly having knowledge regarding infringement. (A37; A1320-21.)

**G.    The Expert Invoice Exchange and Hearing**

Hasselblad submitted expert invoices to Eastcott pursuant to Fed. R. Civ. P. 26(b)(4)(E) following the close of discovery.  (A37; A1191-94.)  The invoices totaled $13,552.50 because Hasselblad sought reimbursement only for its two experts' time and did not seek reimbursement for travel costs and expenses.  (*Id*.) Eastcott did not immediately respond, prompting Hasselblad's counsel to follow up a week later.  (*Id*.)

Eastcott did not respond to the invoices until March 16, 2012, when Eastcott's counsel sent two one-page letters to Hasselblad raising conclusory objections to Hasselblad's invoices.  (A38; A1195-96.)  For example, Eastcott's counsel argued that the two hours of preparation time and the travel time invoiced

16

by Mr. Finger, Hasselblad's damages expert, were "unreasonable and inappropriate." (*Id*.) Eastcott's counsel also objected that "the rate charged is not a reasonable rate to be paid by an individual such as Mr. Eastcott." (*Id*.) Nearly identical objections were made to the invoice of Mr. Poulsen, Hasselblad's technical expert. (*Id*.) No explanation was provided for any of these objections.

On March 22, 2012, Hasselblad's counsel responded in detail to Eastcott's counsel's objections and again asked for reimbursement, further indicating that Hasselblad also would seek reimbursement of the experts' travel expenses if Eastcott did not timely comply. (A38, A1197-99.)

In response, Eastcott's counsel sent Hasselblad's counsel an email attaching a $17,000 invoice from Eastcott "for attendance at defendant's depositions." (A38-39, A1200-01.) Notwithstanding the prior deposition testimony from Eastcott and his wife that they were incapable of offering expert testimony on infringement, Eastcott's invoice explained that the charges were for "[e]xpert witness testimony re: optical adapter for controlling the angle of the plane of focus and its unique application in professional photography." (A39, A1201.) Eastcott did not invoice Hasselblad for expert testimony on patent damages. (*Id*.) The invoice included charges for a "[f]ull day of [Eastcott's] testimony [at] $8,000/day" plus five hours of travel time "billed at half day rate" for a total of $10,500. (*Id*.) The invoice further included charges for a "[h]alf day of [Mrs. Eastcott's] testimony" plus five

17

hours of travel time for a total of $6,500, despite the fact that Mrs. Eastcott's

deposition was **taken by phone**. (*Id.*)

Hasselblad asked the District Court to resolve the parties' dispute over

expert fees.  Pursuant to the District Court's rules regarding resolution of discovery

disputes, Hasselblad sent the District Court a two-page letter on May 2, 2012

describing the nature of the dispute between the parties.  (A1189-90.)  Specifically,

Hasselblad requested reimbursement of expert fees pursuant to Rule 26(b)(4)(E)

and asked for sanctions against Eastcott and his counsel for fabricating charges on

Eastcott's invoice to Hasselblad:

> Considering plaintiff's insistence throughout this case that Mr.
> Eastcott did not testify as a technical expert, plaintiff's generation of
> the "invoice" is sanctionable.  After refusing to pay the reasonable and
> compensable fees for the expert testimony of Mr. Finger ($395/hour)
> and Mr. Poulsen ($250/hour), plaintiff invoiced defendants
> $1000/hour for his **lay testimony**.  Worse yet, for the **45 minute
> deposition** of Mr. Eastcott's wife—who did not offer expert
> testimony and who testified that she would not be competent to offer
> any such testimony—plaintiff invoiced defendants for **4 hours** of
> deposition time at $1000/hour.  Moreover, there is no justification for
> charging any travel time, especially at $500/hour, since defendants did
> not require either witness to travel.  Defendants noticed Mr. Eastcott's
> deposition at Mr. Wyatt's office at his request and took Mrs.
> Eastcott's deposition by telephone.
>
> Defendants request the Court to: 1) order plaintiff to
> compensate defendants' experts for all compensable fees and
> expenses under Fed. R. Civ. P. 26(b)(4)(E) ($18,770.53); 2) order
> plaintiff to reimburse defendants for attorney fees incurred by
> defendants seeking such compensation (~$2,100); and 3) sanction
> plaintiff and its counsel for fabricating the charges on the "invoice."

(A1189.)

During a May 15, 2012 telephone conference with the Court, Eastcott's counsel stated that he had "provided an invoice that would address defendants' invoices," and was "commensurate" with Hasselblad's invoices.  (A39.)  On that call, Eastcott's counsel also expressly withdrew his objections to Hasselblad's expert fees, a position he subsequently reconfirmed.  (*Id*.)

Eastcott's counsel submitted a written response to Hasselblad's allegations of fraud on May 17, 2012.  Eastcott acknowledged in his letter that Hasselblad sought sanctions against Eastcott and his counsel for their part in "fabricating charges" on the invoice:

> Finally defendants have asked for sanctions for fabricating charges on
> an invoice.

(A1205.)

In addition, despite knowing full well that both Eastcott and his wife chose to be deposed at their counsel's office, and that Mrs. Eastcott was deposed by telephone, Eastcott's counsel represented to the District Court that Eastcott was required "to travel to New York City" and Mrs. Eastcott was "required to travel more than 100 miles."  (A1206-07.)

During the May 30, 2012 hearing on the issue, the District Court explained the seriousness of the allegations to Eastcott and his counsel:

19

> THE COURT: Well, I will take this matter under advisement, but let
> me advise you now that it seems to me that another thing I have to
> consider is whether the conduct of counsel in what the Court may
> determine is a patently fraudulent invoice prepared with fraudulent
> intent warrants referral to the grievance committee of the Southern
> District of New York of counsel for their facilitation and participation
> in what may or may not be -- I haven't determined yet -- a gross fraud
> in connection with a litigation in the Southern District of New York.

(A1330-31.)  The District Court then gave Eastcott's counsel an opportunity to

introduce evidence on the issue and defend his actions.  (A1331-37.)  The District

Court asked Eastcott's counsel multiple times if there was anything further he

wished to argue. (A1331; 1335; 1337.)  Ultimately, *Eastcott's counsel*—not the

District Court—indicated that he had nothing more to present for the District

Court's consideration of the allegations of fraud. (A1337.)

### H.    The District Court's Decisions

### 1.    The District Court properly exercised its discretion in sanctioning Eastcott and his counsel for submitting an expert fee invoice that was "fabricated and an obvious sham."

Hasselblad moved the District Court to order Eastcott to pay Hasselblad's

experts' invoices, order Eastcott to compensate Hasselblad's experts for all

compensable fees and expenses under Fed. R. Civ. P. 26(b)(4)(E), order Eastcott to

reimburse Hasselblad for attorney fees incurred by Hasselblad in seeking such

reimbursement, and sanction Eastcott and his counsel for fabricating the charges

20

on Eastcott's invoice.  (A39; A1189-90; A1266-68.)  The District Court held a

hearing on the issue, during which Eastcott's counsel was given an opportunity to

justify the charges on the invoice and present evidence that his actions were not in

bad faith.  (*See* A1325-38.)  For multiple reasons, the District Court correctly

determined that Eastcott's invoice was "wholly improper, not to say an outright

sham." (A40.)


      a.     *Rule 26(b)(4)(E) does not permit a party to seek reimbursement for costs not actually incurred.*

Rule 26 requires a deposing party to "pay the expert a reasonable fee for

time spent in responding to discovery under 26(b)(4)(A) or (D)." (A41, quoting

Fed. R. Civ. P. 26(b)(4)(E).)  The District Court noted that the rule's 1970

comments indicate that the purpose of the rule is to reimburse parties for costs they

have actually incurred:

> "[t]hese provisions for fees and expenses meet the objection that it is
> unfair to permit one side to obtain without cost the benefit of an
> expert's work *for which the other side has paid*, often a substantial
> sum." Fed. R. Civ. P. 26 cmt.

(A41, emphasis added by the District Court.)

The District Court further noted that the purpose of the rule, as explained by

Wright Miller, is to remedy the situation where it is "unfair to let one party have

*for free what the other party has paid for*." (*Id*., emphasis added by the District

21

Court.) For these reasons, the District Court correctly found that Eastcott could not seek reimbursement under Rule 26(b)(4)(E) for fees he had not actually incurred. (A42.)

>    b.    *The District Court found that Eastcott's invoice was submitted*
>           *with no colorable basis and in bad faith.*

Regardless of whether Eastcott was justified in submitting an invoice at all, the District Court determined that the invoice Eastcott and his counsel submitted was "fabricated and an obvious sham" with no colorable basis and in bad faith based on the following factual findings:

- Eastcott and his counsel hatched an "illicit strategy" "to fabricate an invoice that would cancel out defendants' legitimate invoices"; (A42)

- Eastcott's invoice "bears no relation to reality"; (*Id.*)

- Eastcott charged for travel to the deposition location that Eastcott himself selected; (A43)

- Eastcott improperly billed for a full day when the deposition did not last eight hours; (*Id.*)

- Eastcott charged a "wholly unreasonable" rate of $1,000 per hour—even if Eastcott were entitled to compensation for lost opportunity, he would be "entitled to at most several hundred dollars in reimbursement"; (A43-44; A44 n.3)

- "It is unimaginable that a party would hire, at $1,000 per hour, an expert who was not qualified to calculate damages in 2010, who had no formal training in calculating damages since that time, who could not provide specific answers to questions about damages, and who did

22

not propose to discuss the documents upon which he based his expert report"; (A44-45)

- The $6,500 billed for Mrs. Eastcott's testimony is "plainly an utter fraud"; (A45)

- "[I]t is clear that [Mrs. Eastcott] was not an expert"; (*Id.*)

- Eastcott's rounding up of Mrs. Eastcott's deposition time "from less than one hour to four hours is further evidence that Eastcott ensured that the invoice would be 'commensurate' with defendants' invoices, so that, if his ruse had succeeded, he would be relieved of his obligation to pay defendants' expert costs"; (A45-46)

- "Eastcott and his counsel billed for a half day of travel for Eastcott's wife, even though she was deposed via telephone at her counsel's office, where she had chosen to be deposed"; (A49)

- Eastcott's actions were "unreasonable, not to say a fraud, a sham, and a travesty"; (A46)

- Eastcott and his counsel submitted a "phony invoice" and continued to rely on that invoice without a colorable basis and in bad faith; (A48) and

- Both Eastcott and his counsel submitted and relied on the invoice in bad faith. (A50.)

These factual findings are well supported by the documentary evidence and arguments presented to the District Court during the May 23, 2012 hearing.  There was ample evidence that Eastcott and his counsel submitted and continued to rely upon the sham invoice with no colorable basis and in bad faith.  Accordingly, it was well within the District Court's discretion to order $12,815.70 in sanctions against Eastcott and his counsel under its inherent power.

**2.     The District Court correctly concluded on summary judgment that there was no evidence of infringement.**

Hasselblad moved the District Court for summary judgment of invalidity of claims 1, 6 and 26 and noninfringement of claim 26.  The District Court granted Hasselblad's motion for summary judgment, determining that claims 1 and 6 are invalid and that claim 26 is not infringed.[1]  (A1-2; A20-22.)  The District Court's noninfringement decision was based, in part, on the fact that Eastcott presented insufficient evidence to support a finding of infringement.  (A6; A20-22.)  Specifically, the District Court found that:

- Eastcott failed to make timely Rule 26(a)(2) disclosures (A6);

- Eastcott is not qualified to present expert testimony on infringement, particularly after Eastcott explained during his deposition that he was unable to offer expert testimony on infringement or even "comprehend" the exploded drawings of the HTS 1.5 device (*Id.*);

- paragraphs 18-44 of Eastcott's Appendix 2 affidavit contain inadmissible opinion testimony and legal argument (A6-7);

- Eastcott presented no other admissible expert testimony on infringement (A20-21); and

---

[1] The District Court denied Hasselblad's motion with respect to invalidity of claim 26.  The parties have not appealed District Court's invalidity findings with respect to any of the claims.

- Eastcott's deposition testimony and Appendix 2 affidavit, even if admissible, failed to provide particularized linking testimony on a limitation-by-limitation basis (A21).

Accordingly, the District Court correctly determined that Eastcott could not present sufficient evidence to support a finding of infringement under the doctrine of equivalents, under either party's proposed claim construction.[2] (A13; A20-21.)

   a. *The District Court properly determined that Eastcott's opinion testimony on infringement is inadmissible.*

Eastcott submitted two affidavits, referenced in Eastcott's Opening Brief as the "Appendix 1 affidavit"[3] and "Appendix 2 affidavit,"[4] in opposition to Hasselblad's motion for summary judgment of invalidity of claims 1, 6 and 26 and noninfringement of claim 26.

---

[2] Eastcott conceded that claim 26 was not literally infringed. (A19.)

[3] The document Eastcott refers to as the "Appendix 1 affidavit" is the document filed as Exhibit 16 to the Declaration of Douglas Wyatt (Dkt. 27-16) and bears appendix number A963. Eastcott maintains that the document attests to the statements made in the document bearing appendix numbers A737-56.

[4] The document Eastcott refers to as the "Appendix 2 affidavit" is the document filed as Exhibit 23 to the Declaration of Douglas Wyatt (Dkt. 27-23) and bears appendix numbers A1024-38.

The District Court determined that to the extent Eastcott's affidavit testimony was a legal brief or an expert report, ***Eastcott is not qualified to submit either***." (A4, emphasis added.)

First, the District Court noted that Eastcott's affidavit testimony was submitted after the deadline for making Rule 26(a)(2) disclosures. (A6.) Thus, it was untimely under the District Court's scheduling order to the extent it contained opinion testimony. (*See* A6; A1516.) Second, the District Court noted that Eastcott was unqualified to offer testimony on infringement in any event after testifying during his deposition that he: 1) was incapable of testifying on infringement; 2) did not understand the diagrams of the HTS 1.5 device; and 3) had never formed any opinions as to which structures of the HTS 1.5 device correspond to the elements of claim 26. (A6-7.)

The District Court properly determined Eastcott's Rule 56 affidavit opinion testimony on infringement is inadmissible.

> b.    *The District Court correctly determined that Eastcott's affidavits failed to provide particularized linking testimony.*

Setting aside the general inconsistency of providing infringement testimony after testifying that he could not, Eastcott's Rule 56 affidavit testimony was internally inconsistent as to the elements of the HTS 1.5 device that allegedly

26

correspond to the elements of claim 26. For example, in paragraph 36 of the

Appendix 2 affidavit, Eastcott alleges that the HTS 1.5 device has a "mounting

ring" with slots and a "casing member" with pins.

> 36.     The HTS 1.5 adapter has a mounting ring holding the secondary lens. The
> adapter has two pins protruding into the slots. Hasselblad has reversed the '331 patent structure
> by putting the slots on the mounting ring and the pins on the casing.

(A1036, emphasis added.) Yet, just four paragraphs later, Eastcott alleges that it is

the "casing member" of the HTS 1.5 that has slots:

> 40.     The HTS 1.5 adapter includes a casing member having two slots wherein each pin
> of the HTS 1.5 adapter slides within one of the slots.

(A1040, emphasis added.)

In addition, to the extent Appendix 1 may be considered evidence at all,[5]

Eastcott alleges in paragraph 69—like in paragraph 36 of the Appendix 2

affidavit—that the mounting ring has slots (cams) and the casing structure has

pins:

> Hasselblad has put its two pins in a casing structure and the cams in
> the mounting ring structure….

---

[5] The affidavit of Appendix 2 (A963) references a document other than the Local
Rule 56.1 document with which the affidavit was filed as part of Appendix 2.

27

(A752.)

Moreover, Eastcott argued in his summary judgment opposition brief to the

District Court that the HTS 1.5 device allegedly has a "mounting ring" that

"includes several structures shown approximately near the arrow A":



An adapter as in claim 1 wherein the tilt means includes a mounting ring holding the secondary lens

Ex. 5, HAS 994, 1044; Ex. 14, HAS 316; Ex. 11, 78-79; Ex. 23, ¶ 32, 34, 36, 37, 38, 39 ;and a physical specimen of the HTS 1.5. (the mounting ring includes several structures shown approximately near the arrow A)

(A697-98, emphasis added.)

After reviewing Eastcott's affidavit testimony and arguments presented on

summary judgment, the District Court correctly determined that Eastcott's affidavit

testimony was inconsistent with his prior deposition testimony. (A21.)  The

District Court also correctly determined that the testimony therein failed to provide

particularized linking testimony sufficient to support a finding of infringement

under the doctrine of equivalents.  (*Id.*)

## V.    SUMMARY OF THE ARGUMENT

The District Court properly exercised its inherent power to sanction Eastcott and its counsel after determining as a factual matter that there was no colorable basis for Eastcott and his counsel to seek $17,000 from Hasselblad, and that they acted in bad faith.  Indeed, the District Court found that: 1) Eastcott's invoice was "phony" and a "ruse"—part of an "illicit strategy" "to fabricate an invoice that would cancel out defendants' legitimate invoices"; 2) the invoice "bears no relation to reality"; 3) the charges were "wholly unreasonable" and "plainly an utter fraud"; and 4) the submission and reliance on the invoice was "unreasonable, not to say a fraud, a sham, and a travesty."

The District Court also properly granted Hasselblad's motion for summary judgment of noninfringement because Hasselblad presented significant evidence of noninfringement and the record contained no admissible evidence of infringement. The only testimony on Hasselblad's alleged infringement came from Eastcott himself, despite the fact that Eastcott explained in his deposition mere weeks prior that he was not capable of comparing the claims of his patent to other devices such as the HTS 1.5 device and he could not even "comprehend" the simple exploded view drawings of the HTS 1.5 device.  Eastcott's later attempt to offer Rule 56 affidavit "testimony" parroting his attorney's infringement arguments was properly excluded by the District Court.

29

Moreover, Eastcott's Rule 56 affidavit testimony, even if admissible, was internally inconsistent and failed to identify the structures of the HTS 1.5 that allegedly satisfied the limitations of claim 26. Accordingly, the District Court correctly concluded that, even if Eastcott's Rule 56 affidavit testimony were admissible, it did not provide the required particularized testimony and linking argument on an element-by-element basis as to the differences between the elements of claim 26 and the HTS 1.5 device.

## VI.   STANDARD OF REVIEW

When reviewing the application of the Federal Rules of Civil Procedure, this court generally applies the law of the applicable regional circuit. *Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.*, 109 F.3d 739, 744 (Fed. Cir. 1997). Rulings concerning the admissibility of expert testimony are reviewed for abuse of discretion. *United States v. Yousef*, 327 F.3d 56, 148 (2d Cir. 2003). A decision to admit or exclude expert scientific testimony is not an abuse of discretion unless it is "manifestly erroneous." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002). Likewise, the exercise of a court's inherent power to sanction is reviewed for abuse of discretion. *Reilly v. Natwest Markets Grp. Inc.*, 181 F3d 253, 270 (2d Cir. 1999).

The factual findings of the District Court are reviewed for clear error. *Interspiro USA, Inc. v. Figgie Int'l, Inc.*, 18 F.3d 927, 930 (Fed. Cir. 1994). "Clear error" is a "deferential standard of review grounded, *inter alia,* on the belief that district courts have a good deal of 'expertise' when it comes to fact-finding." *Anderson v. City of Bessemer City,* 470 U.S. 564, 574 (1985). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948). A District Court's view of the evidence need only be ***plausible*** to survive scrutiny on appeal:

> "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."

*Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 168 (2d Cir. 2001) (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573-74 (1985)).

This Court reviews de novo the grant of summary judgment of noninfringement. *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005). Summary judgment is reviewed using the same legal standards applied by the district court. *Id.*

# VII.  ARGUMENT

## A.    The District Court Properly Exercised Its Inherent Power to Sanction Eastcott and His Counsel for Submitting an Expert Fee Invoice Without a Colorable Basis and in Bad Faith.

Eastcott and his counsel "concocted a fraudulent scheme" to "evade payment" of Hasselblad's expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4)(E) "through the fabrication of a false and misleading invoice."  (A40.)  By engaging in a "shell game" and submitting a "phony invoice" that was an "obvious sham," the actions of Eastcott and his counsel, were "unreasonable, not to say a fraud, a sham, and a travesty."  (A32; A33; A46; A48.)  There was ample evidence that Eastcott and his counsel submitted the sham invoice and continued to rely on it without a colorable basis and in bad faith.  The District Court was justified in exercising its inherent power to order minor sanctions in the amount of $12,815.70.

The court's inherent power derives from the sage acknowledgment that courts are "vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates."  *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991)).  Included in a court's inherent power is the ability to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Id*. (quoting *Chambers,* 501 U.S. at 45).  The submission and continued reliance on a fraudulent invoice by

32

Eastcott and counsel more than justified the District Court's inherent power to sanction them for their bad faith conduct.

Even if Eastcott were permitted under the Federal Rules to seek reimbursement pursuant to Rule 26(b)(4)(E), the District Court correctly found that the charges on the invoice were "a fraud, a sham, and a travesty."[6]  (A46; *see also* A42-45; A48-50.)  Eastcott and his counsel submitted the invoice as part of an "illicit strategy" "to fabricate an invoice that would cancel out defendants' legitimate invoices."  (A42.)  To achieve this goal, Eastcott fraudulently billed Hasselblad for lay testimony at rates that are wholly unreasonable even for qualified experts, and then padded the bill with thousands of dollars of travel charges when neither he nor his wife traveled for their deposition.  (*See* A42-49.) There was no colorable basis for submitting and continuing to rely upon an invoice

---

[6] There was no colorable basis for Eastcott to submit an invoice for his own testimony or that of his wife regarding an "optical adapter for controlling the angle of the plane of focus and its unique application in professional photography" pursuant to Fed. R. Civ. P. 26(b)(4)(E). (*See* A39, A1201.)  Nothing in Rule 26 suggests or otherwise implies that a party can name himself an "expert" and charge his opponent for his time spent responding to discovery.  Moreover, Eastcott's deadlines for disclosing experts to provide technical testimony were November 11, 2011 (infringement) and November 25, 2011 (validity).  (A1516.)  Neither Eastcott nor his wife was ***ever*** identified as a technical expert prior to summary judgment.

with such outrageous and fraudulent charges.  (A49-50.)  "Indeed, nearly every part of the invoice serves as further proof that it lacked any colorable basis and was prepared and submitted in bad faith."  (A49.)

Eastcott devotes much of his brief to arguing that he was justified in billing Hasselblad for his testimony and for that of his wife.  While untrue, that is not the point.  The District Court sanctioned Eastcott and his counsel not for submitting an invoice, but for submitting a ***fraudulent*** invoice—they engaged in an "illicit strategy" "to fabricate an invoice that would cancel out defendants' legitimate invoices" (A42).  The District Court properly found bad faith based on an underlying parade of horribles:

> Eastcott and his counsel billed for a full day's testimony for Eastcott even though he testified for less than a full day and at least part of his testimony that day was as a fact witness. They billed for a half a day for Eastcott's wife, even though she was deposed for less than an hour and was clearly not an expert. They billed at a rate of $1,000 per hour for Eastcott and his wife, without any basis to bill at that rate as an expert. Eastcott had previously objected that the rates of defendants' two experts were too high. But the rates that Eastcott and his counsel billed for Eastcott's time and that of his wife were two to three times the rates charged by defendants' experts. Eastcott and his counsel also billed for a half day of travel for Eastcott, even though he conceded that he was already testifying that day as a fact witness (and despite the fact that the deposition took place at his counsel's office). Eastcott and his counsel billed for a half day of travel for Eastcott's wife, even though she was deposed via telephone at her counsel's office, where she had chosen to be deposed.

(A49.)  Notably, Eastcott never even attempts to justify the fraudulent travel charges for Eastcott and his wife.  (*See id*.)  Nor can he.  Similarly, Eastcott is unable to dispute the District Court's finding that he charged for deposition time well in excess of the actual time deposed.  (*See id*.)  Either of these two key findings, by itself, would justify the District Court's finding of bad faith and exercise of its inherent power to sanction Eastcott and his counsel.

Eastcott's argument that the District Court failed to give him notice or provide an opportunity to respond similarly lacks merit.  Without question, Eastcott and his counsel were on notice that the District Court was considering sanctioning them for acting without a colorable basis and in bad faith by submitting a fraudulent invoice.  And Eastcott had ample opportunity to respond to the allegations during the hearing.

"Due process requires that courts provide notice and an opportunity to be heard before imposing *any* kind of sanctions."  *Reilly*, 181 F.3d at 270 (quoting *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 70 (2d Cir.1996)).  However, "the requirements of due process cannot be cabined within an inflexible regime, and must vary with each case." *Id*. (citing *Int'l Ore & Fertilizer Corp. v. SGS Control Servs.*, *Inc.*, 38 F.3d 1279, 1286 (2d Cir. 1994))  In *Martin v. Brown* (cited by *Reilly*), the court observed that while "particularized notice of the grounds for the sanction under consideration is generally required" sanctions may be imposed

35

under a court's inherent power without specific notice of the grounds for sanctions when the sanctioned individual was "plainly on notice that he was facing sanctions for conduct involving subjective bad faith." 63 F.3d 1252, 1263 n.13 (3d Cir.1995). Eastcott had clear notice of the allegations of fraud and subjective bad faith and the District Court took great care to ensure that Eastcott had an opportunity to fully respond to those allegations. Eastcott and his counsel were afforded due process.

Hasselblad initially asked the District Court to "sanction plaintiff and its counsel for fabricating the charges on the 'invoice.'" (A1189.) Eastcott's counsel, in a responsive letter to District Court, acknowledged his understanding that Hasselblad sought sanctions "for fabricating charges on an invoice." (A1205.) Then, during the hearing on the issue of sanctions, the District Court explained that not only was he considering sanctioning Eastcott for issuing a fraudulent invoice, but he was also considering reporting counsel to the local bar grievance committee for "gross fraud":

> THE COURT: Well, I will take this matter under advisement, but let me advise you now that it seems to me that another thing I have to consider is whether the conduct of counsel in what the Court may determine is a patently fraudulent invoice prepared with fraudulent intent warrants referral to the grievance committee of the Southern District of New York of counsel for their facilitation and participation in what may or may not be -- I haven't determined yet -- a gross fraud in connection with a litigation in the Southern District of New York.

(A1330-31.)  Thus, Eastcott was well-aware he was facing sanctions for conduct involving subjective bad faith.

Furthermore, Eastcott was given ample opportunity to respond.  "The opportunity to respond is judged under a reasonableness standard: a full evidentiary hearing is not required; the opportunity to respond by brief or oral argument may suffice."  *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 117 (2d Cir. 2000) (finding sufficient opportunity to respond where sanctioned party was given "repeated opportunities to explain his conduct once the issue of sanctions was raised in the courtroom").  Here, the District Court then gave Eastcott every opportunity to respond to the allegations of fraud and permitted Eastcott to introduce evidence in an effort to show good faith.  (A1331-37.)

Eastcott's assertions that "[t]here were no witnesses presented at the hearing" and "[t]he hearing lasted less than half an hour" are grossly misleading— Eastcott elected not to present any witnesses and the hearing ended when Eastcott informed the District Court he had nothing further to argue.  Indeed, the District Court asked Eastcott's counsel multiple times if there was anything further he wished to argue. (A1331; 1335; 1337.)  Ultimately, it was Eastcott's counsel who indicated that he had nothing more to present for the District Court's consideration of the allegations of fraud. (A1337.)

The District Court was justified in exercising its inherent power to order

sanctions against Eastcott, and Eastcott was afforded due process.

### B.      The District Court Correctly Granted Summary Judgment Of Noninfringement.

Eastcott's pursuit of his infringement claims was based on obfuscation and

subterfuge.  Eastcott stonewalled Hasselblad's every effort to learn how Eastcott

contended the accused HTS 1.5 device allegedly infringes claim 26—more

specifically, what structures of the HTS 1.5 device are allegedly equivalent to the

structures recited in claim 26.  Eastcott was unable to provide specific infringement

contentions, and then testified (when he was not invoking attorney-client privilege)

that he was unable to offer any opinions on infringement.  So did Eastcott's wife.

Then, faced with Hasselblad's well-supported motion for summary judgment of

noninfringement, Eastcott suddenly became an expert, able to submit affidavits

filled with opinion testimony on infringement.  The District Court properly struck

Eastcott's "expert" opinions as untimely testimony from an incompetent witness

which, even if admissible, do not provide particularized linking testimony and

argument sufficient to survive summary judgment.

The District Court then applied the evidence to the claim constructions

advocated by both Eastcott and Hasselblad, and correctly determined that Eastcott

cannot show infringement under either claim construction because Eastcott "has

not even come close to providing the particularized testimony of one skilled in the art to demonstrate the infringement on a limitation by limitation basis." (A13; A21.)

### 1.    Legal standard for summary judgment.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although all facts and inferences therefrom are to be construed in favor of the party opposing the motion, that party must raise more than just a "metaphysical doubt" as to a material fact. See, *Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984, 991 (Fed. Cir. 2009) (construing facts in light most favorable to opposing party). "[M]ere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). Accordingly, if the "evidence favoring the nonmoving party ... is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## 2. The HTS 1.5 device does not infringe claim 26 literally or under the doctrine of equivalents.

In stark contrast to Eastcott's wholesale inability to prove infringement, Hasselblad presented clear evidence of noninfringement of claim 26 both literally and under the doctrine of equivalents. Hasselblad's expert, Anders Poulsen, provided unrebutted testimony that the differences between the element of claim 26 and the structures of the HTS 1.5 device are substantial. This despite the significant roadblock presented by Eastcott's utter failure to provide his contentions as to which structures of the HTS 1.5 device allegedly correspond to the elements of claim 26, much less offer testimony and argument regarding the substantiality of the differences between the claim elements and the structures of the HTS 1.5 device.

Regardless of which structure(s) correspond to the claimed "mounting ring" and "casing member"—something Eastcott was never able to identify—the HTS 1.5 device does not include any equivalent to "two slots therein at acute angles to the optical axis of the optical instrument" as recited in claim 26. The District Court adopted Mr. Poulsen's proposed construction of this phrase and defined it to mean "the casing member has two slots on a side of the adapter." (A13 n.5.) Eastcott never disputed and has not appealed this construction.

Applying the District Court's construction, the functionality of the "two slots on a side of the adapter" is illustrated in Figs. 4a-c of the '331 patent:



(A75.)

Unlike the configuration of claim 26, with two slots on a side, the HTS 1.5 device has a single arc-shaped groove on each side (C2, C1), which permits tilting both up and down:



(A531, coloring and lettering added.)



(A505-06.)

As Mr. Poulsen explained in his deposition and expert declaration, the single arc-shaped groove design of the HTS 1.5 is substantially different from the ***two-slot*** design of claim 26.  (A536; A614-16.)  First, unlike the slots of claim 26 of the '331 patent, the arc-shape grooves of the HTS 1.5 permit the removable lens to have an arc movement that rotates about a single point, whereas the two slot configuration of claim 26 causes the removable lens to rotate about multiple points.  (*Id*.)  Second, the configuration of the arc-shaped grooves permits tilting both up and down, whereas the two acute angle slots of claim 26 restrict tilting to only one direction—up or down, depending on their orientation.  (A614.)

The HTS 1.5 device does not infringe claim 26 under the doctrine of equivalents for multiple reasons,[7] and the District Court correctly granted Hasselblad's motion for summary judgment of noninfringement.

### 3. The District Court correctly determined that Eastcott's affidavit testimony fails to create a genuine issue of material fact.

Eastcott conceded that there was no literal infringement of claim 26 and asserted only infringement under the doctrine of equivalents. (A19.) And, as noted above, Hasselblad presented significant evidence of noninfringement. Accordingly, to survive summary judgment, Eastcott was required to provide *particularized testimony and linking argument* as to the insubstantiality of the differences between the claimed invention and the accused device on a limitation-by-limitation basis. *See Aquatex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1328 (Fed. Cir. 2007); *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1363 (Fed. Cir. 2005); *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996). The District Court correctly

---

[7] Mr. Poulsen also testified that the HTS 1.5 does not include a structure equivalent to the claimed "two pins protruding outwardly from the mounting ring" or a structure equivalent to the claimed "casing member." (A533-35.)

concluded that Eastcott failed to demonstrate a material question of fact regarding

infringement because he could not produce any witness, including himself, capable

of providing such particularized linking testimony.

> a.    *The District Court properly exercised its discretion when Eastcott's affidavit opinion testimony was inadmissible as untimely.*

**Eastcott does not dispute that he never made any Rule 26(a)(2) disclosures**

**regarding infringement of claim 26. Eastcott also does not dispute the District**

**Court's finding that paragraphs 36-44 "proffer expert opinions" on**

**infringement.** (*See, e.g.*, Brief at 58.) Indeed, despite maintaining throughout his

multiple briefs that he is qualified to present expert opinion testimony on

infringement, and that the Court should consider his testimony for the purposes of

summary judgment, Eastcott never even attempts to address the District Court's

proper finding that such opinion testimony was untimely submitted.

The District Court has "wide discretion" to direct the discovery process.

*Wills v. Amerada Hess Corp.*, 379 F.3d 32, 51 (2d Cir. 2004) (quoting *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003)). Rulings concerning the admissibility of

expert testimony are reviewed for abuse of discretion. *Yousef*, 327 F.3d at 148.

The District Court's case management plan set the deadline for initial expert

disclosures and rebuttal expert disclosures pursuant to Rule 26(a)(2) for November

44

11, 2011 and November 25, 2011, respectively. (A1516.)  The case management

order was clear that the District Court would not accept later submitted Rule

26(a)(2) disclosures:

> No expert testimony (whether designated as "rebuttal" or otherwise)
> will be permitted by other experts or beyond the scope of the opinions
> covered by the aforesaid disclosures except upon prior express
> permission of the Court, application for which must be made no later
> than 10 days after the date specified in the immediately preceding
> sentence. All experts may be deposed, but such depositions <u>must
> occur within the time limit for all depositions set forth below</u>.

*Id*.

Eastcott's Appendix 2 affidavit, submitted on January 28, 2012 in

opposition to Hasselblad's motion for summary judgment, was filed after the

November 11, 2011 deadline set forth in the case management order, after

Hasselblad's took Eastcott's deposition on December 20, 2011, and after the

close of discovery on January 13, 2012.  Without question, to the extent

Eastcott's Appendix 2 affidavit contains opinion testimony—***which is***

***undisputed***—such testimony was untimely and was properly struck by the

District Court.  (A7.)

This Court's ruling in *Baran v. Medical Device Technologies, Inc.*

(*Baran II*)*,* 616 F.3d 1309 (2010) is directly on point.  Just like Eastcott here,

Baran did not identify himself as an expert as required by Rule 26(a)(2) of

the Federal Rules of Procedure and the court's case management plan, but

later sought to present expert testimony by way of a declaration pursuant to Rule 56(e) of the Federal Rules of Procedure. *Baran II,* 616 F.3d at 1318; *Baran v. Med. Device Techs., Inc.* (*Baran I*)*,* 666 F. Supp. 2d 776, 779 n.2 (N.D. Ohio 2009). Eastcott's Rule 56 Appendix 2 affidavit, just like the one submitted by Baran, is "as a practical matter, an expert report in which he provides his infringement opinion." *Baran I*, 666 F. Supp. 2d at 779 n.2.

Like the court in *Baran I*, the District Court properly declined to consider the untimely opinion testimony of Eastcott's Appendix 2 affidavit. *Id.*;  (A4-5.)

> b. *The District Court properly determined that Eastcott was incapable of providing particularized linking testimony regarding alleged infringement by the HTS 1.5 device.*

The District Court also properly determined that, timely or not, Eastcott is not competent to offer opinion testimony on alleged infringement of claim 26 by the HTS 1.5 device. The District Court did not have to look far to reach this conclusion—Eastcott admitted during his deposition that he is not capable of comparing claim 26 of the '331 patent to the HTS 1.5 device.

i.   It would have been error for the District Court to permit Eastcott to offer particularized linking testimony regarding alleged infringement by the HTS 1.5 device.

"It is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008).  Eastcott's deposition testimony leaves no doubt that he is not qualified to offer expert testimony on infringement.[8]

Eastcott was given every opportunity to offer particularized testimony comparing claim 26 to the HTS 1.5 device on a limitation-by-limitation basis. Eastcott explained that he had ***never formed an opinion*** as to whether the HTS 1.5 device includes the elements of claim 26.[9]  (A1123-25.)  Indeed, Eastcott admitted

---

[8] Eastcott cites *Meyer Intellectual Properties Ltd. v. Bodum Inc.*, 690 F.3d 1354, 1374 (Fed. Cir. 2012) as supporting the proposition that expert testimony is not required to show infringement under the doctrine of equivalents.  The Court in *Meyer* addressed the question of whether expert testimony on the prior art was required to prove invalidity—it did not address testimony on equivalence.

[9] The District Court's ruling that Eastcott's affidavit testimony is untimely is further supported by the fact that Eastcott was given an opportunity testify on infringement during his deposition, but he proved incapable of doing so.  (A1120-21; A1123-25).

he was incapable of linking the elements of the HTS 1.5 device to the elements of

claim 26 and could not even "comprehend" the drawings:

> Q.    Now, turning to Exhibit 10, which is a representation of
>        Hasselblad's HTS 1.5 device, can you highlight for me in
>        yellow the entire structure that you contend is a mounting ring?
>
> ***
>
> A.    ***I do not comprehend the diagrams as performed here as given
>        to me by Hasselblad. I cannot comprehend them***.
>
> ***
>
> Q.    You do not understand what you're looking at?
>
> A.    ***I do not understand what I'm looking at***.
>
> Q.    So you do not understand how these parts work together based
>        on these figures?
>
> A.    Correct.
>
> Q.    So you're unable to identify on these figures --
>
> A.    Correct.
>
> Q.    -- where a mounting ring might be?
>
> A.    Correct.

(*Id.*, emphasis added).

Eastcott attempts to justify his utter incompetence by arguing that the

exploded drawing of HAS 00994 was allegedly "confusing" and "unfamiliar":

> Eastcott was asked to outline in yellow what he considered the
> mounting ring structure on unfamiliar, confusing, exploded
> engineering drawings.  Eastcott did not give his testimony as to the
> identity of the structures on these engineering drawings at pp. 245-245
> (A1491, A1492) because he could not comprehend them.

(Brief at 37.)

Yet, Eastcott's infringement contentions *served the day before his deposition* used an exploded view drawing almost identical to the allegedly "confusing" and "unfamiliar" drawing of Ex. 10 to his deposition:

| December 19, 2011 Infringement Contentions (A648) | December 20, 2011 Deposition Ex. 10 HAS 00994 (A844) |
|---|---|



(A648; A844.)  Moreover, Eastcott had previously identified HAS 00994 as a document on which he relied in connection with his damages report.  (A1525.)  In addition, in his summary judgment opposition brief filed a few weeks later, *Eastcott used these same images from HAS 00994*—not the actual product itself or pictures of the product—to argue infringement:



| An adapter as in claim 1 wherein the tilt means includes a mounting ring holding the secondary lens | |
|---|---|
| | Ex. 5, HAS 994, 1044; Ex. 14, HAS 316; Ex. 11, 78-79; Ex. 23, ¶ 32, 34, 36, 37, 38, 39 ;and a physical specimen of the HTS 1.5. (the mounting ring includes several structures shown approximately near the arrow **A**) |

(A697-98.)

The District Court properly exercised its discretion to preclude testimony from Eastcott offering opinions on infringement because Eastcott, by his own admission, was incapable of providing particularized linking testimony showing infringement on a limitation-by-limitation basis.  (A6.)

        ii.    Eastcott cannot create an issue of material fact by submitting affidavit testimony that contradicts his prior deposition testimony.

In addition, it is well established that a party "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by ***omission or addition***, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y. City Dept. of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) (emphasis added); *see also Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 455 (2d Cir. 1999) ("It is beyond cavil that a party may not create an issue of fact by submitting an

50

affidavit in opposition to a summary judgment motion that contradicts the affiant's previous deposition testimony."). Eastcott testified that he was incapable of providing particularized linking testimony showing infringement on a limitation-by-limitation basis (A1123-25) yet, in direct contradiction to this testimony, attempted to do precisely that in his affidavits. Thus, for this additional reason, the District Court properly determined that the opinion testimony in Eastcott's affidavits is inadmissible. (A6; A1123-25.)

> c.    *The District Court properly determined that Eastcott's affidavit testimony fails to provide sufficient evidence to support a finding of infringement in any event.*

In addition, the District Court correctly found that, even if Eastcott's affidavit testimony was admissible in its entirety, Eastcott did not provide "the particularized testimony required to prove infringement on a limitation-by-limitation basis." (A21.) The District Court's finding is supported by the fact that Eastcott's affidavit testimony is internally inconsistent—it fails to explain which components of the HTS 1.5 device allegedly meet the "mounting ring" and "casing member" limitations under the doctrine of equivalents.

Eastcott's failure to provide limitation-by-limitation testimony may be explained by Eastcott's apparent misunderstanding of the test for infringement under the doctrine of equivalents. In his Opening Brief, Eastcott argues an

51

incorrect test for infringement—that it is sufficient to show that the HTS 1.5 *device as a whole* performs similarly to the *device described* in the '331 patent:

> Paragraphs 36 to 44 (A769) describe the Hasselblad camera adapter structure in detail *showing that the adapter structure performs substantially the same way and gives the same results as the adapter of the '331 patent-in-suit*.

(Brief at 51, emphasis added.) Of course, equivalence must be determined on a limitation-by-limitation basis, not on the accused device as whole. *See Aquatex*, 479 F.3d at 1328; *Network Commerce*, 422 F.3d at 1363; *Texas Instruments*, 90 F.3d at 1567.

Indeed, Eastcott's affidavit testimony is essentially a series of conclusory opinions about the HTS 1.5 device as a whole, with no explanation as to which structures of the HTS 1.5 device are allegedly "equivalent" to the elements of claim 26. The testimony falls well short of the type of particularized linking testimony and argument required.

Moreover, to the extent Eastcott's affidavit testimony makes any correlations between the limitations of claim 26 and the structures of the HTS 1.5 device, it is internally inconsistent. For example, Eastcott initially states in paragraph 36 of his Appendix 2 affidavit that the HTS 1.5 device has a *"mounting ring" with slots* and a *"casing member" with pins*:

> 36.    The HTS 1.5 adapter has a mounting ring holding the secondary lens.  The
> adapter has two pins protruding into the slots.  Hasselblad has reversed the '331 patent structure
> by putting the slots on the mounting ring and the pins on the casing.

(A1036, emphasis added.)  Eastcott makes a similar statement in paragraph 69 of

his Appendix 1 affidavit:

> Hasselblad has put its two pins in a casing structure and the cams in
> the mounting ring structure….

(A752.)

The only structure on the HTS 1.5 device with slots is the frame 19—which

does not hold a secondary lens.  The frame 20 has pins, but also does not hold a

secondary lens:



(A192; A531; A551, coloring and lettering added.)

53

Eastcott goes on to contradict his other affidavit testimony by opining that

the HTS 1.5 device has ***"casing member" with slots***:

> 40.   The HTS 1.5 adapter includes a <mark>casing member having two slots</mark> wherein each pin
> of the HTS 1.5 adapter slides within one of the slots.

(A1040, emphasis added.)

Moreover, Eastcott's affidavit testimony also conflicts with the arguments

set forth in Eastcott's opposition brief to the District Court, in which he maintained

that the HTS 1.5 device allegedly has a "mounting ring" that "includes several

structures shown approximately near the arrow A":



An adapter as in claim 1 wherein the tilt means includes a mounting ring holding the secondary lens

Ex. 5, HAS 994, 1044; Ex. 14, HAS 316; Ex. 11, 78-79; Ex. 23, ¶ 32, 34, 36, 37, 38, 39 ;and a physical specimen of the HTS 1.5. <mark>(the mounting ring includes several structures shown approximately near the arrow A)</mark>

(A697-98, emphasis added.)  In sum, Eastcott testifies and argues as follows:

- The HTS 1.5 device has a "mounting ring" in the form of the frame element 19 having slots (the blue structure, which does not hold a secondary lens) (A1036; A752);

- The HTS 1.5 device has a "mounting ring" in the form of the frame element 20 having pins (the green structure, which does not hold a secondary lens) (A1040); and

- The HTS 1.5 device has a "mounting ring" including the structures shown near the arrow A (the yellow structure, which holds a secondary lens but does not have slots or pins) (A697-98).

Eastcott's identification of every major structure of the HTS 1.5 device as somehow corresponding to a "mounting ring" as set forth in claim 26 underscores Eastcott's incompetence to provide expert testimony on infringement.  Without question, Eastcott's affidavit testimony, even if admissible, fails to provide particularized testimony and linking argument on a limitation-by-limitation basis required to support a claim for infringement under the doctrine of equivalents.  (A21); *see also Aquatex*, 479 F.3d at 1328; *Network Commerce*, 422 F.3d at 1363; *Texas Instruments*, 90 F.3d at 1567.  The District Court correctly concluded that Eastcott's affidavit testimony fails to create a material question of fact regarding infringement.

### 4.      Eastcott failed to present evidence of infringement under any claim construction.

The District Court correctly determined that, even adopting Eastcott's proposed claim constructions, Eastcott "has not even come close to providing the particularized testimony of one skilled in the art to demonstrate the infringement on a limitation by limitation basis."  (A13; A21.)

As Eastcott acknowledges, the District Court identified the differences between the constructions advocated by the parties.  (Brief at 50; A12-13.)  The District Court then applied the parties' respective constructions to the claims and determined that Eastcott could not prove infringement under either claim construction.  (A13.)

Eastcott now alleges that the District Court erred by not specifically defining the disputed terms, but provides no analysis or argument as to how such error—if indeed the District Court erred—was anything but harmless.  As the District Court correctly determined, the differences between the parties' constructions of the undefined terms have no impact on the sufficiency of the evidence presented in Eastcott's inadmissible affidavits.[10]  *See Logan v. Hormel Foods, Inc.*, 217 F. App'x 942, 945 (Fed. Cir. 2007).·

Eastcott proved wholly incapable of showing infringement under the doctrine of equivalents, regardless of the constructions given to the remaining terms of claim 26.

---

[10] Moreover, Eastcott has waived the ability to argue any specific claim constructions by failing to do so in his Opening Brief.  *See Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 20 (Fed. Cir. 2012).

## VIII.  CONCLUSION

The District Court properly sanctioned Eastcott and his counsel because there was no colorable basis for their submission of a fraudulent invoice, and because Eastcott and his counsel acted in bad faith by submitting and continuing to rely upon the invoice.  The District Court also correctly determined that the HTS 1.5 device does not infringe claim 26 of Eastcott's '331 patent under the doctrine of equivalents because Hasselblad submitted significant evidence of noninfringement and Eastcott cannot provide particularized linking testimony and argument on a limitation-by-limitation basis.

Accordingly, the District Court's judgment should be affirmed.

Respectfully submitted,

/s/ Mark C. Johnson
MARK C. JOHNSON
KYLE B. FLEMING
NICHOLAS J. GINGO
RENNER, OTTO, BOISSELLE & SKLAR, LLP
1621 Euclid Avenue, 19th Floor
Cleveland, Ohio  44115
(216) 621-1113

*Counsel for Defendant-Appellees*

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on May 10, 2013, the foregoing was filed using the Court's CM/ECF system pursuant to the Court's May 17, 2012 Administrative Order Regarding Electronic Case Filing ("ECF Order").  According to ECF-6 of the ECF Order, the Notice of Docket Activity that is generated by the Court's CM/ECF system constitutes service of the filed document on all parties represented by attorneys who have registered for the CM/ECF system.  The CM/ECF system will send a Notice of Docket Activity to the following attorneys, who are CM/ECF registrants:

Douglas W. Wyatt
Wyatt, Gerber & O'Rourke LLP
99 Park Avenue, Suite 330
New York, NY 10016

/s/ Mark C. Johnson
*An Attorney for Defendant-Appellees*

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  Excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), the brief contains 10,904 words, as indicated by Microsoft Word 2010.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14 point font.


Dated:  May 10, 2013              /s/ Mark C. Johnson
                                 MARK C. JOHNSON
                                 KYLE B. FLEMING
                                 NICHOLAS J. GINGO
                                 RENNER, OTTO, BOISSELLE & SKLAR, LLP
                                 1621 Euclid Avenue, 19th Floor
                                 Cleveland, Ohio  44115
                                 (216) 621-1113

                                 *Counsel for Defendant-Appellees*